**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BORIS ZATS, AMIR GUPTA and FRANK RUFFOLO, *Individually and on behalf of all others similarly situated,* | Civil Action No. |
| Plaintiff, | |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware limited Liability company, | JURY TRIAL DEMANDED |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs, BORIS ZATS, AMIR GUPTA and FRANK RUFFOLO, bring this class action against Defendant JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company ("JLRNA") on behalf of three putative classes, a New York Class, a California Class and an Illinois Class, on information and belief, formed after a reasonable inquiry under the circumstances:

## I. INTRODUCTION

1. Beginning with the 2022 model year, JLRNA launched newly designed Range Rover and Range Rover Sport vehicles known, internally, as L460 and L461 built on a new platform called the Modular Longitudinal Architecture-Flex ("Class Vehicles"). Seeking to be a premier luxury brand in North America, these vehicles included several enhanced features to justify their hefty price tags. Among these features was a revamped braking and steering system to improve performance.

2. The braking system included electronic active differential with Torque Vectoring by Braking ("TVBB") and cornering brake control ("CBC"). The way these systems were designed and/or manufactured creates excessive heat on the braking system components that compromises the wearability, functionality and safety of the vehicles' braking system. As a result of the excessive heat, first, the Class Vehicles manifest a brake squeal and vibration, which ultimately results in the failure of the brake pads and discs (rotors). If left unrepaired, the entire braking system will fail. This is "the Braking System Defect."

3. Within months of their introduction into the United States, JLRNA began receiving complaints of squealing brakes and vibrations when depressing the footbrake. By March 14, 2025, JLRNA recognized the vehicles may have a defective condition. Indeed, JLRNA sought specific information from its dealer network about customer's repair requests regarding brake issues. But, yet, JLRNA refused warranty claims and forced consumers, like Plaintiffs, to pay for repairs that were caused solely by the vehicles' inherent defective condition.

4. Specifically, Plaintiffs' vehicles suffered the Braking System Defect, which required the replacement of the rear brake pad and rotors. Plaintiff Zats paid $2,476.77 plus tax to replace the brakes on his Range Rover after just 14,825 miles. Similarly, Plaintiff Gupta paid $2,509.43 plus tax for his replacement after little over a year of ownership and 16,601 miles. And Plaintiff Ruffolo has unfortunately paid twice to have is brake pads and rotors replaced on his two Class Vehicles, first at 11,938 miles at a cost of $1,991.54, and then at 13,866 miles at a cost of $2,107.46. Despite its knowledge of the Braking System Defect, JLRNA refused to cover the cost of these repairs, which was necessary to avoid a complete failure of the braking system.

5. Plaintiffs now bring this Class Action pursuant to the laws of, and on behalf of, those similarly situated in the States of New York, California and Illinois.

## II. PARTIES

**Plaintiff Boris Zats**

6. Plaintiff Boris Zats, DDS, FADSA, is an adult individual consumer who is a citizen and resident of Brooklyn, New York.

7. Plaintiff Zats owns a 2023 Land Rover Range Rover SE that he purchased at Jaguar Land Rover of Manhattan on or about October 7, 2022.

8. In under two years of ownership, and with just 16,601 miles on the vehicle, Plaintiff Zats presented his 2023 Range Rover to Land Rover of Manhattan who determined its rear brakes and rotors needed replacement.

9. Plaintiff Zats paid $2,509.43 plus tax and other incidentals on January 9, 2024, to replace his Range Rover's rear brake rotors and pads.

10. Plaintiff Zats would not have purchased his Class Vehicle, or paid less for it, if JLRNA disclosed the Class Vehicles' defect that causes the premature failure of the brake rotors and pads and/or JLRNA's refusal to correct the defect at no charge.

**Plaintiff Amir Gupta**

11. Plaintiff Amir Gupta is an adult individual consumer who is a citizen and resident of San Francisco, California.

12. Plaintiff Gupta owns a 2023 Land Rover Range Rover Autobiography that he purchased at Marin Luxury Cars in Corte Madera, California on December 30, 2022.

13. Prior to purchasing his Range Rover, Plaintiff Gupta performed online research about the vehicle. He built his desired vehicle configuration on the Land Rover website and ordered it. He previously owned Range Rovers in the past and has familiarity with them. Never has he experienced the degree of premature brake wear and squeaking from the vehicle's brakes.

14. In under two years of ownership and with just 14,825 miles on the vehicle, Plaintiff Gupta presented his 2023 Range Rover Autobiography to Marin Luxury Cars who determined its rear brakes and rotors needed replacement.

15. Plaintiff Gupta paid $2,476.76 plus tax and other incidentals on October 7, 2024, to replace his Range Rover's rear brake rotors and pads.

16. Plaintiff Gupta would not have purchased his Class Vehicle, or paid less for it, if JLRNA disclosed the Class Vehicles' defect that causes the premature failure of the brake rotors and pads and/or JLRNA's refusal to correct the defect at no charge.

**Plaintiff Frank Ruffolo**

17. Plaintiff Frank Ruffolo is an adult individual consumer who is a citizen and resident of Chicago, Illinois.

18. Plaintiff Ruffolo owns a 2023 Land Rover Range Rover (VIN SALKP9E73PA016396) that he purchased at Howard Orloff Imports in Chicago, Illinois on or about September 14, 2022. Plaintiff Ruffolo also owns another 2023 Land Rover Range Rover (VIN SALK19E78PA035575) that he purchased at Howard Orloff Imports in Chicago, Illinois on or about December 29. 2022.

19. After two years of ownership and with just 11,938 miles, Plaintiff Ruffolo presented his 2023 Land Rover Range Rover (VIN SALKP9E73PA016396) to Howard Orloff Imports who determined its rear brakes and rotors needed to be replaced. The service was completed on October 1, 2024 at a cost of $1,991.54 plus tax and other incidentals.

20. Similarly, in just over two years of ownership and with just 13,866 miles, Plaintiff Ruffolo presented his 2023 Land Rover Range Rover (VIN SALK19E78PA035575) to Howard Orloff Imports who determined its rear brakes and rotors needed replacement. This service was completed on July 9, 2025 at a cost of $2,107.46 plus tax and other incidentals.

21. Plaintiff Ruffolo would not have purchased his Class Vehicles, or paid less for them, if JLRNA disclosed the Class Vehicles' defect that causes the premature failure of the brake rotors and pads and/or JLRNA's refusal to correct the defect at no charge.

**Defendant**

22. Defendant Jaguar Land Rover North America, LLC is a Delaware limited liability company with its headquarters and principal place of business at 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495.

23. JLRNA designed, manufactured, distributed, warranted and sold the Class Vehicles across the United States through its authorized dealership network. In addition, JLRNA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. JLRNA also has the responsibility of reporting, recall and other duties under the federal motor vehicle safety laws and interacting with NHTSA.

24. JLRNA sells the Class Vehicles in the United States through a network of authorized dealerships to the end users who are consumers.

## III. FACTUAL ALLEGATIONS

### A. 2023 Range Rover and Range Rover Sport

25. JLRNA launched the first Land Rover Range Rover in 1970 exclusively in Europe as a full-size SUV. Due to its popularity, it was brought to the United States market in 1987. The Range Rover Sport launched production in 2005 and was marketed as a mid-size luxury SUV.

26. In 2022, JLRNA launched the fifth generation Range Rover code named L460. Its predecessor, code named L405, was produced between 2013-2021.

At the same time, in 2022, JLRNA launched the third generation Range Rover Sport, code named L461. Its predecessor, code named L494, was also produced between 2013-2021.

27. The new 2022 models of both vehicles share the same platform known as the Modular Longitudinal Architecture-Flex. It is a flexible platform designed to support a wide range of powertrains, including internal combustion engines, plug-in hybrid electric vehicles, and battery electric vehicles. The platform utilizes a mix of materials, including aluminum, to achieve a balance between weight, strength, and stiffness.

28. With this new platform, JLRNA increased the length, width, and wheelbase of both the Range Rover and Range Rover Sport.

