UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BORIS ZATS, AMIR GUPTA, and
FRANK RUFFOLO, *et al.*, individually and
on behalf of all others similarly situated,

      Plaintiffs,

      v.

JAGUAR LAND ROVER NORTH
AMERICA, LLC, a Delaware limited
liability company,

      Defendant.

Case No. 2:25–cv–13709–CCC–JRA

Motion Date: August 17, 2026

JURY TRIAL DEMANDED

**DEFENDANT JAGUAR LAND ROVER NORTH AMERICA, LLC'S
MEMORANDUM IN SUPPORT OF ITS
<u>RENEWED MOTION TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ......................................................................................... 1

PROCEDURAL BACKGROUND................................................................. 3

FACTUAL BACKGROUND......................................................................... 4

LEGAL STANDARD................................................................................... 12

ARGUMENT ............................................................................................... 13

    I.    COURTS MUST ENFORCE VALID ARBITRATION PROVISIONS. ................................................................................ 13

    II.    THE CONTAINER CONTRACT TO WHICH PLAINTIFFS AGREED CONTAINS AN ARBITRATION PROVISION THAT COVERS THEIR CLAIMS AND COMPELS THEM TO ARBITRATION ...................................................................... 14

        A.    Under Illinois, New York, and California Law, Plaintiffs Agreed to the Container Contract ............................................. 14

        B.    When an Arbitration Provision is Contained Within a Larger Container Contract, Agreement to the Container Contract Constitutes Acceptance of its Terms, including the Arbitration Provision ............................................................... 19

    III.    ANY THRESHOLD ISSUES OF ARBITRABILITY ARE DELEGATED TO THE ARBITRATOR CONSISTENT WITH THE PARTIES' CLEAR AND UNMISTAKABLE INTENT ......... 26

    IV.    PRINCIPLES OF EQUITABLE ESTOPPEL ALSO REQUIRE PLAINTIFFS TO ARBITRATE THEIR CLAIMS AGAINST JLRNA............................................................................................. 30

CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliments Krispy Kernels, Inc. v. Nichols Farms*,
  851 F.3d 283 (3d Cir. 2017) ...............................................................................15

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)...........................................................................................13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986).............................................................................................26

*Bey v. Crown Asset Mgmt., LLC*,
  No. 2:20-cv-715, 2021 WL 4078657 (W.D. Pa. Sept. 8, 2021) ........................30

*Boomer v. AT&T Corp.*,
  309 F.3d 404 (7th Cir. 2002) ..............................................................................15

*Brower v. Gateway 2000, Inc.*,
  676 N.Y.S.2d 569 (N.Y. App. Div. 1998).........................................................17

*Brown v. Credit One Bank*,
  No. 23-cv-23008, 2024 WL 4553683 (D.N.J. Oct. 21, 2024).....................24, 30

*Carroll v. Hyundai Motor Am.*,
  No. 23-cv-1164, 2026 WL 1815928 (D.N.J. June 24, 2026) ................13, 28, 29

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024).......................................................................................15, 20

*Dye v. Tamko Bldg. Prods.*,
  908 F. 3d 675 (11th Cir. 2018) ...........................................................................25

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin*
  *Intermediates, S.A.S.*,
  269 F.3d 187 (3d Cir. 2001) ...............................................................................31

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)......................................................................................14, 27

*Flintkote Co. v. Aviva PLC*,
  769 F.3d 215 (3d Cir. 2014) ...........................................................................12

*Frazee v. FCA US LLC*,
  No. 1:25-cv-144, 2026 WL 730313 (S.D. Ohio Mar. 16, 2026)
  .....................................................................................................20, 21, 27, 29

*Frisch v. FCA US, LLC*,
  No. 24-cv-10546, 2026 WL 1831998 (E.D. Mich. June 25, 2026)........21, 22, 31

*Gaines v. Ciox Health, LLC*,
  264 N.E.3d 1027 (Ill. App. Ct. 2024) .............................................................15

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) ...........................................................................31

*Guaschino v. Hyundai Motor America*,
  No. 23-cv-4354, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023)............23, 31, 32

*Harris v. Green Tree Fin. Corp.*,
  183 F.3d 173 (3d Cir. 1999) ...........................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)........................................................................................27

*Hernandez v. DMSI Staffing, LLC*,
  79 F. Supp. 3d 1054 (N.D. Cal. 2015)...............................................................4

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) ........................................................16, 17, 18, 25

*Lima v. Gateway, Inc.*,
  886 F. Supp. 2d 1170 (C.D. Cal. 2012) ..........................................................18

*Lorenzo Ford v. Hyundai Motor America*,
  No. 8:20-cv-890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021)...................*passim*

*Manigault v. Macy's E., LLC*,
  318 F. App'x 6 (2d Cir. 2009) ........................................................................16

*Morales v. Sun Constructors, Inc.*,
  541 F.3d 218 (3d Cir. 2008) ...........................................................................20

*MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*,
  974 F.3d 386 (3d Cir. 2020) ........................................................................19, 20

*Noble v. Samsung Electronics America, Inc.*,
  682 F. App'x 113 (3d Cir. 2017) ................................................................24, 25

*Norcia v. Samsung Telecomm. Am. LLC*,
  845 F.3d 1279 (9th Cir. 2017) ........................................................................18

*Nowling v. Jaguar Land Rover N. Am. LLC*,
  No. 2:24-cv-9184, 2026 WL 867688 (D.N.J. Mar. 30, 2026)...........................23

*Plazza v. Airbnb, Inc.*,
  289 F. Supp. 3d 537 (S.D.N.Y. 2018) ..............................................................17

*Policy Admin. Sols., Inc. v. QBE Hldgs., Inc.*,
  No. 15-cv-2473, 2019 WL 4126464 (S.D.N.Y. Aug. 30, 2019) ........................28

*ProCD, Inc. v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) ................................................................16, 17, 18

*Ragan v. AT&T Corp.*,
  824 N.E.2d 1183 (Ill. App. Ct. 2005) ..............................................................15

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)..........................................................................................27

*Rice v. Wells Fargo Bank, N.A.*,
  No. 24-cv-2647, 2025 WL 1435632 (E.D. Pa. May 19, 2025) .........................24

*Richardson v. Coverall North America, Inc.*,
  811 F. App'x 100 (3d Cir. 2020) .....................................................................27

*Robbins v. Playhouse Lounge*,
  No. 1:19-cv-8387, 2021 WL 2525709 (D.N.J. June 21, 2021) .........................19

*Sandvik AB v. Advent Int'l Corp.*,
  220 F.3d 99 (3d Cir. 2000) ..............................................................................20

*Sanford v. Bracewell & Guiliani, LLP*,
  618 F. App'x 114 (3d Cir. 2015) .....................................................................12

