**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BORIS ZATS, AMIR GUPTA, and FRANK RUFFOLO, *individually and on behalf of all others similarly situated*, | : <br> : <br> : <br> : <br> : | |
| Plaintiffs, | : | Case No. 2:25-cv-13709- CCC–JRA |
| | : | |
| v. | : | |
| | : | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware Limited Liability Company, | : <br> : | Motion Date: August 17, 2026 |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : <br> : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT JAGUAR LAND ROVER NORTH AMERICA, LLC'S
<u>RENEWED MOTION TO COMPEL ARBITRATION</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS ......................................................................3

I.      The Arbitration Clause Was Inconspicuously Buried in the Handbook..........3

II.     Plaintiffs Were Unaware of and Had No Reason to Become Aware of Any Arbitration Provision When They Purchased Their Vehicles.........................7

    A.      Plaintiff Zats ...........................................................................7

    B.      Plaintiff Gupta .........................................................................9

    C.      Plaintiff Ruffolo.......................................................................11

III.    Plaintiffs' Claims Are Not Based on the NVLW ............................................12

LEGAL STANDARD ................................................................................14

LEGAL ARGUMENT ...............................................................................15

I.      *Nowling* Rejected the Identical JLRNA Arbitration Clause.........................15

II.     Plaintiffs Never Formed an Arbitration Agreement with JLRNA.................17

    A.      The Only Bilateral Writings Were with the Dealerships....................17

    B.      *Noble v. Samsung* Forecloses Enforcement .......................................19

    C.      Relevant State Law Confirms No Assent...........................................21

        1.      New York Law (Zats): No Meeting of the Minds Where Terms are Hidden in a Post-Sale Manual................................22

        2.      Illinois Law (Ruffolo): Silence is Not Acceptance Without a Reasonable Opportunity to Reject ............................................24

        3.      California Law (Gupta): *Norcia* Forecloses Enforcement of an In-Box Arbitration Agreement ............................................26

i

D.    Warranty Repairs Do Not Manifest Assent to Arbitration ..................28

III.    The Delegation Clause Does Not Cure the Formation Defect ......................32

IV.    Equitable Estoppel Does Not Apply ................................................................33

A.    Equitable Estoppel Does Not Apply Because Plaintiffs Have Not Sued to Enforce the Warranty..............................................................33

B.    Warranty Repairs Do Not Create Equitable Estoppel ........................35

V.    JLRNA's Arbitration Provision Is Unconscionable ......................................36

A.    The Arbitration Agreement Is Procedurally Unconscionable .............37

B.    The Arbitration Agreement Is Substantively Unconscionable............38

VI.    Gupta's MMWA Claim Should Not Be Dismissed .......................................40

CONCLUSION ..........................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alaoui v. Segway*,
  No. 5:25-CV-01659-SSS-SPX, 2026 WL 1658502 (C.D. Cal. June 5, 2026)..... 27

*Bacon v. Avis Budget Grp., Inc.*,
  959 F.3d 590 (3d Cir. 2020) ................................................................... 15

*Beco v. Fast Auto Loans, Inc.*,
  86 Cal. App. 5th 292 (2022)................................................................... 37

*Brower v. Gateway 2000, Inc.*,
  246 A.D.2d 246 (N.Y. App. Div. 1998)................................................. 24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................... 14

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024)............................................................................... 32

*Cornelius v. CVS Pharmacy Inc.*,
  133 F.4th 240 (3d Cir. 2025) ................................................................. 14

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
  No. 20-CV-6305 (MKB), 2021 WL 5591026 (E.D.N.Y. Nov. 29, 2021)............ 36

*Ford v. Hyundai Motor America*,
  No. 8:20-cv-890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021) ..................... 29, 34

*Frisch v. FCA US, LLC*,
  No. 24-cv-10546, 2026 WL 1831998 (E.D. Mich. June 25, 2026) ......... 28, 29, 33

*George v. Jaguar Land Rover N. Am., LLC*,
  2:20-CV-17561 (WJM), 2021 WL 5195788 (D.N.J. Nov. 8, 2021) ................. 40

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014) .................................................................. 33

*Guaschino v. Hyundai Motor America*,
  No. 23-cv-4354, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023) ................... 30, 34

*Guelff v. Mercy Health Servs.*,
  No. 200040, 1999 WL 33444156 (Mich. Ct. App. May 25, 1999)...................... 29

*Gupta v. Morgan Stanley Smith Barney, LLC*,
  934 F.3d 705 (7th Cir. 2019) ................................................................. 24

*Hageman v. Hyundai Motor Am., Inc.*,
  No. 24-7823, 2026 WL 821890 (9th Cir. Mar. 25, 2026) .................................. 31

*Hasty v. Am. Auto. Ass'n*,
  98 Cal. App. 5th 1041 (2023)................................................................. 38

*Hergenreder v. Bickford Senior Living Grp., LLC*,
  656 F.3d 411 (6th Cir. 2011) ................................................................. 29

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) ..................................................... 25, 26, 27

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) ................................................................. 40

*Joyce v. Jaguar Land Rover N. Am., LLC*,
  768 F. Supp. 3d 674 (D.N.J. 2025)........................................................... 40

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
  No. 07 C 1707, 2008 WL 687224 (N.D. Ill. Mar. 7, 2008) ................................ 24

*Kolchins v. Evolution Markets, Inc.*,
  128 A.D.3d 47 (N.Y. App. Div. 2015)....................................................... 22

*Licitra v. Gateway, Inc.*,
  189 Misc. 2d 721 (N.Y. Civ. Ct. 2001) .................................................... 23

*Lima v. Gateway, Inc.*,
  886 F. Supp. 2d 1170 (C.D. Cal. 2012)..................................................... 27

iv

*Manigault v. Macy's E., LLC*,
   318 F. App'x 6 (2d Cir. 2009) ............................................................... 23

*MZM Construction Co. v. New Jersey Building Laborers Statewide Benefit Funds*,
   974 F.3d 386 (3d Cir. 2020) ........................................................... 17, 18

*Noble v. Samsung Elecs. Am., Inc.*,
   682 F. App'x 113 (3d Cir. 2017) ...................................................*Passim*

*Norcia v. Samsung Telecommunications America, LLC*,
   845 F.3d 1279 (9th Cir. 2017) ......................................................*Passim*

*Nowling v. Jaguar Land Rover North America, LLC*,
   No. 24-09184, 2026 WL 867688 (D.N.J. Mar. 30, 2026)............................*Passim*

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ...................................................................... 37

*Plazza v. Airbnb, Inc.*,
   289 F. Supp. 3d 537 (S.D.N.Y. 2018) ................................................. 23

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ......................................................... 25, 26

*Razor v. Hyundai Motor Am.*,
   222 Ill. 2d 75 (2006)......................................................................... 37

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015) ......................................................... 36, 38, 39

*Sandvik AB v. Advent Int'l Corp.*,
   220 F.3d 99 (3d Cir. 2000) ............................................................... 17

*Saravia v. Dynamex, Inc.*,
   310 F.R.D. 412 (N.D. Cal. 2015) ...................................................... 37

*Soo v. Lorex Corp.*,
   No. 20-CV-01437-JSC, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020)............... 23

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ........................................................................ 20

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019) .................................................................. 22, 23

*Trujillo v. Apple Computer, Inc.*,
  578 F. Supp. 2d 979 (N.D. Ill. 2008).................................................... 36, 38

*Tsadilas v. Providian Nat. Bank*,
  13 A.D.3d 190, (N.Y. App. Div. 2004)........................................................ 24

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) .................................................................................... 36

*Weissman v. Revel Transit, Inc.*,
  217 A.D.3d 430 (N.Y. App. Div. 2023)........................................................ 23

*Wilson v. Redbox Automated Retail, LLC*,
  448 F. Supp. 3d 873 (N.D. Ill. 2020)........................................................... 24

*Young v. Experian Info. Sols., Inc.*,
  119 F.4th 314 (3d Cir. 2024) ....................................................................... 14

*Zuniga v. Major League Baseball*,
  196 N.E.3d 12 (Ill. App. Ct. 2021)............................................................... 24

## Rules

Fed. R. Civ. P. 56(a) ........................................................................................ 14

## **INTRODUCTION**

Plaintiffs Boris Zats, Amir Gupta, and Frank Ruffolo each purchased a Land Rover Range Rover from authorized dealerships of Defendant Jaguar Land Rover North America, LLC ("JLRNA"). In so doing, Plaintiffs negotiated, formed, and completed a purchase contract with each respective dealership directly, not with JLRNA. After operating their vehicles for only two years and with less than 20,000 miles, each paid thousands of dollars to replace brake pads and rotors due to a defective braking system. Plaintiffs filed this lawsuit on behalf of themselves and all others similarly situated, asserting several claims, none of which are based on JLRNA's New Vehicle Limited Warranty ("NVLW"), which excluded any coverage for brake-related issues.