29. Range Rover touted its new vehicle platform to the media:

> The New Range Rover delivers true breadth of capability and excels in any surroundings. Whether negotiating busy city streets, remote rural tracks or soft desert sand, its suite of dynamic technologies work in effortless harmony to automatically and predictively assist the driver. Our new Integrated Chassis Control System is the brain of the operation and delivers Land Rover's most refined and intelligent capability yet, using one of the most advanced combinations of chassis technologies ever fitted to a production vehicle.
>
> COTT HIGGINS

VEHICLE ENGINEERING SENIOR MANAGER,
JAGUAR LAND ROVER[1]

**B. Range Rover's Introduces New Braking System**

30. With the 2022 Range Rover and Range Rover Sport redesigned vehicles, JLRNA added electronic active differential with Torque Vectoring by Braking ("TVBB") and cornering brake control ("CBC").

31. TVBB uses the vehicle's brakes to vector torque. TVBB controls understeer and oversteer by applying controlled braking to the inner or outer rear wheel. When a vehicle enters a corner, the TVBB system detects the need for increased cornering stability and applies the brakes to the inside wheels. This braking action reduces the speed of the inside wheels, allowing the vehicle to turn more efficiently and reducing understeer. While the CBC improves handling by distributing brake force application on each wheel while cornering. It is intended to supplement the ESC and ABS brake systems.

32. JLRNA described TVBB on its website as providing "enhance[d] agility, grip and cornering stability by constantly monitoring the balance and distribution of torque. The system controls understeer and oversteer by applying controlled braking to the inner or outer rear wheel, with the Electronic Active

[1] https://media.landrover.com/introducing-new-range-rover-serene-capability-assurance-and-composure-and-road

Differential also capable of locking the rear axle and creating a 50/50 split of torque across each rear wheel."[2]

33. Without TVBB, both front and bake brake pads will typically wear evenly. And, while both front and back will wear evenly, the deterioration will be slower because most of the braking is done by the front wheels.

34. With TVBB, however, the brake pads wear quicker because the vehicle is constantly applying the brakes without the driver touching the brake pedal to control any under or oversteering by the vehicle. Indeed, it has been reported that TVBB can cause greater wear and tear due to the constant engagement of the brakes and resulting in brake pad wear.[3]

35. In addition, TVBB generates additional heat, in some instance, an additional 122° F to 167° F, due to the constant braking. This added heat causes both rapid brake pad and rotor wear, including heat distortion, cracking, glazing and mechanical damage.

36. Seemingly, JLRNA attempted to account for the increased heat caused by the TVBB by switching the brake pad design from a smooth pad in 2021, to a larger grooved pad for the 2023 models to increase the pad's surface area and dissipate the increased heat associated with TVBB.

---

[2] https://media.landrover.com/introducing-new-range-rover-serene-capability-assurance-and-composure-and-road

[3] https://www.carexpert.com.au/car-news/torque-vectoring-explained




**Increased Size of 2023 Brake Pads**

2021 Range Rover



2023 Range Rover



**Grooved Brake Pads added to 2023 Models**

37. As discussed below, JLRNA efforts to address the increased heat caused by TVBB and reduce premature brake pad wear proved unsuccessful as brake pads are wearing at an alarming rate for a car marketed as premium luxury with a significant price tag.

**C. Range Rover's TVBB Causes Excessive Brake Pad Wear**

38. Range Rover, through its dealership network, regularly advertises that its brake pads and rotors should last in a range of 25,000 and 70,000 miles.

39. Indeed, authorized Range Rover dealerships around the country include Question and Answer sections on their websites,[4] which address brake pad wear on the 2023 vehicles:

> **How long do Land Rover Range Rover Sport brake pads last?**
>
> Land Rover Range Rover Sport brake pads frequently last between 30,000 and 70,000 miles depending on your driving habits. If you drive in gargantuan traffic and use your brakes mostly, you'll need to get an inspection more mostly. We suggest you reference your Land Rover Range Rover Sport owner's manual for recommended maintenance interval information.

40. Range Rover does not recommend a brake fluid replacement for Plaintiffs' vehicles until 32,000 miles at the second year of service,[5] yet both Plaintiffs required a brake pad and rotor replacement at half that mileage.

**IV. JLRNA has Knowledge of the Braking System Defect**

41. The following are just some examples of consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA") about the Brake System Defect in the Class Vehicles:

---

[4] https://www.landroverstlouis.com/2023-land-rover-the-new-range-rover-brake-pads.htm#:~:text=2023%20Land%20Rover%20The%20New%20Range%20Rover%20brake%20pads%20usually,get%20an%20inspection%20more%20invariably.' (Land Rover, St. Louis, MO); https://www.landroverdarien.com/service/service-tips/how-long-do-car-brakes-last/ (Land Rover Darien, CT)

[5]https://www.ownerinfo.landrover.com/document/3K/2023/1667889/proc/G3128050/G3130503?vin=SALK19E75PA034349

October 25, 2023 **NHTSA ID NUMBER: 11551945**

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11551945

**Incident Date** June 22, 2023

**Consumer Location** SAN ANTONIO, TX

**Vehicle Identification Number** SALKPBE74PA****

**Summary of Complaint**

Brakes making squealing noise and brake pads worn out front and rear within 17000 miles.

April 10, 2024 **NHTSA ID NUMBER: 11582194**

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11582194

**Incident Date** April 8, 2024

**Consumer Location** NORTON, OH

**Vehicle Identification Number** SALKP9E70PA****

**Summary of Complaint**

This vehicle is a 2023 Range Rover . I took it in to have the winter tires removed and the summer tires installed. Range Rover did a vehicle inspection and it showed the brake pad wear on the front as being a #7 and the rear as a #2. The scale is 1 to 10 , Ten being NO wear or new pads. I have the write up from Range Rover and pictures they took . I also have the bad brake pads that look like they are flaking away. The repair cost was $2,459.97. The service technician told us this was his 5th 2023 large Range Rover he has done so far this year. They also mentioned that they never do brake pads on a 1 year old vehicle ,let alone 5 vehicles so far this year. As expected i called Range Rover support line with NO answers or resolutions. The majority of my wife's travels in this vehicle have my children with her . Not sure if you can notify Range Rover of this issue, I understand they are a foreign company. Thank you for any help you can provide. [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

April 11, 2024 **NHTSA ID NUMBER: 11582424**

## Components: SERVICE BRAKES, ENGINE AND ENGINE COOLING

**NHTSA ID Number:** 11582424

**Incident Date** April 11, 2024

**Consumer Location** SHELBY TOWNSHIP, MI

**Vehicle Identification Number** SALKP9FU3PA****

**Summary of Complaint**

The contact owns a 2023 Land Rover Ranger Rover. The contact stated that while operating the vehicle the "Service Brakes" and "Low Coolant" warning lights were illuminated. The cause of the failure was not yet determined. The local dealer and manufacturer were notified of the failure. The approximate failure mileage was 15,000.

June 10, 2024 **NHTSA ID NUMBER: 11593423**

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11593423

**Incident Date** June 7, 2024

**Consumer Location** TAMPA, FL

**Vehicle Identification Number** SALK1BE75PA****

**Summary of Complaint**

Problems with brakes. poor braking . then warning sign should break pads worn at 12K miles. I have read many reports about similar defects for the new range rover. [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

July 13, 2024 **NHTSA ID NUMBER: 11601786**

## Components: SERVICE BRAKES

**NHTSA ID Number:** 11601786

**Incident Date** July 1, 2024

**Consumer Location** ROLLING HILLS, CA

**Vehicle Identification Number** SALKPBFU8PA****

**Summary of Complaint**

Brakes failed after less than 12000 miles.