*SBRMCOA, LLC v. Bayside Resort, Inc.*,
  707 F.3d 267 (3d Cir. 2013) ................................................................................15

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
  553 F. Supp. 3d 452 (N.D. Ill. 2021)..................................................................28

*Smith v. Spizzirri*,
  601 U.S. 472 (2024)..................................................................................13, 32

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2nd Cir. 2019) ......................................................................16, 17

*Tsadilas v. Providian Nat'l Bank*,
  786 N.Y.S.2d 478 (N.Y. App. Div. 2004)..........................................................17

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) .............................................................................18

*Weissman v. Revel Transit, Inc.*,
  190 N.Y.S.3d 46 (N.Y. App. Div. 2023)...........................................................17

*White v. Ring LLC*,
  No. 22-cv-6909, 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) .........................28

*Young v. Experian Info. Sols., Inc.*,
  119 F.4th 314 (3d Cir. 2024) .............................................................................29

*Zirpoli v. Midland Funding, LLC*,
  48 F.4th 136 (3d Cir. 2022) ...............................................................................29

**Rules**

Fed. R. Civ. P. 41(a)(1)(A) ..................................................................................4

Fed. R. Civ. P. 41(a)(1)(A)(i) ..............................................................................4

**Statutes**

9 U.S.C. § 2.......................................................................................................13

9 U.S.C. § 3.......................................................................................................13

9 U.S.C. § 4.......................................................................................................13

v

## **<u>INTRODUCTION</u>**

This products liability putative class action brought by three Plaintiffs, Boris Zats, Amir Gupta, and Frank Ruffolo, alleges that certain Land Rover Range Rover vehicles are susceptible to premature brake wear. The three named Plaintiffs all bought new 2023 model year Land Rover Range Rovers. All three knew when they bought their new vehicles that the vehicles came with an express written warranty— the New Vehicle Limited Warranty ("NVLW")—which they allege was a material part of their bargain. Defendant Jaguar Land Rover North America, LLC ("JLRNA") refers to the NVLW as the "Passport to Service," and in Plaintiffs' vehicles it was included in the Owner's Handbook supplied in hard copy with each new vehicle. It was also available online for review at JLRNA's website.

At the very beginning of the Passport to Service there is a conspicuous arbitration provision that includes a class waiver and requires that all claims relating to the vehicle be resolved by binding arbitration on an individual basis. The clearly–delineated arbitration provision also provides notice of the consumer's unfettered right to opt out of the arbitration provision (but still retain the benefits of the NVLW) by simply sending an email to JLRNA within 30 days of purchase. Zats, Gupta, and Ruffolo did not opt out. Plaintiffs have all taken advantage of the NVLW by presenting their vehicles to authorized dealers to obtain numerous warranty repairs,

including many after this litigation began, and have driven their vehicles for thousands of miles.

The NVLW is a container contract to which Plaintiffs indisputably agreed. In agreeing to the container contract, they accepted and agreed to its terms, including the arbitration provision and class waiver, whether they knew about or chose to read these terms or not. The import is inescapable—Plaintiffs formed a contract with JLRNA, and their claims now must be sent to arbitration. And to the extent there is any dispute about the scope and/or enforceability of the arbitration provision, those issues have been clearly and unmistakably delegated to the arbitrator to decide. Plaintiffs are also equitably estopped from simultaneously taking advantage of the benefits of the NVLW but repudiating the arbitration provision.

For these reasons, as discussed more fully below, all of Plaintiffs' claims except those asserted under the Magnuson–Moss Warranty Act ("MMWA"), which are specifically excluded by the arbitration provision, are required to be resolved on an individual basis via binding arbitration. In addition, Gupta's MMWA claim should be dismissed for failure to first file his claim with BBB AutoLine.[1] The case should be stayed pending the outcome of arbitration.

---

[1] The Dispute Resolution–USA portion of the Owner's Handbook requires California owners or lessees such as Gupta to first pursue any MMWA claim using BBB AutoLine, which Gupta failed to do. *See* Declaration of Nadira Kirkland ("First Kirkland Decl.") ¶ 9 & Ex. 2, D.E. 6–3, PageID:105–108 & D.E. 6-5, PageID:157-

## **PROCEDURAL BACKGROUND**

Plaintiffs filed their complaint on July 24, 2025. (D.E. 1.) On August 19, 2025, JLRNA filed a Motion to Compel Arbitration (D.E. 6) ("Motion"). In support of the Motion, JLRNA filed the Declaration of Nadira Kirkland with 31 attached exhibits. (D.E. 6–3) ("First Kirkland Decl.") Discovery was stayed by the Court pending the decision on the Motion. (D.E. 15.) Plaintiffs opposed the Motion, relying in part on the declarations of each of the three Plaintiffs and their counsel Simon Paris (D.E. 27). JLRNA replied on October 14, 2025, and attached an additional declaration of JLRNA counsel Terri Reiskin (D.E. 29). On March 27, 2026, the Court issued its opinion and order denying the Motion without prejudice. (D.E. 30) The Court found that the motion could not be resolved under the Rule 12(b)(6) standard because it required consideration of evidence outside the pleadings, that there were material facts in dispute based on the evidence submitted, and ordered the parties to conduct limited discovery on the issue of arbitrability, following which JLRNA could file a renewed motion to compel arbitration. (*Id*.)

On April 16, 2026, the Court set a schedule for completion of limited discovery and deadlines for the filing of any renewed motion to compel (D.E. 35). The parties completed written and deposition discovery by June 22, 2026, pursuant

---

62 (attached hereto as Exhibit 1); Deposition of Amir Gupta ("Gupta Dep.") 45:5–10 (cited excerpts attached hereto as Exhibit 2.)

to that schedule. On June 30, 2026, Plaintiffs filed a Notice of Voluntary Dismissal of Certain Claims Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), specifically dismissing Count III (Breach of Express Warranty under New York law) and all claims of Plaintiff Frank Ruffolo relating to a second Range Rover vehicle allegedly purchased in December 2022, VIN SALK19E78PA035575. (D.E. 38.)[2] The Court ordered those claims dismissed accordingly. (D.E. 39.) JLRNA now files its timely Renewed Motion to Compel Arbitration ("Renewed Motion").