JLRNA moved to compel arbitration solely based on an undisclosed provision on page 523 of the Range Rover Owner's Handbook (the "Handbook"), which is in the vehicle's glovebox or trunk at the time of delivery. On March 27, 2026, this Court denied JLRNA's original motion and ordered limited expedited discovery on the issue of arbitrability (ECF No. 30). After that discovery, JLRNA still cannot carry its burden of establishing that Plaintiffs agreed to arbitrate their claims arising from the Range Rover brake defect.

Since JLRNA filed its initial arbitration motion, another court in this District, *Nowling v. Jaguar Land Rover North America, LLC*, No. 24-09184, 2026 WL

867688 (D.N.J. Mar. 30, 2026), rejected JLRNA's effort to enforce the same Handbook arbitration provision on materially similar facts. Respectfully, this Court should do the same. As in *Nowling*, JLRNA still has produced no evidence that any Plaintiff had reasonable notice of the arbitration clause.

As the Third Circuit ruled in *Noble v. Samsung Electronics*, 682 F. App'x 113 (3d Cir. 2017), an arbitration clause is not enforceable where the document containing it does not appear to be a bilateral contract and the terms are not called to the recipient's attention. The Handbook here—whose cover, first page, and primary table-of-contents entries make no mention of arbitration—is materially worse than the guide at issue in *Noble*. Further, the Handbook fails to meet the contractual requirements of each Plaintiff's home state—New York, Illinois, and California— which all require the same threshold showing that Plaintiffs had reasonable notice of the arbitration provision and manifested assent to it.

JLRNA also relies heavily on Plaintiffs' post-sale conduct in obtaining *unrelated* warranty repairs. As such, JLRNA's equitable estoppel arguments lack the necessary requirement because Plaintiffs do not assert claims seeking to enforce the NVLW.

JLRNA's Renewed Motion to Compel Arbitration should be denied.

2

## STATEMENT OF FACTS

**I.     The Arbitration Clause Was Inconspicuously Buried in the Handbook**

JLRNA's sole basis for seeking to require Plaintiffs to arbitrate this case is an arbitration clause in the "Passport to Service" section beginning on page 523 of the Handbook, attached as Exhibit A; *see* Ex. B (JLRNA Resp. to Interrogatories 1 and 2); Ex. C (Solt 30(b)(6) Tr. 64:14-65:2) (Passport to Service is the only arbitration provision at issue). JLRNA admits that none of the Plaintiffs entered into a signed agreement with JLRNA containing any arbitration provision. Ex. D (JLRNA Resp. to RFA 2). JLRNA does not contend that any Plaintiff had actual knowledge of that arbitration provision in the Handbook but instead insists that "Plaintiffs are bound by the arbitration provision even if they chose not to read it." Ex. B (JLRNA Resp. to Interrogatory 3); *see also* Ex. C (Solt 30(b)(6) Tr. 27:21-29:13) (JLRNA identified no additional facts that Plaintiffs knew of the arbitration provision).

The 2023 model year was the first that had an arbitration provision. *Id.* at 53:15-54:22; 56:6-14. Arbitration was not mentioned in any promotional material. *Id.* at 55:18-22. Additionally, JLRNA provided no "particular guidance to authorized dealers regarding if, when, or how to inform prospective purchasers or lessees about the fact that the Passport to Service contained an arbitration provision." Ex. B (JLRNA Resp. to Interrogatory 5).

3

The arbitration clause in the "Passport to Service" is not part of Plaintiffs' purchase agreements (to which JLRNA is not a party) or of any document the customer signs. Ex. C (Solt 30(b)(6) 56:15-19, 57:3-5); Ex. D (JLRNA Resp. to RFAs 1 and 2). It appears only in the Handbook, a 644-page booklet. Ex. A. The Handbook includes more than eighty sections, largely focused on maintaining and operating the vehicle. *See* Ex. A at pp. 5-6 (table of contents). The cover contains no suggestion of any contractual terms or conditions. *Id.* The table of contents does not mention arbitration. *See id.* at 5-6. There is a section titled "Dispute Resolution - USA, *id.* at 6, but it does not contain the arbitration provision, *id.* at 564-601; *see also* Ex. C (Solt Tr. 63:21-64:6). An index lists more than a thousand items but has no mention of arbitration. Ex. A at 617-644.

The arbitration provision appears only in the "Passport to Service" section beginning on page 523, under the heading "BINDING ARBITRATION FOR UNITED STATES VEHICLES ONLY." *Id.* at 523-525. Again, because it is not in either the Handbook's table of contents or its index, *id.* at 5-6, 617-644, the owner would either need to happen to turn to that section by chance or read through the entirety of the more than 600+ page Handbook. JLRNA tries to force its customers' acceptance via the following provision on page 525 of the Handbook:

> **BY USING THE VEHICLE** OR REQUIRING OR ACCEPTING BENEFITS UNDER THIS WARRANTY, INCLUDING HAVING ANY REPAIRS PERFORMED UNDER THE WARRANTY, **YOU AGREE TO BE BOUND BY THESE TERMS**

*Id.* at 525. JLRNA, therefore, purports to bind Plaintiffs and all purchasers unwittingly to this otherwise undisclosed material term simply by driving the car off the dealer's lot. *See id.*; *see also* Ex. C (Solt 30(b)(6) Tr. 65:4-68:19).

There may be a window sticker, known as the Monroney sticker. However, when purchasers pick up the vehicle, the dealer may already have removed it and placed it inside the vehicle. *See, e.g.*, Ex. E (Zats Tr. 39:17-40:18); Ex. F (Ruffolo Tr. 48:1-17); Ex. G (Gupta Tr. 20:12-21:3). Regardless of whether it is visible, the Monroney sticker does not mention any arbitration provision. *See, e.g.*, Ex. H (Zats Dep. Ex. 3); Ex. C (Solt 30(b)(6) Tr. 42:17-43:22). Rather, a box in the lower corner briefly mentions the Land Rover Warranty and lists the mileage and years of the warranty's coverage. Ex. H. Below that—in the smallest font on the sticker—it states, "Please refer to the Passport to Service for *information regarding* the New Vehicle Limited Warranty." *Id.* (emphasis added). It discloses no arbitration clause, class waiver, or opt-out deadline, nor does it inform the purchaser where to look for the Passport to Service. *Id*. Notably, that vague statement ("information regarding the New Vehicle Limited Warranty")—even if the purchaser happens to see it—does not suggest that the Passport to Service contains any terms or conditions that the purchaser is agreeing to with JLRNA.

JLRNA also contends that the Passport to Service is generically available online. Def. Br. at 7. However, JLRNA provides no link or QR code to it; instead,

buyers can access it on the online Handbook only after completing a convoluted series of steps. Ex. C (Solt 30(b)(6) Tr. 71:14-91:10). An owner or prospective buyer must know and enter the exact VIN for the vehicle. *Id.* at 80:19-84:8. Alternatively, the purchaser must select the correct language, territory, and model from what JLRNA described as "massive" selections. *Id.* at 71:14-91:10, 85:17. If the user selects "English" as the language and "United States" as the territory, she will not find a version of the manual that contains the Passport to Service or arbitration provision. *Id.* at 83:20-84:8). Instead, the user must select "English (USA/Cananda)" as the language, then select "United States" as the territory, and finally select the correct model. *Id.* at 79:4-79:22, 87:8-88:4.