October 23, 2024 **NHTSA ID NUMBER: 11621538**

**Components: SUSPENSION, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE**

**NHTSA ID Number:** 11621538

**Incident Date** November 1, 2023

**Consumer Location** BASTROP, TX

**Vehicle Identification Number** SALK1BE71PA****

**Summary of Complaint**

Multiple Safety Concerns: 1)The vehicles Emergency Braking System engaged TWICE, SUDDENLY, and in busy traffic/highway situations. Now told BREAK PADS AND ROTORS are worn and rusted badly-unusually soon for a newly purchased car-less than a year old. The Austin Jaguar Land Rover dealership's service person told me "most clients are replacing at 9,500 miles." If this is truly the case, then why would my sensor warning system not alert me sooner? 2) The vehicle engine coolant light keeps coming on. Dealer told me to "top it off." I check weekly and have to refill the coolant tank-now worried vehicle has faulted hoses or radiator and will overheat & catch on fire. There are a high number of owners of this vehicle brand, make, and model that are inquiring online about these safety concerns. Please investigate. Looking forward to a response.

42. In addition to complaints to NHTSA, there are a litany of online posts indicating that the brakes on the Range Rover models with TVBB are wearing at an alarming rate well before 25,000 miles:

- I have a problem with my 2023 RR, I am at 9k miles and it is 7 months old (I purchased it BRAND NEW in Jan 2023) and this past weekend during a really bad rain storm my BRAKE LIGHT came on reading "BRAKE PADS WORN". Called local LR dealer and scheduled a service and dropped car off! They called me the following day and told me my BRAKES are done and I need to replace them and ***that this is COMMON on all 2023 models due to rear assisted steering***. How can this be though to a 7 month old 2023 RR with only 9k miles (I drive very basic not racing and

slamming on brakes)? [have owned RR's for the past 16 years and never once had a brake issue prior to 50K miles but a new one that is 7 months old with 9K miles on it to already need thousands of dollars of new brakes makes no sense and I need assistance asap.[6]

- The 2023 RR long-wheelbase with 16k and back brakes need replacement at a cost of $1800.00, can't get brakes until January. The dealer won't provide a loaner and Land Rover Customer Service said we can submit a rental receipt but will not guarantee it will be approved after the car is fixed. What great customer service on 150k vehicles. I'm checking with legal to see what we can do. Just ridiculous. ***This is obviously an engineering issue that the brakes need replacement after such a short period***. Since when do you manufacture a vehicle and you don't make the replacement brakes for the vehicle? So tired of bad service from this company. No aftermarket brakes are available either.

- 23 full size Range Rover, oil light came on. Took it to the dealer, told them how the brakes are also shuddering and letting off in a concerning manner sometimes. No brake light obviously, it's only my first service. They call back, saying the rears are worn at just 11k miles, and the brake job will cost me $2200. Whaat?? This is a first. I know they'll keep saying "wear and tear" but anyone had this covered?[7]

---

6 https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/

7 https://www.reddit.com/r/RangeRover/comments/18yoc41/23_rr_first_service_needs_new_brakes/

- If you search on Reddit, there's another thread of owners having the same problem. Some got it covered while others didn't. It's a common problem it seems with the new RR (L460). It being over 5400 pounds and ***having rear wheel steering takes a heavy toll on the brakes making replacements more frequent***. It's definitely a downer. It's also known that Land Rover is having issues meeting consumer part demands so major delays there. I'm unsure if these delays are still current.[8]

- Jun 24, 2024. Have you ever imagined replacing your breaks less than 20K miles (less then 1.5 year). Range Rover Sports 2023 rear breaks running out too soon. I have to get rear pads replaced at 17K; while front breaks are still at 7mm. All tires tread is normal; i drive in city most of the time. Dealership is telling me that they are seeing this complain a lot and its because of some design change, which puts more pressure on rear breaks.[9]

- Are you guys hearing about this a lot as well ? Logically speaking this seems to be a design issue and RR must fix it.

- If it's legit under 12k miles and 1 year then it should be covered under the wear and tear warranty. It's a PITA to get it covered but it can be done. These things eat through rear pads, and of course with pads come new rotors and sensors. They are not cheap.[10]

[8] *Id.*
[9] https://www.rangerovers.net/threads/range-rover-sports-2023-rear-breaks-running-too-fast.364537/
[10] https://www.reddit.com/r/RangeRover/comments/18yoc41/23_rr_first_service_needs_new_brakes/

- Ok so here is an update from a conversation with Range Rover Service in LA after my brake pad warning light came on after 11k miles of easy driving. First thing is it is not covered under warranty unless you tell them there is a brake issue before the warning light comes on and the pads are a certain thickness which they couldn't tell me. REALLY. 2. ***They are fully aware of the problem and the rear pads are not as thick as the front and in combination with rear wheel steering it's an issue***. Their attitude is they don't really care and it one of those things. Pay up and get it fixed. So to rub salt in the guy told me one customer had had to change his twice and he'd done 9k miles but because he had a positive attitude he was cool about it. So he finished with expect this at least every 5 to 10 k miles.[11]

- I know this post is a year old, but add another victim to the list. 12k miles 10 months old and, Land Rover tech said I need new rear pads and rotors.[12]

- We have a 2023 Range Rover [long wheel body] with only 17k miles on it. Had to replace both rear brakes. Cost us $2500. Range Rover customer service was no help.[13]

- We are experiencing the same thing, back breaks shot at 13,000 miles, dealer acts like they are not

---

11 https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/

12 https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/

13 https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/

responsible, I pushed back and said ridiculous to spend $150K on a car and need new breaks. I had not researched issue yet to see if common, but after reading here, YES! Don't let Land Rover push you around, demand new back breaks. I was told they should last 25,000 - 30,000 miles, they are not even lasting half that long. It is a shame that you have to fight for a company to do what is right and replace them free of charge because they started out with an inferior product and know about it. I guess that is what you get for spending $150,000 on an overpriced car. I will go back to my GMCs thank you.[14]

- Feb 6, 2025. I just had my 2023 rear brake pads replaced in Wilmington, NC Range Rover dealership. 15,500 Miles...$2,200!!! They will tell you they are performance brakes...blah, blah, blah. I even called Range Rover corporate and explained how disappointing it was to purchase a 160k vehicle and to have to replace the breaks at under 16,000 miles. DEFINITELY A DESIGN FLAW! JUST LETTING EVERYONE KNOW BECAUSE THEY SURELY DO NOT TELL YOU THIS WHEN YOU DRIVE IT OFF THEIR LOT![15]

## V. JLRNA has Knowledge of the Braking System Defect

43. The law requires motor vehicle manufacturers—like JLRNA—to provide the Secretary of Transportation a copy of each communication it sends to

---

[14] https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/

[15] https://www.rangerovers.net/threads/range-rover-sports-2023-rear-breaks-running-too-fast.364537/

JLRNA's dealers, rental companies, or other owners or purchasers of the motor vehicles produced by the manufacturer "about a defect or noncompliance with a motor vehicle safety standard" that must be made available on a publicly accessible internet website. *See* 49 U.S.C. § 30166(f). Manufacturers accomplish this through NHTSA's Manufacturer Communications Portal ("MCP").

44. By October 2022, JLRNA knew of a significant number of complaints concerning the brake system to issue SSM75873 posted to the MCP. *See* https://www.nhtsa.gov/?nhtsaId=10226087. The underpinning of JLRNA's communication was recurring customer complaints about brake squeal with an associated groaning, grinding, vibration in the brakes when the footbrake is applied. This is how the Braking System Defect begins to manifest and, at the time, was limited to the new 2022-2023 Land Rover Range Rover L460 vehicles.

45. In October 2022, only months after the Class Vehicles were made available for sale in the United States, JLRNA instructed its dealers to "[c]heck [the] condition of brake pads and discs for excessive wear and replace as appropriate if they are worn below the minimum pad or disc thickness." *See* https://www.nhtsa.gov/?nhtsaId=10226087. JLRNA claimed the cause was "[c]urrently under analysis."

46. On November 23, 2022, JLRNA acknowledged a high volume of customer complaints concerning a knocking noise and vibration originating from the

rear brakes on the Class Vehicles and claimed it was caused by the parking brake having been applied for an extended period of time that left residue from the brake pads. *See* https://www.nhtsa.gov/?nhtsaId=10227439. The proposed remedy was to grind the rotor and remove any marks left from the brake pad, but this would not remediate the issue.