## **FACTUAL BACKGROUND**

Plaintiff Boris Zats purchased a 2023 Land Rover Range Rover SE on October 7, 2022, from Jaguar Land Rover of Manhattan. (Compl. ¶ 7; *see also* Declaration of Terri Reiskin ("Reiskin Decl.") ¶ 2 and Ex. A thereto (Zats Sales Contract numbered ZATS–000001–000008).) Amir Gupta bought a 2023 Land Rover Range Rover Autobiography on December 30, 2022, at Marin Luxury Cars in Corte Madera, California. (Compl. ¶ 12; Gupta Dep. 11:6–15.) Frank Ruffolo purchased a

---

[2] Fed. R. Civ. P. 41(a)(1)(A) permits voluntary dismissal of "an action," not claims within an action. JLRNA submits that this dismissal was accordingly procedurally improper, and should have been addressed pursuant to a motion to amend under Rule 15. *See, e.g.*, *Hernandez v. DMSI Staffing, LLC*, 79 F. Supp. 3d 1054, 1058–60 (N.D. Cal. 2015). That would have permitted JLRNA to address the possibility that dismissal of the New York express warranty claim was done in bad faith, after seeing JLRNA's arguments in support of compelling arbitration, to try to avoid arbitration of Zats's claims on the basis of equitable estoppel. *Id*. at 1060. (The same is not true of the dismissal of Ruffolo's claims regarding the second vehicle, which discovery showed was actually owned by his father.)

4

2023 Land Rover Range Rover on September 14, 2022, from Howard Orloff Imports in Chicago, Illinois. (Compl. ¶ 18; *see also* Reiskin Decl. ¶ 3 and Ex. B thereto (Ruffolo Sales Contract numbered RUFFOLO–000001–000008).)

Each vehicle came with a written NVLW. (Compl. ¶ 54 ("JLRNA provides an express warranty as set forth in its New Vehicle Limited Warranty"); ¶¶ 55–61 (outlining additional provisions of the NVLW and implied warranties provided); ¶ 101 ("JLRNA provided all purchasers and lessees of the Class Vehicles with the NVLW described herein."); *see also* JLRNA Response to Interrog. No. 1 (identifying the NVLW as the contract between Plaintiffs and JLRNA) (cited responses attached as Ex. 3).)

All three Plaintiffs knew before or at the time of their purchases that their vehicles came with a NVLW. (Gupta Dep. 18:16–19:8; Deposition of Boris Zats ("Zats Dep.") 21:21–23 (cited excerpts attached as Ex. 4); Deposition of Frank Ruffolo ("Ruffolo Dep.") 26:20–22, 49:9–50:5 (cited excerpts attached as Ex. 5).) And Zats and Ruffolo, at least, understood that this warranty was provided by JLRNA (not the dealer).[3] (Zats Dep. 23:7–18; Ruffolo Dep. 50:6–12.) Plaintiffs

---

[3] Gupta testified that he never "thought about who would be supplying any warranty." (Gupta Dep. 25:2–6.)

allege that the NVLW was a material part of their bargain and that JLRNA breached express warranties. (*E.g.*, Compl. ¶¶ 75–84, 101, 126–128, 175, 179.)[4]

JLRNA refers to the NVLW as the Passport to Service. (First Kirkland Decl. ¶ 6; Deposition of JLRNA 30(b)(6) Designee Michael Solt ("Solt Dep.") at 20:9–12, 45:17–22 ("It's been called Passport to Service since I've ever been here" which is 25 years) (cited excerpts attached as Ex. 6).) The Monroney labels required by federal law to be affixed to Plaintiffs' vehicles reference the time and mileage limits for the NVLW and state: "Please refer to the Passport to Service for information regarding the New Vehicle Limited Warranty." (*See* Second Kirkland Declaration ("Second Kirkland Decl.") ¶¶ 6–8 & Exs. G, H, & I) Each Plaintiff testified that he saw or was provided with the Monroney label at the time of purchase. (Zats Dep. 39:6–42:25; Gupta Dep. 19:13–22:10; Ruffolo Dep. 48:1–51:1.)

The Passport to Service is contained in a distinct, standalone section of the 2023 Range Rover Owner's Handbook, which each Plaintiff received in hard copy in their vehicle. (First Kirkland Decl. ¶ 6 & Ex. 1, D.E. 6-4, PageID:109-56); Solt Dep. 32:8–34:9, 52:12–17; Gupta Dep. 46:14–47:3 (Owner's Handbook was in his

---

[4] Although Plaintiffs filed a notice of voluntary dismissal of the breach of express warranty claim under New York law (*see* n.2 above), the factual allegation in ¶ 101 regarding the NVLW being "a material part of the bargain" is not specific to New York law. Further, the allegation that state law express (and implied) warranties were breached to support the MMWA claim as to all three plaintiffs (Compl. ¶¶ 75–84) and other allegations cited above demonstrate that Plaintiffs continue in one form or another to assert express warranty claims.

6

trunk); Zats Decl. ¶ 5 (D.E. 27-4); Zats Dep. 49:2–50:16; Ruffolo Dep. 27:23–28:7. The Passport to Service is clearly identified in the Owner's Handbook table of contents. (Ex. 1 to First Kirkland Decl, PageID:115.)

The Passport to Service is (and was at the time of Plaintiffs' purchases) also available online at www.ownerinfo@jaguarlandrover.com. (*See* JLRNA Response to Interrog. No. 7; *see also* Solt Dep. 40:16–23 (testifying that there have been no changes to the arbitration provision); 52:12–53:12 (arbitration provision is in the hard copy and online versions of the Owner's Handbook, and the latter can be accessed with or without a VIN; Second Kirkland Decl. ¶ 9). And in the online version, the table of contents—which permits expansion by clicking on a + sign therein—specifically identifies the arbitration provision as the very first item in the drop–down list. (JLRNA's Response to Request for Admission No. 5 (cited portions attached as Ex. 7).)

The 2023 Range Rover was a new model that was "kind of a big deal" per the testimony of Plaintiffs, as characterized by their counsel. (Solt Dep. 54:23–55:2 (counsel's question); Zats Dep. 16:22–17:1, 21:11–20 (saw marketing information for new model and was "just very excited about the vehicle"); Gupta Dep. 25:7–16, 26:20–27:12 (referencing "aspects that were exciting to me, which were the – the new car itself and the colors and – and things like that"); Ruffolo Dep. 12:7–21 ("They came out with a new body style").) All three plaintiffs placed orders for their

7

vehicles with the assistance of dealer sales representatives in advance of the production launch. (Gupta Dep. 14:11–15:12; Ruffolo Dep. 14:22–15:12, 16:9–17; Zats Dep. 17:17–18:6, 51:18–52:7 (first saw the vehicle "when I came in to do the purchase").) None of the Plaintiffs discussed the warranty with the sales representative or asked to see a copy of the NVLW (or the Owner's Handbook) during the ordering process or at the time of sale. (*See* Gupta Dep. 24:16–19, 26:12–27:20, 54:13–55:6; Zats Dep. 30:17–24; Ruffolo Dep. 37:14–38:11.) Nor did they ever look for it online. (Gupta Dep. 22:15–23:5, 52:22–53:6; Zats Dep. 32:9–33:4; Ruffolo Dep. 40:20–41:6.)[5] All three said they had no reason to believe that if they had asked the dealer to see the NVLW, they would not have been accommodated. Zats Dep. 30:25–32:7; Ruffolo Dep. 37:14–38:9; Gupta Dep. 26:20–28:5; *see also* Solt Dep. 22:21–23:9 (if a customer asked JLRNA for the Passport to Service, they would be directed to the owner's manual in their vehicle or the online manual).)