Even if a user finds the correct Handbook online, the initial screen mirrors the hard-copy table of contents and contains no reference to arbitration. Ex. I (Reiskin Decl. Ex. 3); *see also* Ex. C (Solt Tr. 89:17-91:10). The "Passport to Service" appears only at the bottom of the topic list, and arbitration appears only after the user expands that menu. Ex. I (Reiskin Decl. Ex. 3). Nothing suggests that users should do so to understand any contract terms they are supposedly agreeing to by merely using the vehicle. Notice of the arbitration provision JLRNA only presents after being sued cannot credibly be established from its website.

6

**II.    Plaintiffs Were Unaware of and Had No Reason to Become Aware of Any Arbitration Provision When They Purchased Their Vehicles**

The record confirms that none of the Plaintiffs were aware of—nor did they have any reason to become aware of—any arbitration clause imposed by JLRNA.

**A.    Plaintiff Zats**

Plaintiff Boris Zats resides in Southampton, New York, and purchased a 2023 Range Rover SE on October 7, 2022, from Jaguar Land Rover of Manhattan. Ex. J (Zats Decl. ¶¶ 1-2); ECF No. 1, Compl. ¶¶ 6-7. Dr. Zats and his wife previously leased another Land Rover vehicle. Ex. E (Zats Tr. 14:20-15:5). Dr. Zats ordered his car at least a year before receiving it. *Id.* at 33:5-16. While researching the vehicle online or otherwise, Dr. Zats did not see any disclosure of an arbitration provision with JLRNA. Ex. J (Zats Decl. ¶ 11).

Most of the transaction occurred beforehand, and he then picked up the car from the dealership. Ex. E (Zats Tr. 26:23-27:4). In purchasing the vehicle, he dealt exclusively with the dealership and had no communication with JLRNA. *Id.* at 38:21-39:5. The purchase agreement is between Dr. Zats and the dealership—JLRNA is not a party. Ex. K (Zats Dep. Ex. 1); Ex. J (Zats Decl. ¶ 3-4); Ex. D (JLRNA Resp. to RFAs 1 and 2).[1] Dr. Zats never signed any agreement with JLRNA,

---

[1] Along with the purchase agreement, Dr. Zats entered into a finance agreement with another entity, Jaguar Finance Group, which includes an arbitration clause. Ex. E (Zats Tr. 35:19-37:22); Ex. L (Zats Dep. Ex. 2). JLRNA is not a party to the finance

7

and JLRNA did not disclose any arbitration provision before or during the purchase of his Class Vehicle. Ex. J (Zats Decl. ¶¶ 8-12).

Dr. Zats took delivery of the Class Vehicle after the purchase documents were completed, and the Handbook was either in the glovebox or the trunk, and he does not recall reviewing it. Ex. E (Zats Tr. 49:22-50:24); Ex. J (Zats Decl. ¶¶ 5-6). Prior to his purchase, Dr. Zats did not receive or have access to the Handbook, nor was the arbitration provision disclosed to him. *Id.* ¶¶ 7-10. Dr. Zats does not recall whether the window sticker was on the car when he came to pick it up or whether it had been removed by the dealership. Ex. E (Zats Tr. 39:17-40:18). He was never advised or informed of any right to opt out of any arbitration provision and therefore has not done so. Ex. J (Zats Decl. ¶ 9).

Dr. Zats has not heard of the term "Passport to Service." Ex. E (Zats Tr. 23:20-24). He does not recall any specific discussion of the warranty at the time of purchase, but given the vehicle's expense, he assumed it had a warranty based on his prior experience purchasing vehicles. *Id.* at 21:11-22:24.

In less than two years of ownership, and with just 16,601 miles on the vehicle, Dr. Zats returned his 2023 Range Rover to the dealership where it was determined that its rear brakes and rotors needed to be replaced. Compl. ¶ 8. Dr. Zats paid

---

agreement has not asserted that the claims Dr. Zats brings in this litigation against JLRNA are covered by the arbitration clause in that agreement.

$2,509.43 plus tax and other incidentals on January 9, 2024, for the repairs. *Id*. ¶ 9; Ex. J (Zats Decl. ¶ 14). JLRNA did not provide coverage for repairs to Dr. Zats's brakes and rotors. *Id.* ¶ 15.

### B.    Plaintiff Gupta

Plaintiff Amir Gupta resides in San Francisco, California, and purchased his 2023 Range Rover Autobiography on December 30, 2022, from Marin Luxury Cars. Ex. M (Gupta Decl. ¶¶ 1-2); Compl. ¶¶ 11-12. Mr. Gupta previously owned two other Range Rover vehicles. Ex. G (Gupta Tr. 12:14-13:2). While researching the vehicle online or otherwise, Mr. Gupta did not see any disclosure of any arbitration provision with JLRNA. Ex. M (Gupta Decl. ¶ 11).

Mr. Gupta did not purchase his vehicle from JLRNA, and JLRNA did not provide any documents related to the purchase. Ex. M (Gupta Decl. ¶¶ 3-4); Ex. D (JLRNA Resp. to RFAs 1 and 2). Mr. Gupta never signed any agreement with JLRNA, and JLRNA did not disclose any arbitration provision before or during the purchase of his Class Vehicle. Ex. M (Gupta Decl. ¶¶ 8-12).

Mr. Gupta took delivery of his vehicle after the purchase transaction documents were completed. Ex. M (Gupta Decl. ¶ 5). The Handbook was in a cardboard sleeve in the trunk of his car, and he never reviewed it. Ex. G (Gupta Tr. 46:21-48:15). The Handbook never came up during his discussions with the salesperson. *Id.* at 55: 2-56:1. Prior to his purchase, Mr. Gupta did not receive or

9

have access to the Handbook, nor was the arbitration provision disclosed to him. Ex. M (Gupta Decl. ¶¶ 7-10). He recalls seeing the Monroney label at some point but does not recall if it was on the car or in the glovebox. Ex. G (Gupta Tr. 19:13-21:3). He never sent an email to opt out of the arbitration provision because he was never aware it existed. *Id.* 51:7-10.

Mr. Gupta had never heard of the term "Passport to Service." *Id.* at 22:11-22:14. He did not discuss the warranty with the salesperson and was not focused on it when purchasing the vehicle. *Id.* at 18:16-19:8; 24:16-19. He did not understand whether the warranty was provided by the dealer or JLRNA. *Id.* at 25:2-6. He had a general understanding that, if there was a problem, he would bring it to the dealership for repair. *Id.* at 28:7-19. He was unaware of whether repairs were covered under warranty. *Id.* at 32:6-11; 33:10-16, 36:6-37:6, 37:11-38:5.

In under two years of ownership, with just 14,825 miles on the vehicle, Mr. Gupta returned his 2023 Range Rover Autobiography to the dealership, which determined that its rear brakes and rotors needed to be replaced. Compl. ¶ 14. Mr. Gupta paid $2,432.04 on October 7, 2024, for the repairs. Ex. M (Gupta Decl. ¶ 14); Ex. G (Gupta Tr. 51:16-52:20) (noting the original charge was $2,476.77, with a partial discount for a total of $2,432.04). JLRNA did not provide coverage for repairs to Mr. Gupta's brakes and rotors. Ex. M (Gupta Decl. ¶ 15).

### C.    Plaintiff Ruffolo

Plaintiff Ruffolo purchased a 2023 Land Rover Range Rover from Howard Orloff Imports in Chicago, Illinois, on September 14, 2022. Ex. N (Ruffolo Decl. ¶¶ 1-2); Compl. ¶¶ 17-18. This was the sixth or seventh Land Rover he had purchased. Ex. F (Ruffolo Tr. 12:7-21). Mr. Ruffolo saw no disclosure of any arbitration provision while researching the vehicle. Ex. N (Ruffolo Decl. ¶ 11).

Mr. Ruffolo's vehicle purchase was largely completed before he arrived at the dealership, and he then went in to pick up the vehicle and sign the paperwork that had already been prepared. Ex. F (Ruffolo Tr. 28:22-29:11). Mr. Ruffolo did not purchase his vehicle from JLRNA, and JLRNA did not provide any documents in connection with the purchase transaction. Ex. O (Ruffolo Dep. Ex. 3); Ex. N (Ruffolo Decl. ¶ 3-4); Ex. D (JLRNA Resp. to RFAs 1 and 2).[2] Mr. Ruffolo never signed any agreement with JLRNA, and JLRNA did not disclose any arbitration provision before or during his purchase. Ex. N (Ruffolo Decl. ¶¶ 8-12).