47. By May 5, 2023, JLRNA had expanded their braking concerns to the 2023 Land Rover Range Rover Sport L461 vehicles. *See* https://www.nhtsa.gov/?nhtsaId=10237552. Again, JLRNA instructed its dealers to "[c]heck [the] condition of brake pads and discs for excessive wear and replace as appropriate if they are worn below the minimum pad or disc thickness." *Id*. JLRNA provided the possibility for replacement of only the front brake pads and discs if they showed signs of excessive wear or were below the minimum thickness. *Id*. However, if the sound was believed to emanate from the rear brakes, JLRNA referred its dealer back to a workshop manual to continue with diagnosis and rectification. *Id*.

48. By September 22, 2023, JLRNA turned its focus away from the premature wear of the brake pads and rotors and steered its investigation to the Integrated Power Brake Unit valves being agitated by the Pulse Width Modulation vibrating and emitting noise into the cabin. Although no Diagnostic Trouble Code existed for this issue, JLRNA created a test for "Brake Pedal Noise – Test" in

October 2023 and directed its dealers to follow on-screen instructions that were not made publicly available. *See* https://static.nhtsa.gov/odi/tsbs/2022/MC-10227439-0001.pdf.

49. But by March 14, 2025, the mounting customer complaints concerning the braking system failures were acknowledged by JLRNA in three service communications: (i) Best Practices – Rear Brake Pad Wear; (ii) Best Practices – Brake Squeal; and (iii) Best Practices – Brake Judder/Vibration. All three are intertwined as part of the Braking System Defect.

50. First, JLRNA published its Best Practices – Rear Brake Pad Wear. *See* https://www.nhtsa.gov/?nhtsaId=11016646. JLRNA recognized the likelihood of what it characterized as a "manufacturing defect" considering the large volume of submissions for repair requests where the vehicle's rear brake warning light indicated premature wear of the brake pads and/or discs (rotors). JLRNA directed its dealers to confirm the rear brakes were "low" by capturing photos of the brake lining thickness and indicate the numerical measurement in a statement to be provided to JLRNA who would review the submission to "justify the gateway for approval based on evidence of a manufacturing defect."

51. Second, JLRNA published its Best Practices – Brake Squeal. *See* https://www.nhtsa.gov/?nhtsaId=11016647. JLRNA, again, recognized the likelihood of what it characterized as a "manufacturing defect" considering the large

volume of submissions for brake noise concerns. JLRNA directed its dealers to confirm the brake squeal via video and then disassemble the brake components and take photos of the rotors and pads, both front and back. JLRNA would then review the submissions to "justify the gateway for approval based on evidence of a manufacturing defect."

52. Third, JLRNA published its Best Practices – Brake Judder/Vibration. *See* https://www.nhtsa.gov/?nhtsaId=11016648. Yet again, JLRNA recognized the likelihood of a "manufacturing defect" based on the large volume of submissions for brake judder/vibration for repair requests. JLRNA directed its dealers to video the brake rotors being measured for lateral runout, followed by the disassembly of the brake components and photograph the rotors and pads, both front and back, plus the brake's hub flange mating surfaces. Afterwards, the dealer was instructed to provide the video and images to JLRNA who would review the submission to "justify the gateway for approval based on evidence of a manufacturing defect."

53. These three issues are manifestations of the alleged Braking System Defect at different stages leading to the premature wear of the brake pads and rotors that require replacement before failure.

## VI. JLRNA Provides Express and Implied Warranties

54. JLRNA provides an express warranty as set forth in its New Vehicle Limited Warranty ("NVLW"). The NVLW delivers three applicable express

warranties: (i) Bumper-to-Bumper Coverage for 4 years / 50,000 miles, whichever comes first; (ii) Wear Parts Coverage for 1 year / 12,500 miles, whichever comes first; and (iii) for Class Vehicles purchased and registered in New York, an additional express warranty is provided against all material defects for 2 years / 18,000 miles, whichever comes first.

55. The NVLW Bumper-to-Bumper warranty states that JLRNA "warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, upon presentment for service at a Land Rover retailer/authorized repairer, any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge, with a new or re-manufactured part distributed by JLR at its sole option."

56. JLRNA's Bumper-to-Bumper warranty coverage specifically excludes, "[n]ormal wear and tear (some parts are considered as normal wear and tear and require periodic maintenance that must be performed by the user of the vehicle), which includes brake pads, brake discs, any other friction related components, and natural wear of materials within the vehicle such as leather or floor coverings (list is not exhaustive)."

57. Nonetheless, JLRNA's NVLW provides warranty coverage for brake pads and brake discs (rotors) for "defects in material and workmanship only. Normal

wear is not covered by the New Vehicle Limited Warranty." The warranty period for this coverage under the NVLW is for a period 1 year / 12,500 miles.

58. JLRNA also provides a notice to New York purchasers, stating: "IN ADDITION TO ANY WARRANTY OFFERED BY THE MANUFACTURER, YOUR NEW CAR, IF PURCHASED AND REGISTERED IN NEW YORK STATE, IS WARRANTED AGAINST ALL MATERIAL DEFECTS FOR 18,000 MILES OR 2 YEARS, WHICHEVER FIRST COMES."

59. To invoke this coverage, a vehicle owner must report any problems to the manufacturer, its agent, or the retailer/authorized repairer. Once notified, the problem must be corrected free of charge.

60. JLRNA further recognizes the rights of Plaintiffs and Class Member to implied warranties: "UNDER THE LAW, THE OWNER MAY BE ENTITLED TO THE BENEFIT OF CERTAIN IMPLIED WARRANTIES:

a. AN IMPLIED WARRANTY OF MERCHANTABILITY (THAT YOUR CAR IS REASONABLY FIT FOR THE GENERAL PURPOSE FOR WHICH IT WAS SOLD) OR,

b. AN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. (THAT YOUR CAR IS SUITABLE FOR YOUR SPECIAL PURPOSES).

61. JLRNA acknowledges the Class Vehicle owners are the intended third-party beneficiaries of these implied warranties and affirmatively seeks to limit the rights of Class Vehicle owners like Plaintiffs and Class Members to implied

warranties provided by JLRNA: "THESE IMPLIED WARRANTIES ARE LIMITED, TO THE EXTENT ALLOWED BY LAW, TO THE TIME PERIOD COVERED BY THE WRITTEN WARRANTIES, OR TO THE APPLICABLE TIME PERIOD PROVIDED BY STATE LAW (USA ONLY) OR PROVINCIAL LAW (CANADA ONLY), WHICHEVER PERIOD IS SHORTER."

62. Despite warranty disclaimers and limitations, JLRNA, in certain instances, quietly accepted responsibility and replaced brake pads and rotors at its own expense. These reports demonstrate that JLRNA had knowledge of the defects and took steps to quietly remediate in certain cases without engaging in a broader effort for other owners. Some examples are below:

- Same happened to me after 9 months and 13k miles. Car is currently with the dealer. After a bit of arguing and replacing some sensors (which was pointless) ***they admitted a fault with the rear pads/discs and are replacing them under warranty***. The fronts are still in good condition and are nowhere near needing to be replaced. Since this happened 3 weeks ago they're now saying it's common and happening to most L460's.[16]

- I just took my 23 in last month for the 10K service and they informed me my rear brakes needed replaced. ***They filed a claim with Land Rover and put on new rear brakes***. It's an issue I learned with this new model. From reading some reviews ***I guess some people had to fight***

[16] https://www.reddit.com/r/RangeRover/comments/14m4mdq/new_brakes_on_a_2023_range_rover_with_only_9k/?rdt=42911

***with the dealership for them to cover the rear brake replacements but mine put them on with no issue. Hope you have the same luck.***[17]

- Fortunately the fight was short lived. ***Corporate response came back with that they will replace the pads and rotors for us this one time only***. Moving forward, any future "worn" services will be at our cost. My takeaway is that it appears these new Rovers will require annual pad and rotor replacements. Dealer said that if we change the pads they recommend replacement of rotors as well. which they quote is a $3k service.[18]

## VII. CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this class action on behalf of themselves and on behalf of the Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64. Plaintiffs are informed and believe that the Class Vehicles include a design and/or manufacturing defect that causes excessive and premature wear to the Class Vehicles' braking system that has caused and continues to cause harm to Plaintiffs and Class Members.