The Passport to Service begins with the bolded section header "**BINDING ARBITRATION FOR UNITED STATES VEHICLES ONLY**" followed in slightly smaller, yet still bolded and all caps, font that instructs the consumer to "**PLEASE READ THIS SECTION IN ITS ENTIRETY AS IT AFFECTS**

---

[5] Indeed, none of them as ever looked at the Passport to Service or its arbitration provision, even up to their recent depositions, including when Ruffolo and Gupta pulled a copy of the Owner's Handbook from their cars to send to their counsel during the recent discovery period. Zats Dep. 82:21–83:19; Gupta Dep. 46:14–51:6; Ruffolo Dep. 30:15–35:1, and Ruffolo Dep. Ex. 4 (attached hereto as Ex. 8).

**YOUR RIGHTS**.” (Ex. 1 to First Kirkland Decl., D.E. 6-4, PageID:116.) The Passport to Service then sets out the terms and scope of the arbitration provision applicable to vehicle purchases and leases. In particular, it states that any dispute between the vehicle owner and JLRNA

> related to or arising out of your vehicle purchase, advertising for the vehicle, use of your vehicle, the performance of the vehicle, any service relating to the vehicle, the vehicle warranty, representations in the warranty, or the duties contemplated under the warranty, including without limitation claims related to false or misleading advertising, unfair competition, breach of contract or warranty, the failure to conform a vehicle to warranty, failure to repurchase or replace your vehicle, or claims for a refund or partial refund of your vehicle's purchase price (excluding personal injury claims), but excluding claims brought under the Magnuson–Moss Warranty Act, shall be resolved by binding arbitration at either your or our election, even if the claim is initially filed in a court of law.

(*Id.*) The arbitration provision provides that such arbitration must “be administered by and through JAMS Mediation, Arbitration and ADR Services (JAMS) under its Streamlined Arbitration Rules & Procedures, or the American Arbitration Association (AAA) under its Consumer Arbitration Rules.” (*Id.*) It also contains a delegation clause that states that “[t]he arbitrator (and not a court) shall decide all issues of interpretation, scope, and application of this agreement.” (*Id.*) The arbitration provision includes a class action waiver. (*Id.*, PageID:117.) It provides that “[t]his agreement evidences a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act [“FAA”], 9 U.S.C. §§ 1–16.” (*Id.*)

9

The arbitration provision is bookended with another important clause, demarcated by additional bolded, all–caps font: "**IF YOU PURCHASED OR LEASED YOUR VEHICLE IN THE UNITED STATES, YOUR WARRANTY IS MADE SUBJECT TO THE TERMS OF THIS BINDING ARBITRATION PROVISION. BY USING THE VEHICLE, OR REQUESTING OR ACCEPTING BENEFITS UNDER THIS WARRANTY, INCLUDING HAVING ANY REPAIRS PERFORMED UNDER WARRANTY, YOU AGREE TO BE BOUND BY THESE TERMS**." (*Id.*, PageID:117–18.) The arbitration provision concludes with the following opt–out clause, also in bold and all–capitals: "**IF YOU DO NOT AGREE WITH THESE TERMS, PLEASE CONTACT US AT ARBITRATION–OPT–OUT@JAGUARLANDROVER.COM AND PROVIDE YOUR VEHICLE IDENTIFICATION NUMBER (VIN) WITHIN THIRTY (30) DAYS OF YOUR PURCHASE OR LEASE TO OPT–OUT OF THIS ARBITRATION PROVISION**." (*Id.*, PageID:118.) Zats, Gupta, and Ruffolo did not exercise their right to opt out of the arbitration provision. (First Kirkland Decl. ¶ 8; *see also* Gupta Response to Request for Admission No. 4 (cited portions attached as Ex. 9); Zats Response to Request for Admission No. 4 (cited portions attached as Ex. 10); Ruffolo Response to Request for Admission No. 5 (cited portions attached as Ex. 11).)

10

Critically, all three used their vehicles to drive thousands of miles, and have taken advantage of the NVLW to obtain covered repairs to their vehicles. Zats presented his vehicle and obtained warranty repairs on at least five occasions. (Kirkland First Decl. ¶ 10(a) & Exs. 3–6; Second Kirkland Decl. ¶ 5(a) & Ex. A.) Gupta has presented his vehicle and obtained warranty repairs on at least eighteen occasions. (First Kirkland Decl. ¶ 10(b) & Exs. 7–20; Second Kirkland Decl. ¶ 5(b) & Exs. B–E.) And Ruffolo has presented his vehicle and obtained a total of at least twelve warranty repairs. (First Kirkland Decl. ¶ 10(c), (d) & Exs. 21–28; Second Kirkland Decl. ¶ 5(c) & Ex. F.) Plaintiffs each reviewed the repair orders attached to the first Kirkland Declaration, as referenced in the Declarations they submitted in connection with JLRNA's prior Motion to Compel Arbitration (D.E. 27–4 ¶ 13 (Zats); D.E. 27–3 ¶ 13 (Gupta); D.E. 27–2 ¶ 13 (Ruffolo)). All confirmed that these records accurately reflect warranty service performed on their vehicles. (Gupta Response to Interrog. No. 1 (attached hereto as Ex. 12) & Gupta Dep. 56:10–57:6; Zats Response to Interrog. No. 1 (attached hereto as Ex. 13) & Zats Dep. 45:25–48:26; Ruffolo Response to Interrog. No. 1 (attached hereto as Ex. 14) & Ruffolo Dep. 54:16–55:8.) And although Zats sold his Range Rover in February or March 2024, before this litigation commenced (Zats Dep. 71:8–17), Gupta and Ruffolo have continued to seek and obtain warranty repairs during the pendency of this

11

action. (Second Kirkland Decl. ¶¶ 5(b)–(c) & Exs. B–F) (repairs performed between September 2025 and April 2026).)

## LEGAL STANDARD

"[W]hen deciding whether to compel arbitration under the FAA, the Court must determine '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits–based dispute in question falls within the scope of that valid agreement.'" (D.E. 30, PageID:588, quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).)[6] In considering the first inquiry, the court must decide whether to apply the Federal Rule of Civil Procedure 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).