Mr. Ruffolo took delivery of his vehicle after the purchase transaction documents were completed, and the Handbook was in the vehicle's glovebox. Ex. N (Ruffolo Decl. ¶ 5). He did not look at any materials in the glovebox when he drove off with the vehicle because he understood the vehicle's newer technology without

---

[2] Like Dr. Zats, Mr. Ruffolo's finance agreement includes an arbitration clause. Ex. O (Ruffolo Dep. Ex. 3, at Ruffolo-000007). JLRNA is not a party to the finance agreement and has not asserted that it is applicable to this motion.

further guidance. Ex. F (Ruffolo Tr. 29:16-30:14). He was never informed of any right to opt out of any arbitration provision and therefore has not done so. Ex. N (Ruffolo Decl. ¶ 9); Ex. F (Ruffolo Tr. 65:20-66:4). He believes that the window sticker would have been in the backseat or trunk when he picked up the vehicle, but he would not have inspected it. *Id.* at 48:1-17.

Mr. Ruffolo had never heard of the term "Passport to Service" and was not aware that Passport to Service was the term he needed to look for to see the NVLW. *Id.* at 27:10-15, 51:2-6. He has never had occasion to look at the Passport to Service section of the Handbook. *Id.* at 32:17-19.

After two years of ownership and with only 11,938 miles, Mr. Ruffolo's dealership determined his vehicle's rear brakes and rotors needed replacement. Compl. ¶ 19. The service was completed on October 1, 2024, at a cost of $1,991.54, plus tax and incidentals. *Id.*; Ex. N (Ruffolo Decl. ¶ 14). JLRNA's NVLW expressly excluded coverage for these repairs. *Id.* ¶ 15.

## III.    Plaintiffs' Claims Are Not Based on the NVLW

Plaintiffs allege that with the 2022 model year, JLRNA launched redesigned Range Rover vehicles with a revamped braking and steering system that creates excessive heat on its components that compromises the wearability, functionality, and safety of the vehicles' braking system. Compl. ¶¶ 1-2. By October 2022, JLRNA was inundated with customer complaints about the braking system and responded

12

by instructing its dealers to inspect brake pads and discs and replace as appropriate. *Id*. ¶ 44-53. In several of these communications, JLRNA characterized the issues with the brakes as a "manufacturing defect" given the large volume of repair requests. *Id.* ¶¶ 50-52. These three issues all lead to the premature wear of the brake pads and rotors that require replacement before failure. *Id*. ¶ 53. JLRNA provides its customers with the NVLW warranty for 4 years / 50,000 miles but specifically excludes "[n]ormal wear and tear . . . , which includes *brake pads, brake discs, any other friction related components . . .* " from that warranty. *Id*. ¶¶ 55-56 (emphasis added); *see also* Ex. C (Solt 30(b)(6) at 26:20-27:16). Thus, JLRNA expressly excludes the very components at issue in this litigation from the NVLW terms it relies upon to attempt to compel arbitration.

Plaintiffs do not challenge the exclusion of these repairs under the NVLW and do not assert any claims based on the terms of the NVLW. Rather, Plaintiffs assert a Magnuson-Moss Warranty Act ("MMWA") claim based on JLRNA's breach of each state's *implied* warranty of merchantability. Compl. ¶ 80. Plaintiff Zats asserts claims pursuant to New York General Business Law §§349, 350, and breach of implied warranty of merchantability. *Id.* ¶¶ 85-98, 110-121.[3] Plaintiff Gupta asserts claims

---

[3] Dr. Zats originally asserted a claim for Breach of Express Warranty under New York law, Compl. ¶¶ 99-109, but it was voluntarily dismissed (ECF Nos. 38, 39). Moreover, that claim was based on obligations under New York law, not the terms of the NVLW itself. JLRNA contends that the voluntary dismissal of this claim was

13

under the California Consumer Legal Remedies Act, the Song-Beverly Consumer Warranty Act, the Unfair Business Practices Act, as well as a claim for breach of covenant of good faith and fair dealing. *Id*. ¶¶122-179. Plaintiff Ruffolo asserts claims for breach of implied warranty of merchantability and violations of the Illinois Consumer Fraud and Deceptive Practices Act. *Id*. ¶¶180-196. None of these claims are based on a breach of the NVLW.

## LEGAL STANDARD

The Third Circuit has instructed courts assessing motions to compel arbitration to confirm both that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (citations omitted).

The Rule 56 summary judgment standard applies when, as here, the Court considers "facts and evidence outside" the complaint. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 248 (3d Cir. 2025) (citations omitted). This standard requires the movant to demonstrate that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the moving party, JLRNA bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). If a

---

procedurally improper (Def. Br. at 4 n.2), but it followed the procedure proposed in the parties' joint letter to the Court on June 18, 2026 (ECF No. 36).

genuine issue of material fact exists, a motion to compel arbitration must be denied. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 603 (3d Cir. 2020) (affirming denial of arbitration motion where there were disputed facts about whether the plaintiff had reasonable notice of the agreement).

## **LEGAL ARGUMENT**

### I.    *Nowling* **Rejected the Identical JLRNA Arbitration Clause**

*Nowling v. Jaguar Land Rover North America, LLC*, No. 24-09184, 2026 WL 867688 (D.N.J. Mar. 30, 2026), is directly on point. Judge Semper denied JLRNA's motion to compel arbitration based on the very same Handbook arbitration clause, holding that the clause was unenforceable for lack of reasonable notice and that JLRNA's equitable-estoppel theory failed on its own terms.

The parallels are complete. In both cases, JLRNA sought to enforce the same arbitration provision against a purchaser who never signed anything referencing arbitration and received no point-of-sale notice that the Handbook contained binding terms. JLRNA relied on the same "container contract" theory that the Handbook binds purchasers who use their vehicles or accept warranty benefits.

The governing legal framework is the same too. The *Nowling* court evaluated JLRNA's motion under Rule 56 because the purchaser came forward with a declaration disputing notice and assent, and it applied Delaware contract law, which requires mutual assent grounded in "reasonable notice to each contracting party of

15

the contractual terms." *Nowling*, 2026 WL 867688, at *13 (citations omitted). The federal presumption favoring arbitration does not lower that threshold; it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id*. at *12.

Applying those principles, *Nowling* held that JLRNA's Handbook did not provide reasonable notice of the arbitration provision. Following the Third Circuit's decision in *Noble v. Samsung Electronics America, Inc.*, 682 F. App'x 113 (3d Cir. 2017), the court explained that any presumption of assent applies only "where there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement," and that presumption fails when the terms are "buried in a manner that gave no hint to a consumer that an arbitration provision was within" the booklet. *Id*. at *14-15. Just so here: the Handbook's cover and table of contents said nothing about arbitration, the clause was hidden hundreds of pages in, and the purchaser had no opportunity to see, read, sign, agree to, or reject it before or during the sale.

*Nowling* also rejected the very "container contract" theory JLRNA advances here. The court refused to characterize the arbitration provision as a mere "portion" of the express warranty, observing that the clause "appears in a standalone section" of the Passport to Service and that "use of the vehicle alone signifies acceptance, decoupling the Arbitration Agreement from the warranty." *Id*. at *15. JLRNA's

16

equitable-estoppel fallback fared no better. Because the arbitration term is not tethered to acceptance of warranty benefits, a purchaser who obtains warranty repairs is not "accepting the benefits" of the arbitration provision, and *Ford v. Hyundai Motor America*—JLRNA's lead estoppel authority—was distinguished on precisely that ground. *Id*. at *15-16.

For the same reasons, this Court should follow *Nowling*, deny the motion to compel arbitration, and reject JLRNA's equitable-estoppel fallback.

## II.   Plaintiffs Never Formed an Arbitration Agreement with JLRNA

### A.   The Only Bilateral Writings Were with the Dealerships

JLRNA's "container contract" label is a conclusion, not a proof of formation. Calling the Passport to Service a "container contract" assumes the very thing Plaintiffs dispute: that Plaintiffs ever assented to it. The Third Circuit's container-contract cases do not permit that shortcut. In *MZM Construction Co. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020), the court held that "under section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." The severability doctrine on which JLRNA relies "presumes an underlying, existent, agreement," *id.* at 398 (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000)); "without an agreement to arbitrate, there can be no arbitration," *id*. Severability therefore does not apply when

17

the threshold arbitrability issue is whether the parties mutually assented to the container contract, and that is true "no less . . . when the container contract includes or incorporates a delegation provision." *Id*. at 400.