65. Plaintiff Boris Zats brings this class action on behalf of himself and all other similarly situated members of a proposed New York class ("New York Class"), defined as follows:

---

[17] https://www.reddit.com/r/RangeRover/comments/1bnfhwp/23_range_rover_brake_pads_worn_service_light/?rdt=58064

[18] https://www.reddit.com/r/RangeRover/comments/1bnfhwp/23_range_rover_brake_pads_worn_service_light/

> All persons or entities who purchased or leased a Class Vehicle in New York.

66. Plaintiff Amir Gupta brings this class action on behalf of himself and all other similarly situated members of a proposed California class ("California Class"), defined as follows:

> All persons or entities who purchased or leased a Class Vehicle in California.

67. Plaintiff Frank Ruffolo brings this class action on behalf of himself and all other similarly situated members of a proposed Illinois class ("Illinois Class"), defined as follows:

> All persons or entities who purchased or leased a Class Vehicle in Illinois.

68. Numerosity. Although the exact number of class members in each of the proposed Classes are uncertain, and can only be ascertained through appropriate discovery, including discovery of JLRNA sales records, the Classes are each so numerous that the joinder of all members is impracticable. The Class is comprised of an easily ascertainable, self-identifying set of persons who purchased the Class Vehicles.

69. Commonality and Predominance. There are questions of law and fact common to the members of the New York, California and Illinois Classes, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether JLRNA engaged in unlawful, unfair, or deceptive business practices in selling Class Vehicles to Plaintiffs and Class Members;

b. Whether JLRNA made false representations or omitted and concealed material facts related to the Class Vehicles it sold to Plaintiffs and Class Members;

c. Whether the Class Vehicles and their braking system are defectively designed;

d. Whether the Class Vehicles and their braking system are manufactured in such a way they are not suitable for their intended use or were not of similar quality to other vehicles in the trade, including JLRNA's defective workmanship or use of defective materials;

e. Whether the premature wear and additional costs imposed by the premature wear of the braking system of the Class Vehicles would be considered material by a reasonable consumer;

f. Whether JLRNA was aware of the braking system defect that was likely to cause premature wear to the brakes and impose additional repair costs on Plaintiffs and Class Members before the Class Vehicles were sold to these Class Members; and

g. Whether Plaintiffs and the Class Members are entitled to damages, and the amount of such damages.

70. Typicality. Plaintiffs' claims are typical of the claims of the Class Members in that Plaintiffs, like all Class Members, purchased a Class Vehicle with the braking defect and has been damaged by JLRNA's uniform misconduct.

71. Furthermore, the factual bases of JLRNA's misconduct are common to all Class Members and represent a common nucleus of facts surrounding the braking system and Class Vehicle sale or lease resulting in injury to all members of the Class.

72. Fair and Adequate Representation. Plaintiffs will fairly and adequately protect the interests of their respective Classes. Plaintiff has retained counsel who are experienced in consumer class-action litigation. Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

73. Superiority of Class Action. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

74. The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for JLRNA. In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties' resources, and protects the rights of each Class Member.

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *et seq*. ("MMWA")
### On Behalf of All Classes

75. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

76. The MMWA provides a private right of action by purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1). As alleged herein, JLRNA failed to comply with its warranty obligations under state law governing the Class Vehicles.

77. The Class Vehicles are consumer products, as that term is defined in 15 U.S.C. § 2301(1).

78. Plaintiffs and each member of the New York and California Classes are consumers, as that term is defined in 15 U.S.C. § 2301(3).

79. JLRNA is a supplier and warrantor, as those terms are defined in 15 U.S.C. § 2301(4)-(5).

80. The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1). JLRNA breached the implied warranty of merchantability for the Class Vehicles, as alleged herein, which it cannot disclaim under the MMWA, 15 U.S.C. § 2308(a)(1), by failing to provide

merchantable goods. Plaintiffs and Class Members have suffered damages as a result of JLRNA's breach of the implied warranty of merchantability and express warranty as set forth herein. 15 U.S.C. § 2310(d)(1)-(2).

81. JLRNA was provided notice of the claims raised by Plaintiffs and was afforded a reasonable opportunity to cure. JLRNA failed to cure in that it refused to cure the alleged defect or remediate the braking system's premature wear. Until Plaintiffs' representative capacity is determined, notice and opportunity to cure through Plaintiffs, and on behalf of the Classes, can be provided under 15 U.S.C. § 2310(e).

82. JLRNA's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

83. Plaintiffs and the members of the Classes have suffered, and are entitled to recover, damages as a result of JLRNA's breach of express and/or implied warranties and violations of the MMWA.

84. Plaintiffs also seek an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2). Plaintiffs

and the Classes intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

## SECOND CAUSE OF ACTION

### New York General Business Law §§ 349, 350
### [On Behalf of the New York Class]

85. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86. Plaintiff Zats asserts this claim against JLRNA on behalf of himself and all members of the putative New York Class.

87. Plaintiff Zats and New York Class Members are "persons" within the meaning of N.Y. GBL § 349(h).

88. The N.Y. GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." JLRNA's conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL § 349.

89. The N.Y. GBL § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." JLRNA's conduct, as described above and below, constitutes "false advertising" within the meaning of the New York GBL § 350.

90. JLRNA's deceptive acts and practices as made unlawful by N.Y. GBL § 349 and/or false advertising as made unlawful by N.Y. GBL § 350 were intended

to mislead and/or conceal material information from consumers who were in the process of purchasing and/or leasing Class Vehicles with the Brake System Defect, which is conduct directed at consumers.

91. JLRNA knew the Class Vehicles suffered from the Braking System Defect.

92. In failing to disclose the Braking System Defect, JLRNA knowingly concealed material facts breaching its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

93. In misrepresenting the reliability of the braking system despite the presence of the Braking System Defect, JLRNA knowingly misrepresented material facts thereby engaging in false advertising within the meaning of N.Y. GBL § 350.

94. The facts concealed, omitted or misrepresented by JLRNA to Plaintiffs and other New York Class Members are material because a reasonable person would have considered them to be important in deciding whether to purchase or lease a Class Vehicle, or would have otherwise paid less for the Class Vehicle due to the Braking System Defect.

95. JLRNA continued to conceal the Braking System Defect even after consumers, including Class Members, began reporting problems on-line, directly to JLRNA, directly to a JLRNA retailer/authorized repairer, and NHTSA. Indeed,

JLRNA continues to cover up and conceal the Braking System Defect and its associated impact on consumers who purchase or lease Class Vehicles.

96. As direct and proximate result of JLRNA's deceptive acts or practices and/or false advertising, Plaintiff Zats and New York Class Members have suffered and will continue to suffer actual damages. Had Plaintiff Zats and other New York Class Members known that the Class Vehicles suffered from the Braking System Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them. Moreover, Plaintiff Zats, like other Class Members, had to pay out of pocket expenses to temporarily alleviate the Braking System Defect.

97. Plaintiff Zats paid $2,509.43 plus tax to replace his brake pads and rotors in just 15 months of ownership and 16,600 miles. Because of the Braking System Defect this is also a recurring expense Plaintiff Zats and New York Class Members will have to pay due to the premature failure of the brake pads and rotors on the Class Vehicles.

98. Since JLRNA's willful and knowing conduct caused injury to Plaitniff Zats and New York Class Members, Plaintiffs seek recovery of actual damages or $50, whichever is greater per transaction, discretionary treble damages up to $1,000 per transaction, punitive damages, reasonable attorneys' fees and costs, and an order

enjoining JLRNA's deceptive conduct, and any other just and proper relief available under N.Y. GBL § 349 and § 350.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty N.Y. U.C.C. § 2-313
### [On Behalf of the New York Class]

99. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

100. Plaintiff Zats asserts this claim against JLRNA on behalf of himself and all members of the putative New York Class.