In deciding JLRNA's prior Motion to Compel Arbitration, the Court found that because "the arbitration agreement is not mentioned in, or attached to, the Complaint" but was submitted and cited first in JLRNA's motion, and because Plaintiffs submitted declarations denying that they agreed to arbitration, it was appropriate to deny the motion to allow the factual record to be further developed. (D.E. 30, PageID:588–90.) Since the parties have now completed limited discovery

---

[6] This renewed motion is made under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*., not any Federal Rule of Civil Procedure. Thus, JLRNA reserves the right to file a Rule 12(b)(6) motion at a later date.

on the issue of arbitrability, the Court "use[s] the Rule 56 standard" to decide the renewed motion to compel arbitration. *Carroll v. Hyundai Motor Am.*, No. 23-cv-1164, 2026 WL 1815928, at *3 (D.N.J. June 24, 2026) (Cecchi, J.).

## ARGUMENT

## I.     COURTS MUST ENFORCE VALID ARBITRATION PROVISIONS.

The FAA provides that a written arbitration provision included in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a court must, upon motion by a party, compel arbitration if an issue in controversy is covered by a valid arbitration agreement and must stay the proceeding pending the outcome of that arbitration. 9 U.S.C. §§ 3, 4; *Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024). The FAA evinces a federal policy favoring arbitration agreements and creates a strong presumption favoring enforcement. *See, e.g., Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 178 (3d Cir. 1999). It also requires courts to "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

13

**II.    THE CONTAINER CONTRACT TO WHICH PLAINTIFFS AGREED CONTAINS AN ARBITRATION PROVISION THAT COVERS THEIR CLAIMS AND COMPELS THEM TO ARBITRATION**

In this case, the Court's focus must be on the container contract, which is the NVLW. If the Plaintiffs agreed to the container contract, they perforce agreed to the provisions within it, including the arbitration provision. It does not matter whether they actually read the arbitration provision or were even aware of it. Thus, Plaintiffs' evidence via their declarations that they "did not know about, did not sign, and did not agree to the arbitration provisions" (D.E. 30, PageID:590), as well as their similar evidence in written discovery responses and depositions, has no bearing on the outcome of the present Motion. The parties have conducted limited discovery on arbitrability, as the Court directed, which has confirmed the key facts relevant to show that Plaintiffs did indeed agree to the container contract. Specifically, at the time of purchase, they knew their vehicles came with an NVLW, and they subsequently took advantage of that warranty to obtain covered repairs on their vehicles on numerous occasions (including during the pendency of this litigation). *See* Factual Background, *supra*. They are therefore bound by that contract, including the arbitration provision within it.

**A.    Under Illinois, New York, and California Law, Plaintiffs Agreed to the Container Contract**

The court applies "ordinary state–law principles that govern the formation of contracts" to determine if a valid agreement to arbitrate has been formed. *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). Contract formation is a question for the court. *E.g.*, *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) ("[C]hallenges to the formation of a contract are generally for courts to decide." (quote and emphasis omitted)). Thus, the Court must apply the law of the states in which each Plaintiff's agreement was formed, which are New York, Illinois, and California, to determine if Plaintiffs formed a contract.

"Under Illinois law, an offer, acceptance, and consideration form the basic ingredients of a contract." *Gaines v. Ciox Health, LLC*, 264 N.E.3d 1027, 1038 (Ill. App. Ct. 2024). "Mutual assent is determined by an objective standard," and does not require the parties to share the same subjective understanding "as it suffices if their conduct objectively indicates an agreement to the terms." *Id*. "Illinois courts have recognized that silence can constitute an acceptance of an offer when it is reasonable, because of prior dealings or otherwise, that the offeree should notify the offeror if he does not intend to accept the offer." *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188 (Ill. App. Ct. 2005). In circumstances where "the offeree takes the benefits of offered services with a reasonable opportunity to reject them . . . silence and inaction operates as an acceptance of the offer." *Id*. at 1188–89 (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) and ruling that silence and inaction

15

after receipt of Consumer Services Agreement that included reasonable opportunity to reject the offer and consumer's use of the services constituted agreement to arbitration provision). It does not matter whether the specific warranty terms are provided at or after the time of purchase. *See Hill v. Gateway 2000*, *Inc.*, 105 F.3d 1147, 1149–50 (7th Cir. 1997) (explaining that "[p]ractical considerations support allowing vendors to enclose the full legal terms with their products," including important terms such as the product's warranty""); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) (explaining that "[t]ransactions in which the exchange of money precedes the communication of detailed terms are common," including for consumer goods, which can include a leaflet containing some terms, "the most important of which usually is the warranty, read for the first time in the comfort of home"). Applying Illinois law, Ruffolo assented to the warranty contract, including the arbitration provision.

New York law, applicable to the issue of whether Zats agreed to the container contract (the NVLW), is similar. Specifically, under New York law there must be a "meeting of the minds" and "a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2nd Cir. 2019). "A contract may be formed by words or by conduct that demonstrate the parties' mutual assent." *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009). An offeree has "a duty to read the terms of the contract presented to him, including contract terms

16

provided post–sale." *Starke*, 913 F.3d at 295; *see also, e.g.*, *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 571–72 (N.Y. App. Div. 1998) (following rationale of *Hill* and *ProCD* finding that post–sale terms can be binding). It does not matter if the consumer elects not to read the terms, so long as he or she had an opportunity to do so and there is "other proof that the parties reached an agreement." *See, e.g.*, *Weissman v. Revel Transit, Inc.*, 190 N.Y.S.3d 46, 47 (N.Y. App. Div. 2023) ("Although plaintiff may have elected not to use the hyperlinks to view the agreement or terms of service, he was on inquiry notice and thus bound by their respective mandatory arbitration provisions upon his completion of the registration process."); *also Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548 (S.D.N.Y. 2018) (explaining that under both New York and California law, which "apply substantively similar law with respect to contract formation" a plaintiff "can still be bound by the contractual terms if there is inquiry notice of the terms" and if plaintiffs assented "through the conduct that a reasonable person would understand to constitute assent") (quotes omitted). Under New York law, "[a]rbitration agreements are enforceable despite an inequality in bargaining power." *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480–81 (N.Y. App. Div. 2004) (plaintiff's continued use of a credit card after receipt of an arbitration provision and failing to opt out bound the plaintiff even though she had not read it and even though it contained a class waiver). Under New York law, Zats assented to the warranty contract when he

17

purchased his vehicle knowing it came with a NVLW and then used it to obtain covered warranty repairs.

Under California law, the essential elements of a contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (cleaned up). "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Norcia v. Samsung Telecomm. Am. LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017).[7] Assent may be shown by words or conduct, and "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented." *Id*. Although as a general rule, silence or inaction does not constitute acceptance, there are exceptions, including that "silence may also be treated as consent to a contract when the party retains the benefit offered." *Id*. at 1285 (citations omitted). As with Illinois and New York, the warranty terms can even be provided after the sale and still be binding. *See Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1177–79 (C.D. Cal. 2012) (plaintiff assented to arbitration clause in limited warranty because he knew at the time of sale that his purchase was subject to the limited warranty, agreeing with rationale from *Hill* and *ProCD*). Like the other Plaintiffs, Gupta knew

---

[7] *Norcia* is distinguishable on its facts as it involved an in–box warranty for a smartphone.

his vehicle came with a NVLW at the time of purchase and he used it to obtain covered repairs. He too agreed to the container contract, even though he never bothered to read the warranty provided to him and also available online.