In other words, before any argument about severability, delegation, or incorporation of the JAMS or AAA rules can get off the ground, the Court must satisfy itself that Plaintiffs actually entered into the Passport to Service in the first place. JLRNA's brief skips that step entirely. It labels the Passport to Service a "container contract," treats that label as if it discharged JLRNA's burden on formation, and then invokes severability and delegation to send everything to the arbitrator. *MZM* forecloses that maneuver: "[l]ack of assent to the container contract necessarily implicates the status of the arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect," so "a court will need to decide questions about the parties' mutual assent to the container contract to satisfy itself that an arbitration agreement exists." *Id.* at 400. Here, that inquiry is dispositive. Plaintiffs never signed the Passport to Service and were never presented with it at the point of sale. *See, e.g.,* Ex. D (JLRNA Resp. to RFA 2); Ex. J (Zats Decl. ¶¶ 8-12); Ex. M (Gupta Decl. ¶¶ 8-12); Ex. N (Ruffolo Decl. ¶¶ 8-12). The only contracts they signed as part of their vehicle purchases were with dealerships or companies that provided financing—JLRNA was not a party to any of those agreements. *See, e.g.*, Ex. D (JLRNA Resp. to RFA 1); Ex. K (Zats Dep.

Ex. 1); Ex. J (Zats Decl. ¶¶ 3-4); Ex. E (Zats Tr. 38:21-39:5); Ex. N (Gupta Decl. ¶¶ 3-4); Ex. O (Ruffolo Dep. Ex. 3); Ex. N (Ruffolo Decl. ¶¶ 3-4). Under *MZM*, that alleged formation defect is a gateway question for this Court—not the arbitrator— regardless of what the Passport to Service says about "containers," delegation, or arbitral rules.

### B.    *Noble v. Samsung* Forecloses Enforcement

The Third Circuit's decision in *Noble v. Samsung Electronics America, Inc.*, 682 F. App'x 113 (3d Cir. 2017), independently requires denial of JLRNA's renewed motion. In *Noble*, Samsung sought to compel arbitration based on a clause buried on page 97 of a 143-page "Health and Safety and Warranty Guide" packed inside the box with a smartwatch plaintiff purchased from Samsung's authorized retailer. *Id.* at 114-15. The Third Circuit affirmed the denial of Samsung's motion, holding that the clause was not a valid contractual term because the buyer had no reasonable notice of it and therefore never mutually assented. *Id.* at 117-18.

The Third Circuit's reasoning maps directly onto JLRNA's Handbook. A binding contract requires "reasonable notice to each contracting party of the contractual terms," and contractual terms are enforceable only when "reasonably conspicuous," not "proffered unfairly, or with a design to conceal or de-emphasize [their] provisions." *Id.* at 116. Where "the writing does not appear to be a contract and the terms are not called to the attention of the recipient, there is no reasonable

19

notice and the terms cannot be binding." *Id.* at 116 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)). The Third Circuit found each of those failings in Samsung's Guide: nothing on the outside indicated a bilateral contract, the cover referred to it only as a "manual," and neither the table of contents nor the index mentioned the arbitration clause. *Id.* at 117. As the court put it, "the only manner in which a consumer could receive notice of the Clause at issue here would be to read ninety-seven pages into the Guide where the Clause appears, or to happen upon page ninety-seven by luck." *Id.* at 117.

JLRNA's Handbook is worse on every metric *Noble* found dispositive. The cover identifies it as a Handbook, not a bilateral contract. The arbitration provision is not on page 97 of a 143-page booklet; it is buried on page 523 of over 600 pages concerning the vehicle's operation. Plaintiffs never signed the Handbook, no sales representative flagged it at the point of sale, and neither the cover nor the table of contents so much as hints that an arbitration agreement, waiver of jury and class rights, or any other contract terms or conditions is inside. If the Samsung buyer in *Noble* could not be charged with notice of a clause on page 97 of a "manual," Plaintiffs cannot be charged with notice of a clause on page 523 of one.[4]

---

[4] Moreover, Plaintiffs' past experience with JLRNA (all three had previously owned Range Rovers, Ex. E (Zats Tr. 14:20-15:5); Ex. G (Gupta Tr. 12:14-13:2); Ex. F (Ruffolo Tr. 12:7-21)), gave them no reason to suspect any arbitration clause would be buried in the Handbook. This was the first model year where JLRNA had inserted an arbitration clause there, Ex. C (Solt 30(b)(6) Tr. 53:15-54:22; 56:6-14).

20

JLRNA's likely rejoinders were all foreclosed by *Noble*. First, the presence of a warranty inside the Handbook does not supply sufficient notice because "notice of a warranty does not, by itself, provide notice of an ensuing bilateral contract term, such as an arbitration clause." *Id.* at 117 n.7. Second, all-caps formatting does not save an otherwise buried clause: "'the relative size of the disclaimer's type face is irrelevant' when it is 'designed in a manner that makes it unlikely that consumers would ever see it at all.'" *Id.* at 118 n.9. Third, an opt-out provision buried on the same page cannot supply the notice the rest of the document withholds; the presumption of assent applies only "where there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement," and where, as here, the Handbook gives no such notice the court "will not presume that consumers read or had notice of that purportedly binding agreement." *Id.* at 118.

Because Plaintiffs lacked reasonable notice of the arbitration provision, "[t]he Clause, in short, is not a valid contractual term," *id.* at 118, and the renewed motion to compel arbitration should be denied.

## C. Relevant State Law Confirms No Assent

The Handbook fails the contract-formation requirements of the states where each Plaintiff resides: New York, Illinois, and California. Each state requires the same threshold showing JLRNA cannot make: that Plaintiffs had reasonable notice

21

of the arbitration provision and manifested assent to it. Buried, unsigned, post-sale terms in an owner's manual satisfy no state's formation standard.

### 1. New York Law (Zats): No Meeting of the Minds Where Terms are Hidden in a Post-Sale Manual

Under New York law, a binding contract requires an offer, acceptance, consideration, and a meeting of the minds on all material terms. *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 59 (N.Y. App. Div. 2015), *aff'd*, 96 N.E.3d 784 (N.Y. 2018). A party is not bound by contractual terms—including an arbitration clause—unless the offeror provides reasonably conspicuous notice of those terms and the offeree manifests unambiguous assent. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) (denying arbitration motion where the consumer lacked reasonable notice of and did not assent to the arbitration clause).

Dr. Zats satisfied none of those requirements. His purchase agreement was with the dealership, not JLRNA. *See, e.g.*, Ex. K (Zats Dep. Ex. 1); Ex. J (Zats Decl. ¶ 3-4); Ex. D (JLRNA Resp. to RFAs 1 and 2). The Passport to Service was never presented to him at signing, was never described as a bilateral contract, and was tendered inside the vehicle only after title had transferred. *See, e.g.*, Ex. E (Zats Tr. 49:22-50:24); Ex. J (Zats Decl. ¶¶ 5-10). Courts applying New York law reject formation on those facts: post-sale "in-the-box" terms delivered without pre-purchase disclosure do not create a meeting of the minds, and inquiry notice cannot be inferred from a document whose cover holds it out as a manual rather than a

22

contract. *See Soo v. Lorex Corp.*, No. 20-CV-01437-JSC, 2020 WL 5408117, at *3 (N.D. Cal. Sept. 9, 2020) (denying arbitration motion under New York law based on agreement provided after purchase and where the consumer had no meaningful opportunity to reject the product and refuse the terms); *Licitra v. Gateway, Inc.*, 189 Misc. 2d 721, 731 (N.Y. Civ. Ct. 2001), *aff'd as modified* (Oct. 9, 2002) (denying arbitration motion based on agreement sent with the product). The result in *Noble* under New Jersey law is the same result required under New York law: no reasonable notice, no assent, no binding arbitration clause.