101. JLRNA provided all purchasers and lessees of the Class Vehicles with the NVLW described herein, which became a material part of the bargain. Accordingly, JLRNA's express warranty is an express warranty under New York law.

102. The NVLW Bumper-to-Bumper express warranty states JLRNA "warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, upon presentment for service at a Land Rover retailer/authorized repairer, any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge, with a new or re-manufactured part distributed by JLR at its sole option." The warranty period for this coverage is 4 years / 50,000 miles, whichever comes first.

103. JLRNA excludes wear items from this Bumper-to-Bumper express warranty, including brake pads and brake discs (rotors). JLRNA expressly warrants brake pads and brake discs (rotors) under the NVLW for "defects in material and workmanship only. Normal wear is not covered by the New Vehicle Limited Warranty." This warranty period is 1 year / 12,500 miles.

104. While JLRNA attempts to avoid providing warranty coverage for the Braking System Defect, the NVLW also requires JLRNA provide the following additional express warranty to New York purchasers and lessees: "IN ADDITION TO ANY WARRANTY OFFERED BY THE MANUFACTURER, YOUR NEW CAR, IF PURCHASED AND REGISTERED IN NEW YORK STATE, IS WARRANTED AGAINST ALL MATERIAL DEFECTS FOR 18,000 MILES OR 2 YEARS, WHICHEVER FIRST COMES."

105. To invoke this New York warranty coverage, a New York Class Vehicle owner must report any problems to the manufacturer, its agent, or the retailer/authorized repairer. Once notified, the problem must be corrected free of charge.

106. JLRNA breached this express warranty when its retailer/authorized repairer failed to correct the Braking System Defect free of charge, instead charging Plaintiff Zats $2,509.43 plus tax to temporarily remediate the issues without correcting the Braking System Defect.

107. As a result of JLRNA's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles have suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the Braking System Defect, Plaintiff Zats and the New York Class Members were harmed and suffered actual damages in that the Class Vehicles in paying to prematurely replace brake pads and brake discs, which are certain to continually fail prematurely over the useful life of the Class Vehicle.

108. As a result of JLRNA's breach of the express warranty, Plaintiff Zats and Class Members are entitled to legal and equitable relief against JLRNA, including actual damages, specific performance, attorneys' fees and litigation costs.

109. In addition, with respect to Class Members whose vehicles failed after the expiration of the applicable warranty period and were repaired within a reasonable time thereafter, the durational limits of the warranty are unconscionable pursuant to New York Uniform Commercial Code Sec. 2-302(1) and (2), because as alleged herein, JLRNA was aware of the basic defects in the Braking System prior to selling or leasing the Class Vehicles and knew or should have known that the Class Vehicles suffered from the Braking System Defect, but concealed or intentionally failed to reveal this information to Class Members in order to cause them to wait until after the warranty period to seek repairs, or pay for repairs despite coverage under the New York warranty.

## FOURTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability N.Y. U.C.C. § 2-314**
**[On behalf of New York Class]**

110. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111. Plaintiff Zats asserts this claim against JLRNA on behalf of himself and all members of the putative New York Class.

112. Class Vehicles are "goods" and Plaintiff Zats and members of the New York Class are "buyers" within the meaning of §§ 2-103, 2-104, 2-105. JLRNA is a "seller," "merchant," or "retail seller" under §§ 2-103 and 2-104.

113. JLRNA was at all relevant times the manufacturer, distributor warrantor, and/or merchant of the Class Vehicles. JLRNA knew or had reason to know the specific use for which the Class Vehicles were purchased.

114. JLRNA further recognizes Plaintiffs and Class Members are entitled to implied warranties for the Class Vehicles: "UNDER THE LAW, THE OWNER MAY BE ENTITLED TO THE BENEFIT OF CERTAIN IMPLIED WARRANTIES:

a. AN IMPLIED WARRANTY OF MERCHANTABILITY (THAT YOUR CAR IS REASONABLY FIT FOR THE GENERAL PURPOSE FOR WHICH IT WAS SOLD) OR,

b. AN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE. (THAT YOUR CAR IS SUITABLE FOR YOUR SPECIAL PURPOSES)."

115. JLRNA provided Plaintiff Zats and New York Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from the Braking System Defect that results in premature brake failure that can bake driving unreasonably dangerous.

116. JLRNA impliedly warranted that the Class Vehicles were merchantable and fit for such use. This implied warranty included among other things: (i) a warranty that the Class Vehicles as designed, manufactured, supplied, distributed, and marketed by JLRNA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' Braking System would be fit for its intended use while the Class Vehicles were being operated.

117. Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale or lease and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff Zats and New York Class Members with reliable, durable and safe transportation. Instead, the Class Vehicles are defective as described more fully above.

118. Plaintiff Zats is excused from pleading privity under New York law. JLRNA expressly understood Plaintiff Zats and New York Class Members are

intended third-party beneficiaries of the implied warranties JLRNA provided with the implied warranties as JLRNA made clear when stating: "the owner may be entitled to the benefit of certain implied warranties." Recognizing the implied warranty rights belong to the Class Vehicles' owners or lessees, JLRNA sought to limit those rights clearly establishing both JLRNA and the Class Vehicles' owners/lessees understood all implied warranty rights were for the benefit of the end user as JLRNA contemplated.

119. Additionally, privity need not be pled where, as here, the alleged defect presents a source of danger. The allegations here are as to a Braking System Defect that causes the premature failure of the braking system if not promptly replaced. The Class Vehicles with an alleged Braking System Defect presents a source of danger when driven so privity need not be pled or established by Plaintiff Zats.

120. JLRNA's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fir for such use in violation of U.C.C. § 2:314 *et. seq*.

121. As a direct and proximate result of the breach of implied warranty, Plaintiff Zats and New York Class Members have been injured in an amount to be proven at trial, including continual replacement of the prematurely worn brake pads and rotors along the reduced value of the Class Vehicles caused by the Braking System Defect.

## FIFTH CAUSE OF ACTION

**Violation of the California Consumer Legal Remedies Act –
(CAL. CIV. CODE § 1791, et seq.)
[On behalf of California Class]**

122. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

123. Plaintiff Gupta bring this cause of action on behalf of himself and on behalf of the putative California Class Members

124. Defendant JLRNA is a "Person" under California Civil Code section 1761(c).

125. Plaintiff Gupta and potential California Class Members are "consumers" under California Civil Code section 1761(d).

126. The purchases and leases of Class Vehicles and the warranties issued to Plaintiff Gupta and potential California Class Members constitute transactions as defined by California Civil Code section 1761(e).

127. The Class Vehicles and warranties constitute "goods" or "services" as defined by California Civil Code sections 1761(a) and (b).

128. Plaintiff Gupta and California Class Members bought or leased the Class Vehicles and warranties primarily for personal, family, and household purposes under California Civil Code section 1761(d).

129. JLRNA's misrepresentations, active concealment, failure to disclose, and omissions regarding the Class Vehicles and violated the California Consumer Legal Remedies Act, codified at California Civil Code section 1750 *et seq.:*

a. JLRNA misrepresented the Class Vehicles and warranties had characteristics, benefits, or uses that they did not have. Cal. Civ. Code § 1770, subd.(a)(5);

b. JLRNA misrepresented the Class Vehicles and warranties were of a particular standard, quality, or grade when they were of another. Cal. Civ. Code § 1770, subd. (a)(7);

c. JLRNA advertised, and continues to advertise, the Class Vehicles and warranties with inability and intent not to sell or lease them as advertised. Cal. Civ. Code § 1770, subd. (a)(9);

d. JLRNA misrepresented the Class Vehicles and warranties conferred or involved rights, remedies, or obligations that they did not. Cal. Civ. Code § 1770, subd. (a)(14); and

e. JLRNA misrepresented the Class Vehicles and warranties were supplied in accordance with previous representations when in fact they were not. Cal. Civ. Code § 1770, subd. (1)(16).