**B.    When an Arbitration Provision is Contained Within a Larger Container Contract, Agreement to the Container Contract Constitutes Acceptance of its Terms, including the Arbitration Provision**

As the Third Circuit has recognized, arbitration provisions are often found within a larger "container contract." *See MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020). When faced with a container contract,

> courts have acknowledged three related but conceptually separate forms of contractual agreement that are directly relevant to [the arbitrability] analysis: (1) the container contract, which governs the parties' contractual relationship as a whole; (2) the arbitration clause, which is contained within the contract and mandates that certain disputes must be submitted to arbitration; and (3) the delegation provision, which is generally contained within the arbitration clause, and delegates to the arbitrator the ability to decide gateway questions of arbitrability, thereby allowing the arbitrator to "decide their own jurisdiction."

*Robbins v. Playhouse Lounge*, No. 1:19-cv-8387, 2021 WL 2525709, at *6 (D.N.J. June 21, 2021) (quoting *MZM Constr. Co.*, 974 F.3d at 398–99).

The Supreme Court has explained the correct approach to deciding these issues: "In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to

19

arbitration." *Suski*, 602 U.S. at 152. The "one contract" referenced by the Supreme Court in *Suski* is the container contract, and that is where any contract formation analysis must be focused. Put differently, it is neither necessary nor appropriate to apply a *separate* contract formation analysis to an arbitration provision within a container contract, such as in this case. *See, e.g.*, *MZM Constr. Co.*, 974 F.3d at 400 (explaining that "a court will need to decide questions about the parties' mutual assent to the *container contract* to satisfy itself that an arbitration agreement exists" (emphasis added)); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 108 (3d Cir. 2000) ("[W]hen arbitration clauses are embedded within a larger contract, there is no need to search for mutuality in the arbitration clause specifically if there is consideration beyond the promise to arbitrate."); *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223–24 (3d Cir. 2008) (holding that "applying a heightened 'knowing and voluntary' standard to arbitration agreements would be inconsistent with the FAA" and holding that because the plaintiff entered into a larger container contract with the defendant—there, an employment agreement—he was "bound by its arbitration clause").

This well–settled approach has been deployed in the specific context of motor vehicle written warranties, leading other courts to grant motions to compel arbitration in situations similar to this one. In *Frazee v. FCA US LLC*, No. 1:25-cv-144, 2026 WL 730313, at *1 (S.D. Ohio Mar. 16, 2026), after discovery into

20

arbitrability, the court granted FCA's renewed motion to compel arbitration based on a similar arbitration provision within the express written warranty that accompanied those plaintiffs' vehicles. There, as here, "the arbitration agreement is but one term in a broader contractual agreement that Plaintiffs entered into when they purchased their vehicles." *Id.* at *8. The *Frazee* court therefore explained that "when a party forms a container agreement, i.e., enters a contract that includes an arbitration provision, then a party seeking to challenge formation must direct their challenge at the container contract itself." *Id.* Successfully doing so would require the plaintiffs to "show that they did not enter that container agreement. They cannot simply contend that, container agreement notwithstanding, they did not separately form the arbitration agreement included within it." *Id.* at *8. Although the plaintiffs challenged the *enforceability* of the arbitration provision within the container contract, that issue (as here) was delegated to the arbitrator. *Id.* at *8, 11.

A similar result obtained in *Frisch v. FCA US, LLC*, No. 24-cv-10546, 2026 WL 1831998, at *1 (E.D. Mich. June 25, 2026), where the court granted a renewed motion to compel after discovery into arbitrability. After FCA established that several plaintiffs used the express warranty to obtain vehicle repairs, the court found that, as to those plaintiffs, "FCA satisfied its initial burden to provide sufficient evidence for a reasonable jury to find that a contract exists." 2026 WL 1831998, at *3–4. Put differently, the *Frisch* court found that those plaintiffs and FCA formed a

21

container contract because "[b]y accepting those benefits, the Warranty Plaintiffs objectively manifested assent to the contractual framework governing the warranties under which those services were provided." *Id.* at \*5. The court found that by accepting warranty benefits, those plaintiffs "objectively manifested assent to the contractual framework governing the warranties under which those services were provided." *Id.* The court further explained that it could not "conclude that the Warranty Plaintiffs may rely upon the Warranty Booklets when doing so secures free services, while simultaneously disavowing those same agreements when arbitration is sought." *Id.*

So too, in *Lorenzo Ford v. Hyundai Motor America*, No. 8:20-cv-890, 2021 WL 7448507, at \*5–6, 10 (C.D. Cal. Oct. 5, 2021), where the court compelled to arbitration the claims of plaintiffs whose new vehicle warranty manuals contained a very similar arbitration provision to the one here, including an opt–out provision. The court explained that the relevant question was whether these plaintiffs "entered into an enforceable arbitration agreement with Defendants." *Id.* at \*6. The court rejected "the California Plaintiffs' averred ignorance of the existence of the Arbitration Provision" because "[r]easonable diligence requires a party to read a contract before entering into the agreement, and a party cannot use his or her own lack of diligence to avoid an arbitration agreement." *Id.* at \*7. The court thus agreed

22

with Hyundai that an enforceable contract with an enforceable arbitration provision had been formed. *Id.* at *10.

And in *Guaschino v. Hyundai Motor America*, No. 23-cv-4354, 2023 WL 8126846, at *4 (C.D. Cal. Sept. 27, 2023), the court ruled that a motor vehicle purchaser asserting MMWA and Song–Beverly warranty claims should be compelled to arbitrate his claims against the manufacturer because he agreed to the arbitration provision in the NVLW. As here, there was no dispute that the arbitration provision was in the NVLW, nor that the NVLW was a contract between the parties. *Id.* at *3. In addition, the court noted that Plaintiff relied on the warranty as the basis for his claims. *Id.* at *3–4 ("Plaintiff may not now go against the truth of his own pleading."). Finally, the court rejected the argument that the arbitration provision was unconscionable and ruled that the plaintiff was equitably estopped from contesting the arbitration provision while simultaneously seeking the benefits of the contract that contained the arbitration clause. *Id.* at *4. Equitable estoppel also applies here. *See* Section IV, *infra*.[8]

Consistent with these principles, courts in this Circuit have in other contexts correctly focused on the container contract, not on the arbitration provision within,

---

[8] Another judge in this District recently denied JLRNA's motion to compel arbitration regarding the same NVLW. *See Nowling v. Jaguar Land Rover N. Am. LLC*, No. 2:24-cv-9184, 2026 WL 867688 (D.N.J. Mar. 30, 2026). Respectfully, that decision was in error, and is currently on appeal to the Third Circuit. *See* Notice of Appeal, Case No. 2:24-cv-9184, D.E. 72 (Apr. 27, 2026).