JLRNA's cases are distinguishable and do not compel a different result. Dr. Zats did not agree to arbitrate this dispute simply because he knew his vehicle came with a warranty. *Starke* is clear that while there is a duty to read terms that are presented, including those provided post-sale, the offeree must "be put on notice of the existence of additional contract terms before it can be said that he has assented to them." 913 F.3d at 295. "The duty to read does not morph into a duty to ferret out contract provisions when they are contained in inconspicuous hyperlinks," *id.*, or are buried on page 523 of a manual. JLRNA's remaining cases involved materially different notice or assent facts.[5]

---

[5] *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (employee continued working after receiving notice of arbitration agreement); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 550 (S.D.N.Y. 2018) (plaintiffs clicked through agreements containing arbitration clause); *Weissman v. Revel Transit, Inc.*, 217 A.D.3d 430 (N.Y. App. Div. 2023) (consumer clicked a box acknowledging

23

### 2.    Illinois Law (Ruffolo): Silence is Not Acceptance Without a Reasonable Opportunity to Reject

Illinois law requires the same elements of offer, acceptance, and mutual assent, and treats silence as acceptance only in the narrow circumstance where the offeree has been given both notice of the terms and a reasonable opportunity to reject them. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 714 (7th Cir. 2019). Illinois courts refuse to enforce arbitration terms where the consumer was not fairly alerted to the clause or to a meaningful opportunity to reject it. *See Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 884 (N.D. Ill. 2020) (holding that consumer did not agree to arbitrate where terms were not spatially located close to the "pay now" button and thus not "conspicuously displayed"); *Kaufman v. Am. Exp. Travel Related Servs. Co.*, No. 07 C 1707, 2008 WL 687224, at *8 (N.D. Ill. Mar. 7, 2008) (finding no agreement to arbitrate where there was no meaningful opportunity to reject terms provided after purchase); *Zuniga v. Major League Baseball*, 196 N.E.3d 12, 31 (Ill. App. Ct. 2021) (holding agreement to arbitrate on ticket unenforceable where it gave only seven days to opt out).

---

awareness of and agreement to terms); *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190 (N.Y. App. Div. 2004) (credit card user continued using card after receiving arbitration agreement); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252 (N.Y. App. Div. 1998) (arbitration appeared in three-page terms and conditions and consumer had opportunity to reject the product).

Ruffolo received no such opportunity. Ruffolo signed a purchase agreement with the dealership, not JLRNA, took delivery of a vehicle with a bulky owner's manual in the glovebox, and was never told that a clause on page 523 of that manual purported to bind him to arbitration or that a 30-day clock was already running to reject it. *See, e.g.*, Ex. O (Ruffolo Dep. Ex. 3); Ex. N (Ruffolo Decl. ¶¶ 3-5, 8-12); Ex. D (JLRNA Resp. to RFAs 1 and 2). Under Illinois law, silence of a hidden term is not acceptance. Nor is a 30-day opt-out window a "reasonable opportunity to reject" when the offeree has not been told the offer exists.

JLRNA primarily relies upon *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149–50 (7th Cir. 1997) and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) but both cases are distinguishable. The central holding of those cases rests on two features absent here. First, the consumer in each case was affirmatively told, before or at the point of sale, that additional terms would accompany the product. *See ProCD*, 86 F.3d at 1450 (box "declare[d] that the software comes with restrictions stated in an enclosed license"); *Hill*, 105 F.3d at 1150 (plaintiffs "knew before they ordered the computer that the carton would include some important terms"). Second, each consumer had a genuine, cost-free opportunity to reject those terms after reviewing them by returning the product for a refund, and the courts treated the buyer's decision to keep and use the product past that window as the act of acceptance. *See ProCD*, 86 F.3d at 1452; *Hill*, 105 F.3d at 1150. Neither feature

25

exists here. First, nothing on the outside of the vehicle, in the purchase documents, or in JLRNA's pre-sale communications alerted Plaintiffs that there were any contractual terms or conditions buried in the Handbook, much less an arbitration clause. Second, because Plaintiffs had no reasonable way of learning about the arbitration agreement, they had no way of escaping its terms as permitted in *ProCD* and *Hill.* Stripped of the conspicuous outside-the-box notice and the meaningful reject-by-return mechanism that made *ProCD* and *Hill* "accept-or-return" contracts, JLRNA is left with exactly the kind of hidden, post-sale term that *Noble* held cannot bind a consumer.

### 3. California Law (Gupta): *Norcia* Forecloses Enforcement of an In-Box Arbitration Agreement

It is especially clear that JLRNA's arguments fail under California law. The Ninth Circuit has already applied California's mutual-assent doctrine to a near-identical fact pattern and rejected the arbitration clause. In *Norcia v. Samsung Telecommunications*, the court held that an in-the-box arbitration provision tucked into a Samsung "Product Safety & Warranty Information" brochure did not bind the consumer under California law because "'an offeree . . . is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.'" 845 F.3d 1279, 1285 (9th Cir. 2017) (citations omitted). The Third Circuit expressly followed *Norcia*'s analysis in reaching the same result under New Jersey law in *Noble,* 682 F. App'x at 117.

26

JLRNA's only response is a footnote dismissing *Norcia* as a "smartphone" case. That distinction is cosmetic and inconsistent with JLRNA's reliance on *Hill v. Gateway 2000*, an in-box computer case, and *ProCD v. Zeidenberg*, an in-package software case. JLRNA cannot rely on those consumer-goods cases while dismissing *Norcia*—a consumer-product case applying the same California mutual-assent principles—because the box contained a smartphone rather than a computer or CD-ROM. The structural defects remain the same. California's mutual-assent rule turns on notice and assent, not product category. *Alaoui v. Segway*, No. 5:25-CV-01659-SSS-SPX, 2026 WL 1658502, at *3 (C.D. Cal. June 5, 2026) (finding no reasonable notice of or assent to arbitration agreement in warranty even though there was a sticker on the box indicating an arbitration agreement).

JLRNA's citation to *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170 (C.D. Cal. 2012) is similarly unavailing. Finding that "it suffices to inform the consumer at the time of purchase that a sale is subject to additional terms that will be disclosed later," the *Lima* court held the arbitration agreement enforceable because the consumer knew of the warranty, knew how to access it on Gateway's website (which had a "disclaimer at the bottom stating that the sale was 'subject to Limited Warranty and Terms & Conditions agreement'"), the sales receipt provided before the product arrived that "the sale was 'made under Gateway's Terms & Conditions of Sale . . .

27

.'", and the warranty appeared in the box. *Id.* at 1174, 1178. None of those notice-creating features is present here.

On these facts, *Norcia* is directly on point, and Gupta cannot be forced into arbitration on the strength of a clause a California consumer never saw, never signed, and had no reason to know existed.

### D. Warranty Repairs Do Not Manifest Assent to Arbitration

JLRNA's fallback theory is that Plaintiffs later "took advantage" of the NVLW by presenting their vehicles for warranty repairs, and that this conduct manifests assent to every term buried in the Passport to Service, including the arbitration provision. That argument collapses on the law and the facts. Assent must exist at the time of contract formation, not be conjured retroactively from a customer's later use of rights that the manufacturer was already required by contract and statute to provide. Under the MMWA, JLRNA was obligated to honor the written warranty regardless of whether Plaintiffs ever agreed to arbitrate. Accepting those required services is not consent to a separate, undisclosed dispute-resolution regime hidden inside the Handbook. Each of the three decisions JLRNA leans on—*Frisch*, *Lorenzo Ford*, and *Guaschino*—is materially distinguishable.

*Frisch v. FCA US, LLC*, No. 24-cv-10546, 2026 WL 1831998 (E.D. Mich. June 25, 2026), does not help JLRNA and actually undercuts the motion. The *Frisch* court reaffirmed the very rule JLRNA needs to displace: "knowledge that a written

28

warranty exists is not the same as knowledge that the warranty contains an agreement to arbitrate disputes", and "knowledge of the warranty, without more, did not automatically establish notice of the arbitration agreement or assent to its terms." 2026 WL 1831998, at *4. That is dispositive here, because the entirety of JLRNA's renewed motion rests on the equation *Frisch* rejects. Second, *Frisch* was decided under a conduct-based assent doctrine Michigan uniquely derived from *Guelff v. Mercy Health Servs.*, No. 200040, 1999 WL 33444156 (Mich. Ct. App. May 25, 1999), and *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011), not the New York, Illinois, or California law that governs Plaintiffs. JLRNA has not identified a single case in those jurisdictions holding that post-sale acceptance of independently owed warranty repairs manifests assent to an undisclosed arbitration clause buried inside an owner's manual.