130. JLRNA's unfair and deceptive acts or practices occurred repeatedly during JLRNA's course of trade and business. These practices were material, capable of deceiving a substantial portion of the purchasing public, and thus caused economic harm to purchasers and lessees of the Class Vehicles.

131. JLRNA knew in 2022, at the latest, and before the sale or lease of a Class Vehicle to Plaintiff Gupta, and many of the Class Vehicles, that the Class Vehicles contained the Braking System Defect alleged here to have been defectively designed or manufactured, manifested serious problems leading to the premature

failure of the brake pads and discs rendering the Class Vehicles unsuitable for their intended use.

132. By the fall of 2022 at the latest, JLRNA had exclusive knowledge of material facts about the existence of the Braking System Defect in the Class Vehicles. JLRNA actively concealed the Braking System Defect from Plaintiff Gupta and California Class Members who purchased the Class Vehicles.

133. JLRNA has failed to resolve the Braking System Defect in the Class Vehicles purchased or leased by Plaintiff Gupta and California Class Members.

134. JLRNA was under a duty to Plaintiff Gupta and California Class Members to disclose the defective nature of the braking system, as well as any associated risks or costs they would have to bear and features they would have to forgo by purchasing a Class Vehicle. JLRNA was under this duty because:

a. JLRNA was and is in a superior position to know the true state of the facts, and true nature of the Braking System Defect in the Class Vehicles;

b. Plaintiff Gupta and California Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Braking System Defect until the brake pads and discs failed;

c. JLRNA knew Plaintiff Gupta and California Class Members could not have reasonably learned of or discovered the Braking System Defect prior to the brake pads and discs premature failure.

135. In failing to disclose the Braking System Defect, JLRNA knowingly and intentionally concealed material facts and breached its duty to avoid doing so.

136. The facts concealed and not disclosed by JLRNA to Plaintiff Gupta and California Class Members are material in that a reasonable consumer would have considered them to help decide whether to purchase or lease a Class Vehicle. A reasonable consumer would consider the Braking System Defect to be an essential and desirable quality of such a vehicle. Had Plaintiff Gupta and California Class Members known that the Class Vehicles contained the Braking System Defect, they would not have purchased or leased a Class Vehicle.

137. Plaintiff Gupta and California Class Members are reasonable consumers. They did not expect their Class Vehicles to contain a Braking System Defect. It is reasonable for a consumer to expect that the braking system will not contain a defect that may lead to the premature failure of the brake pads and discs, or any other defect that would prohibit them from using the vehicle.

138. As a result of JLRNA's misconduct as described herein, Plaintiff Gupta and California Class Members have been harmed and suffered actual damages in that the Class Vehicles should not contain a defective braking system that increases the risk of serious injury or economic harm from the premature failure of the brake pads and discs. This threatens the safety of California Class Members, their passengers, and other motorists.

139. As a direct and proximate result of JLRNA's unfair and deceptive acts, omissions, concealment, and practices, Plaintiff Gupta and California Class

Members have suffered, and will continue to suffer actual damages in that they continue to own a Class Vehicle with the Braking System Defect where the brake pads and discs regularly wear prematurely and require replacement or fail risking serious injury with no remedy in sight.

140. Plaintiff Gupta and California Class Members are entitled to equitable relief.

141. Under California Civil Code section 1780, subd. (a)(2), Plaintiff Gupta and California Class Members seek an injunction prohibiting the acts set forth here which violate the Consumer Legal Remedies Act.

142. Plaintiff Gupta seeks an order prohibiting JLRNA from engaging in the acts described in this Complaint and requiring JLRNA to do the following:

(1) Cease all sales of Class Vehicles to any persons or entities including sales to its California JLRNA dealerships of Class Vehicles;

(2) Issue a "Stop Sale" order to its California dealerships prohibiting the sales of any Class Vehicle to any member of the public;

(3) Take down advertisements for Class Vehicles or otherwise make abundantly clear to the general public on JLRNA's website and other advertising that Class Vehicles are subject to a Braking System Defect that currently has no remedial cure;

(4) Toll the express warranty period for all Class Vehicles to cover, at a minimum, the time period during which the Class Vehicles have been recalled until a full remedy is developed that permits the Class Vehicles to permanently and safely operate with all functions consistent with California Civil Code section 1795.6.

(5) Repair Class Vehicles within 30 days of presentation under California Civil Code section 1793.4 or offer a repurchase of said vehicles under California Civil Code section 1794.

143. JLRNA acted with malice, oppression, and fraud toward Plaintiff Gupta and potential Class Members under California Civil Code section 3294.

144. Plaintiff Gupta and the California Class provided notice to JLRNA via certified mail of the alleged violations of the CLRA pursuant to California Civil Code Sect. 1782(a) and demanded JLRNA rectify the braking system problems. More than 30 days have passed since serving that notice and JLRNA has offered no corrective action for Plaintiff Gupta and the California Class.

145. Under California Civil Code section 1780(d), Plaintiff may recover attorney's fees and costs according to proof at trial.

## SIXTH CAUSE OF ACTION

**Violation of the Song-Beverly Consumer Warranty Act –**
**Breach of Implied Warranty**
**(On Behalf of California Class)**

146. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

147. JLRNA is the "manufacturer," "distributor," and/or "retail seller" of the Class Vehicles and JLRNA's obligation under the implied warranties is either direct or by law pursuant to California Civil Code section 1795.

148. Each California Class Members' Vehicle included an implied warranty that the Class Vehicles were merchantable under California Civil Code section 1792.

149. The Class Vehicles were not fit for the ordinary purpose for which such goods are used because it was equipped with defects in the braking system.

150. The Class Vehicles were not of the same quality as those generally acceptable in the trade because they were equipped with defects in the Class Vehicle's braking system causing premature wear, which could cause the brake system to fail, causing a risk of serious injury.

151. The Class Vehicles did not match the promises or facts stated on the label of the car; namely that it was and would operate as an electric vehicle with a stated mileage range at full charge.

152. Plaintiff Gupta and California Class Members are entitled to justifiably revoke acceptance of the Class Vehicles under California Civil Code section 1794 *et seq*.

153. Plaintiff Gupta and California Class Members revoke acceptance of the Class Vehicles.

154. Under the Act, Plaintiff Gupta and California Class Members are entitled to damages under California Civil Code sections 1793.2 and 1794 *et seq*.

155. Plaintiff Gupta and California Class Members are entitled to recover all incidental and consequential damages under California Civil Code section 1794 *et seq*. and Commercial Code sections 2714 and 2715 *et seq*.

156. Plaintiff Gupta and California Class Members are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorney's fees reasonably incurred in connection with the commencement and prosecution of this action.

157. Plaintiff Gupta and the California Class Members are entitled to prejudgment interest under Civil Code section 3287.

## SEVENTH CAUSE OF ACTION

**Violation the Unfair Business Practices Act –**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of California Plaintiffs and Class Members)**

158. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

159. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the Unfair Business

Practices Act. Cal. Bus. & Prof. Code, section 17200 *et seq*. ("UCL"). Such violations of the UCL result from unlawful, unfair or fraudulent business acts and practices. A causal connection exists between JLRNA's business practices and the alleged harm in that JLRNA's conduct caused or was likely to cause substantial injury to Plaintiff Gupta and California Class Members.

160. JLRNA's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further JLRNA's legitimate business interests, other than the described conduct. Plaintiff Gupta reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

161. Plaintiff Gupta and California Class Members' injuries are: (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition; and, (3) not injuries that consumers themselves could reasonably have avoided.

162. Here, JLRNA's conduct has caused and continues to cause substantial injury to Plaintiff Gupta and California Class Members. Plaintiff Gupta and

California Class Members have suffered injury in fact due to JLRNA's decision to knowingly sell defective Class Vehicles, with no remedy or fix available for the known defect or reimburse Plaintiff Gupta and California Class Members who paid to temporarily repair prematurely failing brake pads and discs. JLRNA's conduct has caused substantial injury to Plaintiff Gupta and California Class Members.