23

for the contract formation analysis. *See, e.g.*, *Rice v. Wells Fargo Bank, N.A.*, No. 24-cv-2647, 2025 WL 1435632, at *5 (E.D. Pa. May 19, 2025) (finding that because the plaintiffs did not "dispute that the parties mutually assented to the operative account agreement within which the arbitration agreement lives," the only way the plaintiffs could avoid arbitration was to challenge the delegation provisions specifically); *Brown v. Credit One Bank*, No. 23-cv-23008, 2024 WL 4553683, at *6 (D.N.J. Oct. 21, 2024) (requiring arbitration based on finding that plaintiff agreed to the container contract, even if not the arbitration provision within it).

As can be seen from this well–considered case law, the present situation is distinguishable from the one a panel of the Third Circuit considered in *Noble v. Samsung Electronics America, Inc.*, 682 F. App'x 113 (3d Cir. 2017), which involved a cell phone with an in–the–box warranty. In *Noble*, the parties did *not* agree that a container contract existed. Thus, the panel had to determine whether "the writing" in which the arbitration provision appeared was in fact a "bilateral contract." *Id*. at 115–16. In addition, in that case, the document was a 3.1– by 2.5–inch, 143–page product manual—described only as a "manual"—that included 8 pages of legal disclaimers and warnings before the table of contents, and the arbitration provision itself was 11 pages into the warranty section that started on page 86. *Id.* at 114–15. As the panel explained, "the document in which the Clause was included did not appear to be a bilateral contract, and the terms were buried in

24

a manner that gave no hint to a consumer that an arbitration provision was within."

*Id.* at 116. Given that conclusion, the panel held that there was no agreement to arbitrate. *Id.* at 116–17. Here, conversely, there is no dispute that the parties entered into a bilateral container contract (the NVLW) that contained the arbitration provision, so *Noble* is factually distinguishable and its ruling is inapposite.

Nor does it matter whether Plaintiffs read the NVLW or had specific notice of its contents, including the arbitration provision. In *Ford*, the court rejected "the California Plaintiffs' averred ignorance of the existence of the Arbitration Provision" because "[r]easonable diligence requires a party to read a contract before entering into the agreement, and a party cannot use his or her own lack of diligence to avoid an arbitration agreement." 2021 WL 7448507, at *7. As the Seventh Circuit has observed, a "contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." *Hill*, 105 F.3d at 1148; *see also Dye v. Tamko Bldg. Prods.*, 908 F. 3d 675, 683 (11th Cir. 2018) ("When it comes to warranties and other purchase terms, . . . 'competent adults are bound by such documents, read or unread.'").[9]

---

[9] The relevant time frame to assess Plaintiffs' knowledge of the container contract is the time of purchase, which for Plaintiffs was between September and December 2022. The online version of the Passport to Service was available by that time, if not earlier. (*See* Solt Dep. 53:15–54:20.) Plaintiffs could have asked to see a copy of the Passport to Service at or before the time of purchase. Or they could have reviewed the Passport to Service in hard copy at the dealer before they signed the purchase contracts and took possession of the cars.

In short, Plaintiffs knew that their vehicles came with the NVLW and allege that it was part of the basis of their bargains. The NVLW plainly sets out the terms of the arbitration provision, including the class waiver, and afforded Plaintiffs an unfettered opportunity to opt out, which they failed to exercise. They all drove the vehicles and presented their vehicles to JLRNA's authorized dealers as required to obtain covered warranty repairs, further confirming their assent to the NVLW's terms. It is thus irrefutable that they assented to the NVLW and are bound by its plain terms, which require their claims to be compelled to arbitration on an individual basis only.

## III. ANY THRESHOLD ISSUES OF ARBITRABILITY ARE DELEGATED TO THE ARBITRATOR CONSISTENT WITH THE PARTIES' CLEAR AND UNMISTAKABLE INTENT

Once a court finds that an agreement to arbitrate exists, the "presumption of arbitrability" effected by the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). There is no doubt that Plaintiffs' claims here fall within the broad scope of the arbitration provision in the Passport to Service. (*Compare* Compl. ¶¶ 85–196, *with* Passport to Service, Ex. 1 to First Kirkland Decl., D.E. 6–4, PageID:116.)

Any challenge Plaintiffs may raise to the enforceability and/or unconscionability of the arbitration provision itself are delegated to the arbitrator for

26

resolution. As the Arbitration Provision's delegation clause makes clear, "The arbitrator (and not a court) shall decide all issues of interpretation, scope, and application of this agreement." (Passport to Service, D.E. 6–4, PageID:116.)

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). In such instances, the court evaluates the parties' agreement to determine whether there was "clear and unmistakable evidence" that "the parties agreed to arbitrate arbitrability." *First Options*, 514 U.S. at 944. If there is, the court has "no power" to override that agreement, and it "must respect the parties' decision as embodied in the contract." *Henry Schein*, 586 U.S. at 68–69. That is exactly the case here. *See Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 66 (2010) (finding similar language sufficient to delegate arbitrability to the arbitrator).

If that were not enough, the arbitration provision also dictates that any arbitration will be conducted per the JAMS Streamlined Arbitration Rules & Procedures or the AAA Consumer Arbitration Rules. (Passport to Service, D.E. 6–4, PageID:116.). This incorporation also constitutes clear and unmistakable intent to delegate arbitrability to the arbitrator. *Richardson v. Coverall North America, Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *see also Frazee*, 2026 WL 730313, at *11 (incorporation of AAA Consumer Arbitration Rules provides clear and unmistakable

27

evidence of the agreement to delegate arbitrability issues to the arbitrator, citing agreement of eleven out of twelve sister circuits); *Carroll*, 2026 WL 1815928, at *6 (finding that incorporation of AAA rules is clear and unmistakable intent to delegate arbitrability); *White v. Ring LLC*, No. 22–cv–6909, 2023 WL 1097554, at *5 (C.D. Cal. Jan. 25, 2023) ("An agreement 'clearly and unmistakably' delegates arbitrability to the arbitrator when it incorporates arbitration rules that give the arbitrator authority to decide arbitrability, like the AAA or JAMS rules." (collecting cases)); *Ford*, 2021 WL 7448507, at *9 ("[T]he clear weight of legal authority supports the conclusion that the Arbitration Provision's incorporation by reference of the JAMS Streamlined Rules provides clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator."); *Sha–Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (explaining that the "incorporation of the AAA Rules (or similarly worded arbitral rules) provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" (quotation omitted)); *Policy Admin. Sols., Inc. v. QBE Hldgs., Inc.*, No. 15–cv–2473, 2019 WL 4126464, at *5 (S.D.N.Y. Aug. 30, 2019) ("When the parties explicitly incorporate into an arbitration agreement the AAA's Commercial Arbitration Rules, including a rule which empowers the arbitrator to rule on her own jurisdiction, the incorporation serves as clear and

28

unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

Accordingly, should Plaintiffs argue, as they did in opposition to the original motion, that the arbitration provision is unenforceable and/or unconscionable because they did not have specific notice of it at the time of their purchases or because of its placement in the Owner's Handbook, these are questions of enforceability, not contract formation. As the *Frazee* court explained, the two are "related, but separate, concepts." 2026 WL 730313, at \*6. More specifically, "[q]uestions of formation go to whether the parties formed a contract at all," whereas "[q]uestions of enforceability . . . ask whether a court should enforce an already–formed contract (or a given provision in such a contract)." *Id*.