*Ford v. Hyundai Motor America*, No. 8:20-cv-890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021), is likewise distinguishable, and JLRNA overreads it. The *Ford* plaintiffs affirmatively alleged that they relied on the terms of the written warranty in deciding to purchase their vehicles, and they pleaded breach of express warranty claims that sought to enforce those very terms. *Id.* at *6. The *Ford* court rejected the California plaintiffs' averred ignorance of the arbitration provision because having chosen to sue on the warranty and plead reliance on it, they could not credibly disclaim the arbitration provision it contained. *Id.* at *7.

29

Plaintiffs here have not pleaded that they read, relied on, or bargained for the arbitration terms in the Passport to Service. To the contrary, JLRNA expressly excludes the components at issue here from the NVLW. The arbitration provision was buried inside a Handbook they did not receive until delivery, it was never disclosed pre-purchase, and JLRNA does not identify a single pre-sale document that put a reasonable consumer on notice that a binding class-action waiver and arbitration agreement were part of the deal. The *Ford* "duty to read" premise fails where there was no pre-sale document identifying an arbitration clause to be read, and its estoppel-adjacent reliance rationale fails where Plaintiffs are not suing on the warranty terms JLRNA now invokes.

*Guaschino v. Hyundai Motor America*, No. 23-cv-4354, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023), is even farther afield. In *Guaschino*, the plaintiff conceded that the warranty was a contract between the parties and premised his substantive claims on that contract; the court's equitable-estoppel holding turned on that concession, coupled with the plaintiff's affirmative attempt to sue *on* the warranty to obtain a remedy under it. 2023 WL 8126846, at *3-4. Neither predicate is present here. Plaintiffs contest formation of the container contract as it relates to the arbitration provision and there is no attempt to enforce the terms of the NVLW. Presenting a vehicle for a repair to a dealership that JLRNA was independently obligated to cover is categorically different from suing "on the warranty" to obtain

30

damages measured by its terms. *Guaschino* does not stand for the sweeping proposition that receipt of statutorily and contractually required warranty service, without more, retroactively binds a consumer to arbitration terms she never saw.

There is also a common structural problem across all three decisions on which JLRNA relies.[6] Each accepts, expressly or implicitly, that an arbitration provision buried in a post-sale warranty booklet becomes binding the moment the consumer accepts a covered repair. That reasoning is impossible to reconcile with *Norcia*, 845 F.3d at 1284-85, *Noble*, 682 F. App'x at 116, and with *Nowling* on the identical JLRNA clause, all of which properly train the mutual-assent inquiry on what the consumer knew and had the opportunity to reject *at* the point of sale, not on what she did afterward to keep the vehicle safe and on the road. Nor can the 30-day opt-out window rehabilitate JLRNA's position: an opt-out right is meaningless if the consumer never learned of the provision she was supposed to opt out of.

---

[6] JLRNA's position leads to absurd results. *See Hageman v. Hyundai Motor Am., Inc.*, No. 24-7823, 2026 WL 821890, at *3 (9th Cir. Mar. 25, 2026) (affirming denial of arbitration motion based on "absurd results canon"). The NVLW extends its benefits to the registered owner: "Once registered, you are entitled to the benefits of the various applicable warranties as described herein." NVLW at 525. Yet JLRNA contends that, "[b]y using the vehicle, or requesting or accepting benefits under this warranty," the owner is bound by the arbitration provision. *Id.* Under that theory, if Plaintiffs sell or transfer the vehicle to a new registered owner, that owner would be bound to arbitrate merely by using the vehicle or requesting warranty benefits—despite never dealing with JLRNA or its dealerships and receiving the warranty only as an incident of purchasing this expensive vehicle.

31

**III.    The Delegation Clause Does Not Cure the Formation Defect**

Because JLRNA has not established a valid arbitration agreement, the issue of delegation is not ripe. "Before referring a dispute to an arbitrator . . ., the court determines whether a valid arbitration agreement exists." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) (citations omitted). Delegation clauses presuppose an agreement to arbitrate. Where formation is contested, the court, not the arbitrator, decides. Incorporation of JAMS or AAA rules is immaterial because rules can delegate arbitrability only if the parties first formed a contract incorporating them. Until the Court resolves formation, it need not address whether a delegation clause exists or, if so, whether it is enforceable. Plaintiffs have set forth why there was no enforceable agreement due to the lack of notice and assent, and they specifically challenge the delegation provision itself, not just the broader arbitration clause: the same lack of notice, signature, and opportunity to reject defeats both.

Even putting those threshold requirements aside, the language JLRNA cites is not the clear and unmistakable delegation it claims. The provision states: "[t]he arbitrator (and not a court) shall decide all issues of interpretation, scope, and application of this agreement." Def. Br. at 27 (citing ECF 64, PageID:116). That language at most delegates disputes about the interpretation, scope, and application of an agreement that has already been formed. It does not delegate the antecedent question whether Plaintiffs ever assented to the arbitration provision in the first

32

place. Plaintiffs assert no claims or issues arising under the Passport to Service, and JLRNA's incorporation of JAMS or AAA rules cannot cure the absence of assent; rules cannot be incorporated into a contract that was never formed. To be clear and unmistakable, JLRNA must present language that is specific and beyond contestation. The language cited by JLRNA does not satisfy that burden.

## IV.   Equitable Estoppel Does Not Apply

### A.   Equitable Estoppel Does Not Apply Because Plaintiffs Have Not Sued to Enforce the Warranty

Equitable estoppel binds a non-signatory to an arbitration clause only when the plaintiff sues to enforce the very contract containing that clause, on the principle that a party cannot accept the benefits of an agreement while disclaiming its burdens. *See Norcia*, 845 F.3d at 1288; *Nowling*, 2026 WL 867688, at *15. Plaintiffs do no such thing here. Plaintiffs' MMWA, state consumer-protection statutes, and implied warranty of merchantability claims do not seek to enforce the NVLW or any promise that makes arbitration a condition of relief. There is no benefit-of-the-contract for estoppel to police. Plaintiffs are not "cherry-picking" the provisions of the warranty that benefit them while avoiding its obligations. *See Griswold v. Coventry First LLC*, 762 F.3d 264, 273 (3d Cir. 2014).

*Frisch*, 2026 WL 1831998, at *5, squarely rejected the same estoppel theory JLRNA presses here, holding that estoppel "is not the proper vehicle for compelling arbitration" where plaintiffs "do not seek to enforce the substantive terms of the

33

express warranties themselves" but instead "assert claims for breach of implied warranty and related statutory causes of action." The *Frisch* court concluded that the manufacturer's "equitable-estoppel theory does not provide an independent basis for compelling arbitration." JLRNA's dismissal of *Frisch* as "unpersuasive," Def. Br. at 31-32 n.11, *does* not supply the missing New York, Illinois, or California authority for compelling arbitration on these facts.

As addressed above, *Ford*, 2021 WL 7448507, and *Guaschino*, 2023 WL 8126846, turned on the plaintiffs' breach-of-express-warranty claims under Hyundai's warranty or concessions that the warranty was the governing contract. That was the basis on which those courts distinguished *Norcia*, where none of the claims were based on the written warranty. *See Guaschino*, 2023 WL 8126846, at *4 ("However, *Norcia* does not apply because Norcia did not bring any claims for breach of warranty."); *Ford*, 2021 WL 7448507 (distinguishing *Norcia* where plaintiffs "asserted breach of warranty claims based on the NVLW and have expressly pleaded their awareness of, and agreement to be bound by" its terms). Plaintiffs here bring no such claim and made no such concession.

JLRNA's own drafting seals the result. The arbitration provision expressly excludes MMWA claims. Ex. A (Handbook at 523). JLRNA cannot invoke equity to sweep into arbitration the very claims it carves out. A party that drafts an exclusion cannot ask a court to erase it under the guise of fairness.