163. JLRNA's conduct as alleged herein solely benefits JLRNA while providing no benefit of any kind to Plaintiff Gupta or California Class Members. Such deception used by JLRNA convinced Plaintiff Gupta and California Class Members that the Class Vehicles were of a certain value and price to induce them to spend money on the Class Vehicles. Knowing that Class Vehicles were not of a suitable quality to be sold, because of the defective braking system, JLRNA unfairly profited from their sale. The injury suffered by Plaintiff Gupta and the members of the California Class is not outweighed by any countervailing benefits to consumers.

164. The injuries suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have avoided. After JLRNA falsely represented the quality of the Class Vehicles, Plaintiff and potential Class Members suffered injury in fact due to their subsequent purchase and/or lease of the defective Class Vehicles. JLRNA failed to take reasonable steps to inform Plaintiff and potential Class Members that the Class Vehicles were in a potentially permanently defective condition due to the defects with the braking system. As such, JLRNA leveraged its

position of power and its superior (and singular) knowledge to deceive Plaintiff and potential Class Members to buy the Class Vehicles. The injury suffered by Plaintiff and potential Class Members are not injuries that they could reasonably have avoided.

165. JLRNA's conduct violated the "unfair" prong of section 17200.

166. JLRNA's fraudulent business acts and practices were likely to and did deceive members of the public.

167. Plaintiff Gupta and California Class Members were not only likely to be deceived, but in fact were deceived by JLRNA. Plaintiff Gupta and California Class Members agreed to buy or lease Class Vehicles assuming that they would be free from braking system defects that lead to premature failure of the brake pads and discs, when in fact they were not. Plaintiff Gupta's and California Class Members' reliance on JLRNA's deceptive statements is reasonable due to the unequal bargaining power between JLRNA and Plaintiff Gupta and California Class Members as well as JLRNA's superior knowledge. It is likely that JLRNA's fraudulent business practice would deceive members of the public at large.

168. JLRNA deceived Plaintiff Gupta and California Class Members by falsely representing the Class Vehicles as having merchantable, suitable quality. This conduct satisfies the "fraudulent" element of UCL section 17200.

169. JLRNA deceived Plaintiff Gupta and California Class Members by representing the Class Vehicles to be of a certain, non-defective, quality, and unfairly deceived Plaintiff Gupta and California Class Members by representing that the Class Vehicles were suitable for sale, when JLRNA knew that they were not.

170. JLRNA used misrepresentations and concealments of material facts to induce Plaintiff Gupta and California Class Members to buy the Class Vehicles, in violation of UCL section 17200. Had JLRNA not misrepresented the quality of the Class Vehicles, Plaintiff Gupta and California Class Members would not have purchased the Class Vehicles. JLRNA's conduct caused and continues to cause economic harm to Plaintiff Gupta and California Class Members.

171. The misrepresentations and concealments by JLRNA were "unlawful" business practices or acts under UCL section 17200. JLRNA's business practices violated, *inter alia*, California Civil Code sections 1709,1710, 1711, 1770, 1791.1, 1792, 1793.2, 1794, and 49 USC §§ 30118-9, 30166.

172. JLRNA has engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff Gupta and California Class Members to judgment and equitable relief against JLRNA. Under UCL section 17203, Plaintiff Gupta and California Class Members seek an order requiring JLRNA to immediately cease its unlawful, unfair, and fraudulent business practices, and requiring JLRNA to correct its actions. No adequate remedy at law exists to address JLRNA's ongoing and future violations.

## EIGHTH CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing (On Behalf of California Class Members)

173. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

174. Plaintiff Gupta brings this clam on behalf of himself and on behalf of California Class Members.

175. Every contract in the State of California has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of the contract's express terms.

176. Plaintiff Gupta and California Class Members have complied with and performed all conditions of the contract.

177. JLRNA breached the implied covenant of good faith and fair dealing by failing to inform Plaintiff Gupta and California Class Members of the Braking System Defect affecting the Class Vehicles and failing to properly repair/remedy this defect.

178. JLRNA concealed the true nature and severity of the Braking System Defect as a noise or vibration issue and provided only nominal remedies representing the cheapest possible temporary symptom management intended to suppress or conceal the Braking System Defect, if any remedy was provided at all without curing the Braking System Defect itself.

179. JLRNA acted in bad faith and/or with malicious motive in denying Plaintiff Gupta and California Class Members the full benefit of their bargain as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212
### (On Behalf of Illinois Class Members)

180. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

181. Plaintiff Ruffolo brings this claim on behalf of himself and on behalf of Illinois Class Members.

182. JLRNA is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

183. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

184. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by the law under 810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212.

185. JLRNA impliedly warranted that the Class Vehicles, which it designed, manufactured and sold, were merchantable, fit and safe for their intended use, including the specific capability of safe braking.

186. The Class Vehicles, however, do not operate safely and are unfit for their intended use due to the Braking System Defect that causes premature wear of the brake pads and rotors leading to brake system failure that presents significant risk of serious injury absent immediate repairs that JLRNA shifts to Class Members.

187. As a direct and proximate result of JLRNA's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff Ruffolo and the Illinois Class suffered damages including the costs to replace brake pads and rotors, the loss of use of their vehicle, the inflated price of the Class Vehicles with the undisclosed Braking System Defect along with the repressed resale value of these Class Vehicles.

## <u>TENTH CAUSE OF ACTION</u>

**Violation of the Illinois Consumer Fraud and Deceptive Practices Act**
**815 ILCS 505/1, et seq. and 720 ILCS 295/1A**
**(On Behalf of Illinois Class Members)**

188. Plaintiffs incorporate by reference each and every allegation contained in the preceding and succeeding paragraphs as though fully restated and re-alleged.

189. Plaintiff Ruffolo brings this claim on behalf of himself and on behalf of Illinois Class Members.

190. JLRNA is a "person" as that term is defined in 815 ILCS 505/1(c).

191. Plaintiff Ruffolo and the Illinois Class Members who purchased or leased Class Vehicles are "consumers" pursuant to 815 ILCS 505/1(e).

192. The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") is to enjoin trade practices which confuse or deceive the consumer. The Illinois CFA prohibits "unfair or deceptive acts or practices, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has infact been misled, deceived or damaged thereby." 815 ILCS 505/2.

193. JLRNA participated in deceptive trade practices that violated the Illinois CFA by concealing and failing to disclose the presence of the Braking System Defect as alleged throughout this Complaint.

194. JLRNA's acts and omissions are deceptive in that it sold vehicles it knew would not operate safely due to the Braking System Defect and would require substantial recurring maintenance costs to incurred by Class Members to operate the Class Vehicle safely.

195. Plaintiff Ruffolo and the Illinois Class were deceived or misled by JLRNA's failure to disclose the braking system would prematurely wear and require

replacement of the brake pads and rotors, repeatedly, at great additional cost to Class Members to maintain safe operation of the Class Vehicles. Plaintiff Ruffolo and the Illinois Class have suffered out-of-pocket losses in the amounts they paid to replace brake pads and rotors due to the undisclosed Braking System Defect.

196. Direct pre-suit notice of Plaintiff Ruffolo's claims and the claims of the Illinois Class were provided to JLRNA through its counsel

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests a judgment against JLRNA, as follows:

A. For an order certifying the Class, appointing Plaintiffs as representatives of their respective Classes, and designating the undersigned as Class Counsel;

B. For compensatory and/or statutory damages sustained by Plaintiffs and Class Members;

C. For treble damages where available by law;

D. For payment of costs of suit herein incurred;

E. For both pre-judgment and post-judgment interest on any amounts awarded;

F. For payment of reasonable attorneys' fees, expert fees, and expenses, as may be allowable under applicable law; and

G. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

**SALTZ, MONGELUZZI & BENDESKY, P.C.**

Dated: July 24, 2025 By: */s/ Simon Bahne Paris*

Simon Bahne Paris (NJ Atty ID #049821996)
Patrick Howard (NJ Atty ID #022802001)
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
Tel: (215) 496-8282
Fax: (215) 496-0999
sparis@smbb.com
phoward@smbb.com

***Attorneys for Plaintiffs and Proposed Classes***