Where, as here, there is a valid delegation provision, enforceability challenges go to the arbitrator. *See Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 321 (3d Cir. 2024) (explaining that "enforceability of the agreement" can be "delegated . . . to an arbitrator"); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022) (expressly concluding that "enforceability challenges . . . must go to the arbitrator" if properly delegated and if not properly challenged); *Carroll*, 2026 WL 1815928, at \*4 n.3 (distinguishing the plaintiff's challenge as one of "contract enforceability, not formation," and noting that "enforceability–related arguments must be determined by the arbitrator because the CSA expressly delegates those issues to the arbitrator");

29

*Brown*, 2024 WL 4553683, at \*6 (finding that arguments that the arbitration provision is "buried deep" in the container contract "challenge the validity or enforceability of the arbitration agreement" and can be delegated to the arbitrator); *Bey v. Crown Asset Mgmt., LLC*, No. 2:20-cv-715, 2021 WL 4078657, at \*4 (W.D. Pa. Sept. 8, 2021) ("[T]here is a distinction between a dispute as to the formation of the container contract (which is a question for the court in the first instance) and a dispute as to its validity or enforceability (which, if within the scope of the arbitration/delegation clause, should be referred to arbitration).").

## IV.    PRINCIPLES OF EQUITABLE ESTOPPEL ALSO REQUIRE PLAINTIFFS TO ARBITRATE THEIR CLAIMS AGAINST JLRNA

Well–established principles of equitable estoppel also require submission of Plaintiffs' claims to arbitration. Here, Plaintiffs have taken advantage of the express warranty for their vehicles both by obtaining repairs under it and then suing to enforce it.[10] Even if they had not accepted the terms of the NWLW (they did), equitable estoppel prevents Plaintiffs from invoking the warranty when it benefits them to do so while at the same time rejecting the portions of the warranty, such as the arbitration and class waiver provisions, that they do not like.

---

[10] Plaintiffs voluntarily dismissed Count III for breach of express warranty under New York law, and the Court approved the dismissal. (D.E. 39.) Setting aside the impropriety of using Rule 41 to dismiss a discrete claim, *see* n.2, *supra*, Plaintiffs' remaining MMWA claim and their California claims as pleaded remain premised on the existence of the express warranties. (*See* Compl. ¶¶ 83, 126–128, 175, 179.)

"Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 n.7 (3d Cir. 2001). While much of the case law involving equitable estoppel involves non–signatories to the contract at issue, the principles underlying the doctrine apply with even greater force to a party to the contract. At base, the doctrine is about fairness: "Equitable estoppel thus prevents a non–signatory from 'cherry–picking' the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." *Griswold v. Coventry First LLC*, 762 F.3d 264, 273 (3d Cir. 2014).

In *Ford*, the court was faced with an arbitration provision very similar to the one at issue here and found that plaintiffs were equitably estopped from denying its validity and that it constituted a binding, enforceable agreement between plaintiffs and Hyundai. 2021 WL 7448507, at *8. The same was true in *Guaschino*, where the court held that by relying on the warranty agreement as a basis for plaintiff's claims, "any arguments against the validity of the Arbitration Provision are equitably estopped." 2023 WL 8126846, at *4.[11]

---

[11] In *Frisch*, the court rejected equitable estoppel as a standalone reason for granting the motion, despite its acknowledgement that its "analysis regarding notice, assent, and Plaintiffs' acceptance of warranty benefits" implicated the same considerations underlying equitable estoppel, including that plaintiffs should not be able "to use their warranties as both a sword and a shield." 2026 WL 1831998, at *4–5. The court

31

Here, as in *Ford* and *Guaschino*, Plaintiffs unquestionably took advantage of and benefited from the warranty, so equitable estoppel applies to prevent them from simultaneously seeking to avoid the arbitration provision contained in the warranty, whether they assert breach of express warranty claims or not. Their individual claims should be compelled to arbitration, and their MMWA claims should be stayed (and Gupta's dismissed) pending the outcome. *Smith*, 601 U.S. at 473–74.[12]

## CONCLUSION

For all the reasons discussed above, the Court should grant JLRNA's Motion to Compel Plaintiffs' Claims to Arbitration, should dismiss Gupta's MMWA claim, and should stay the litigation pending the outcome of arbitration.

Dated: July 13, 2026                Respectfully submitted,


                                    By: /s/ Tiffany M. Alexander
                                    Tiffany M. Alexander
                                    NJ Bar No. 000692002
                                    NELSON MULLINS RILEY &
                                    SCARBOROUGH LLP

---

explained its rejection of equitable estoppel by saying that plaintiffs had not sought "to enforce the substantive terms of the express warranties" themselves, asserting only implied warranty and statutory causes of action. *Id*. at *5. The *Frisch* court cited no case law to support such a requirement, and its concededly truncated treatment of the issue, *id*., is unpersuasive.

[12] By its terms, the arbitration provision at issue provides that if any part of the agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy "then that claim or remedy (and only that claim or remedy) must be brought in court and must be stayed pending arbitration of the arbitrable claims and remedies." (Passport to Service, D.E. 6–4, PageID:117 at 524.)

1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Tel.: 610–943–5351
tiffany.alexander@nelsonmullins.com

Terri S. Reiskin (*pro hac vice*)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
901 15th Street, NW, Suite 1200
Washington, D.C. 20005
Tel.: 202–689–2800
terri.reiskin@nelsonmullins.com

Jason R. Hodge (*pro hac vice*)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Tel.: 804–533–3891
jason.hodge@nelsonmullins.com


*Attorneys for Defendant Jaguar Land Rover
North America, LLC*

33

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2026, the foregoing Notice of Motion, Memorandum in Support and Exhibits thereto, Declaration of Nadira Kirkland and exhibits thereto, Declaration of Terri Reiskin and exhibits thereto, and proposed order were filed via ECF and thereby served on all counsel of record.

*/s/ Tiffany M. Alexander*