34

## B.      Warranty Repairs Do Not Create Equitable Estoppel

JLRNA's alternative theory—that Plaintiffs' post-sale warranty repairs equitably bind them to arbitrate—fails as a matter of law and on the arbitration provision's own text. As *Norcia* makes clear, warranty language "creates binding, legal obligations on the seller, . . . but a warranty does not impose binding obligations on the buyer," and "does not impose any independent obligation on the buyer outside of the context of enforcing the seller's promises." 845 F.3d at 1288. "A condition that must be satisfied before a consumer can enforce a warranty is not equivalent to a freestanding obligation that limits a buyer's rights outside of the scope of warranty itself." *Id*. A unilaterally imposed obligation to arbitrate cannot be transformed into a pre-condition to warranty coverage, and accepting required warranty repairs is not tantamount to consenting to arbitrate unrelated claims.

*Nowling* applied that principle to the very arbitration agreement at issue here and rejected the same warranty-use theory JLRNA presses. The court refused to treat the Arbitration Agreement as a mere "portion" of the express warranty, observing that it "appears in a standalone section of the Passport to Service" and that "use of the vehicle alone signifies acceptance, decoupling the Arbitration Agreement from the warranty." 2026 WL 867688, at *15. It then distinguished authority binding plaintiffs "only by accepting benefits under their warranty, not by mere use of the vehicle," and held that the plaintiff was not "equitably estopped from denying the

35

validity of the Arbitration Agreement." *Id.* at *15-16. JLRNA cannot rewrite *Nowling* by relabeling its own standalone clause as a warranty term.

Equitable estoppel polices a party who accepts terms it later contracts around; it does not create a back door around the absence of contract formation. If anything, equity cuts the other way. JLRNA drafted this clause, buried it on page 523 of the Handbook, and now asks the Court to use estoppel to fill the gaps in its own drafting. Estoppel exists to prevent unfairness, not to reward a drafter who wrote a narrow clause and then demands a broader one.

## V.      JLRNA's Arbitration Provision Is Unconscionable

Even if JLRNA could establish contract formation (it has not), the arbitration provision is unconscionable and unenforceable. A court may invalidate an arbitration agreement based on generally applicable contract defenses, including unconscionability. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). California and New York law apply a sliding scale requiring both procedural and substantive unconscionability, though the two need not be equally present. *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015); *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB), 2021 WL 5591026, at *4 (E.D.N.Y. Nov. 29, 2021). Under Illinois law, by contrast, procedural unconscionability alone is enough where the terms were unavailable at the time of purchase. *Trujillo v. Apple Computer, Inc.*, 578 F. Supp. 2d 979, 992, 995 (N.D. Ill. 2008) (citing *Razor v. Hyundai Motor*

36

*Am.*, 222 Ill. 2d 75, 100-01 (2006)). JLRNA's arbitration provision is both procedurally and substantively unconscionable.

### A.    The Arbitration Agreement Is Procedurally Unconscionable

Procedural unconscionability requires oppression or surprise. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012). Oppression turns on the lack of negotiation and meaningful choice; surprise turns on burying the term in a prolix printed form. *Id.* Both prongs are satisfied here. *See Beco v. Fast Auto Loans, Inc.*, 86 Cal. App. 5th 292, 307 (2022).

The arbitration provision is a classic adhesion clause. JLRNA drafted it unilaterally, buried it deep in the Handbook, and never presented it to Plaintiffs during the purchase. Since Plaintiffs had no opportunity to negotiate its terms and no meaningful choice, oppression is present. *See Beco*, 86 Cal. App. 5th at 307.

The surprise prong is likewise present where, as here, the disputed terms are "hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015). Plaintiffs each testified that they had never heard of the "Passport to Service," and did not know they had entered any contract with JLRNA, let alone one purporting to waive constitutional and procedural rights. The clause appears only in the Handbook delivered with the vehicle after purchase, and nothing in the Handbook's table of contents or index alerts the reader to it. The promotional materials did not

37

alert purchasers to the existence of any arbitration clause and the only way they could have allegedly accessed it in the online Handbook is through a confusing process to search for something they had no reason to believe existed. That is the paradigm of a hidden term. Under Illinois law, this alone renders the clause unenforceable because the arbitration terms were not available to Ruffolo at the time of purchase. *Trujillo*, 578 F. Supp. 2d at 995.

JLRNA's post-hoc opt-out mechanism, buried in the Handbook, does not save the clause. An opt-out cannot cure procedural unconscionability where the consumer never received notice of the term in time to reject it, and where the mechanism itself confirms, rather than dispels, the surprise.

### B.    The Arbitration Agreement Is Substantively Unconscionable

Substantive unconscionability turns on whether the terms of the agreement are overly harsh or one-sided, with mutuality as the paramount consideration. *Sanchez*, 61 Cal. 4th at 910-12; *Hasty v. Am. Auto. Ass'n*, 98 Cal. App. 5th 1041, 1059 (2023). JLRNA's arbitration provision fails on both scores.

Mutuality is absent. Although the arbitration provision is placed within the Passport to Service, it reaches far beyond the four corners of the NVLW, purporting to capture "any dispute," including advertising, sales, and unfair competition claims that have nothing to do with the NVLW. JLRNA seeks the benefit of a broad forum-selection right it never bargained for, while binding the consumer to give up class

38

treatment and access to courts based on a document handed over after the sale. That is the definition of a one-sided bargain.

The clause is also substantively unfair because JLRNA drafted it to condition warranty coverage itself on acceptance of arbitration, telling consumers in bolded, all-caps text that "IF YOU PURCHASED OR LEASED YOUR VEHICLE IN THE UNITED STATES, YOUR WARRANTY IS MADE SUBJECT TO THE TERMS OF THIS BINDING ARBITRATION PROVISION." Ex. A at 524. A manufacturer that is not a party to the retail purchase contract cannot lawfully condition its statutorily and contractually required warranty performance on the buyer's waiver of judicial and class remedies. That is precisely the kind of coercive, take-it-or-lose-your-warranty term courts refuse to enforce.

The class-action waiver compounds the one-sidedness. It strips consumers of the only economically viable method for pursuing small-dollar claims, while leaving JLRNA with the full panoply of procedural tools when it chooses to invoke them. Combined with the drafting choices described above, the class waiver confirms that the provision was designed to insulate JLRNA from meaningful consumer accountability, not to provide a neutral forum. Given the substantial procedural unconscionability shown above, only a minimal degree of substantive unfairness is required under the sliding scale. *Sanchez*, 61 Cal. 4th at 910. Plaintiffs have shown far more than the minimum, and the provision is unenforceable.

## VI.    Gupta's MMWA Claim Should Not Be Dismissed

JLRNA argues in a footnote that Plaintiff Gupta's MMWA claim should be dismissed for not using the BBB AutoLine. Def. Br. at 2 n.1. As an initial matter, this argument is not properly before the Court. JLRNA did not file a motion to dismiss, and the Court's order only granted JLRNA the ability to file a renewed motion to compel arbitration. (ECF No. 30 at 7.) Moreover, in the Third Circuit, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076, n.6 (3d Cir. 1997). Thus, JLRNA waived this argument.

Even if JLRNA had not waived this argument, it has no merit because it is, at best, an affirmative defense that need not be negated by the allegations of the complaint, as courts in this District have routinely found in rejecting JLRNA's same argument. *See, e.g., Joyce v. Jaguar Land Rover N. Am., LLC*, 768 F. Supp. 3d 674, 699 (D.N.J. 2025); *George v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-17561 (WJM), 2021 WL 5195788, at *8 (D.N.J. Nov. 8, 2021).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendant's Renewed Motion to Compel Arbitration in its entirety and order JLRNA to answer the Complaint.

40

Respectfully submitted,

Dated: July 27, 2026

By:  /s/ Simon B. Paris

Simon B. Paris (Atty ID #049821996)
Patrick Howard (Atty ID #022802001)
Joshua Snyder (Atty ID #023902001)
**SALTZ MONGELUZZI &
BENDESKY, PC**
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
Tel: (215) 575-3986
Fax: (215) 754-4443
sparis@smbb.com
phoward@smbb.com

*Attorneys for Plaintiffs and Proposed
Classes*

41

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: July 27, 2026                    By:  /s/ Simon B. Paris
                                              Simon B. Paris