UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS ZATS, AMIR GUPTA, and FRANK RUFFOLO, *et al*., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 2:25–cv–13709–CCC–JRA<br><br>Motion Date: August 17, 2026<br><br>JURY TRIAL DEMANDED |

**DEFENDANT JAGUAR LAND ROVER NORTH AMERICA, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 15

I. THE PASSPORT TO SERVICE IS A CONTAINER CONTRACT ..... 2

A. Plaintiffs Agreed to a Binding Container Contract ..... 2

B. The Applicable States' Laws Do Not Require Any Different Determination ..... 8

C. Plaintiffs' Challenge to the Delegation Clause is Insufficient ..... 12

II. EQUITABLE ESTOPPEL APPLIES ..... 14

III. THE ARBITRATION PROVISION IS NOT UNCONSCIONABLE ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaoui v. Segway Powersports, Inc.*,
No. 5:25-cv-1659, 2026 WL 1658502 (C.D. Cal. June 5, 2026) ........................12

*Brower v. Gateway 2000, Inc.*,
246 A.D.2d 246 (N.Y. App. Div. 1998) ..........................................................10

*Carlson v. BMW Fin. Servs. NA, LLC*,
762 F. Supp. 3d 820 (D. Minn. 2025)...............................................................15

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)..........................................................................................14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)..........................................................................................15

*Ford v. Hyundai Motor America*,
No. 8:20-cv-890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021)............................6

*Frazee v. FCA US LLC*,
No. 1:25-cv-144, 2026 WL 730313 (S.D. Ohio Mar. 16, 2026).......................5, 6

*Frisch v. FCA US, LLC*,
No. 24-cv-10546, 2026 WL 1831998 (E.D. Mich. June 25, 2026)......................6

*Guaschino v. Hyundai Motor America*,
No. 23-cv-4354, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023)..........................6

*Gupta v. Morgan Stanley Smith Barney, LLC*,
934 F.3d 705 (7th Cir. 2019) ..............................................................................3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)............................................................................................14

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) ............................................................................8

*Kaufman v. American Express Travel Related Services*,
No. 07-cv-1707, 2008 WL 687224 (N.D. Ill. Mar. 7, 2008) ..............................10

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024)..............................................................15

*Kolchins v. Evolution Markets, Inc.*,
128 A.D.3d 47 (N.Y. App. Div. 2015) ................................................................9

*Licitra v. Gateway, Inc.*,
189 Misc.2d 721 (N.Y. Civ. Ct. 2001) ..............................................................10

*Lima v. Gateway, Inc.*,
886 F. Supp. 2d 1170 (C.D. Cal. 2012) ..............................................................12

*Morales v. Sun Constructors, Inc.*,
541 F.3d 218 (3d Cir. 2008) ................................................................................8

*Norcia v. Samsung Telecomm. Am. LLC*,
845 F.3d 1279 (9th Cir. 2017) ......................................................................11, 12

*Nowling v. Jaguar Land Rover N. Am., LLC*,
No. 24-cv-9184, 2026 WL 867688 (Mar. 30, 2026) ..........................................7

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)..............................................................................................13

*Rivera v. Home Depot USA, Inc.*,
776 F. App'x 4 (2d Cir. 2019) ..............................................................................3

*Silfee v. Automatic Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) ........................................................................15

*Soo v. Lorex Corp.*,
No. 20-cv-1437, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ......................9, 10

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ..........................................................................9, 10

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020)..................................................................10

*Zuniga v. Major League Baseball*,
196 N.E.3d 12 (Ill. App. Ct. 2021) ............................................................10, 11

**Statutes**

9 U.S.C. § 3 ...........................................................................................................3

## INTRODUCTION

Nothing in Plaintiffs' Opposition ((“Opp.”), D.E. 41) changes the facts JLRNA highlighted in its opening brief ((“JRLNA's Br.”), D.E. 40-2), specifically that: 1) each Plaintiff knew that his vehicle came with an express warranty; 2) this warranty was part of the basis of their bargain and was available for review pre-sale, had Plaintiffs bothered to look; 3) the express warranty is a bilateral contract between Plaintiffs and JLRNA; (4) each Plaintiff took advantage of that contract to obtain covered repairs at JLRNA's dealers; and (5) the NVLW is referred to as the Passport to Service and was identified as such in the vehicles' Monroney Labels; and (6) everything in the Passport to Service section of the Owner's Handbook, including the arbitration provision, is part of that warranty contract.

In the face of this evidence, Plaintiffs' repeated insistence that the Court's evaluation of contract formation must be focused on the arbitration provision itself, and not the Passport to Service as a whole, is flatly incorrect. The arbitration provision in the Passport to Service warranty contract also has a clear and unmistakable delegation clause. Plaintiffs' only “challenge” to the delegation clause therein is the same as their misguided opposition to contract formation. As such, the Supreme Court's guidance makes the Court's decision easy: the parties formed a container contract that includes an arbitration provision, as well as a clear and unmistakable delegation clause that has not been sufficiently challenged.

Accordingly, any challenges to enforceability and scope must be determined by the arbitrator and JLRNA's motion should be granted.

## I. THE PASSPORT TO SERVICE IS A CONTAINER CONTRACT

JLRNA agrees that contract formation is for the Court to decide. (Opp. 17–19.) But, as explained throughout JLRNA's briefing, the Court does not look at individual provisions within the warranty to see if a separate contract was formed as to each term (*see* JLRNA's Br. 14–26); rather, the Court determines whether the parties formed a contract regarding the Passport to Service warranty agreement as a whole. Viewed through that lens, it is evident that Plaintiffs and JLRNA indeed formed such a contract under their respective States' law.

### A. Plaintiffs Agreed to a Binding Container Contract

Plaintiffs' arguments are all underpinned by the erroneous proposition that no container contract could have been formed with JLRNA because Plaintiffs were not presented with the terms and did not explicitly assent to them with their signatures. Plaintiffs emphasize that the "only" contract they each formed was the purchase agreement with the respective dealerships. (*E.g.*, Opp. 1, 7–9, 11, 18.) But they cannot escape the fact that they also entered into a separate warranty contract with JLRNA at the time they purchased their vehicles.

It goes without saying that Plaintiffs can form more than one contract with respect to their vehicles. For example, Plaintiffs acknowledge that Zats had both a

purchase contract with the dealership *and* a financing contract with Jaguar Finance Group. (Opp. 7–8 & n.1.) Additionally, there is no universal rule that a contract must be signed to be formed. *See, e.g.*, *Rivera v. Home Depot USA, Inc.*, 776 F. App'x 4, 7 (2d Cir. 2019) (summary order) ("[A] contract need not be signed in order to be enforceable when a party's conduct is such that it evinces an intent to be bound."). This includes contracts with arbitration provisions and agreements to arbitrate generally as well. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) ("Although [the FAA] requires arbitration agreements to be in writing, it does not require them to be signed." (citing 9 U.S.C. § 3)).

Plaintiffs also repeatedly contend that they could not have formed a contract with JLRNA because they were not directly presented with a physical copy of the Passport to Service, and specifically the arbitration provision, *before* their purchase. (*See, e.g.*, Opp. 8–9, 11, 18.) They likewise argue that the NVLW "was not made available" to them pre-sale, an interestingly passive construction that suggests they had no obligation to understand the warranty contract into which they were entering. (*See, e.g.*, *id.* at 8–11, 22, 25, 27–28, 30.) Plaintiffs do not seriously contest that if they asked to see the Passport to Service, it would have been provided to them. (JLRNA's Br. 8 & n.5.) And JLRNA has amply demonstrated that the Passport to Service was available online at JLR's website prior to their purchases had Plaintiffs cared to look for it. They did not look for it (to this day, apparently) (*see* JLRNA's

Br. 7–8), so their protestations about the supposed difficulties of navigating the website are not well-taken (Opp. 5–6).

There is also no dispute that each of their vehicles came with a Monroney Label, as required by federal law, which identified the Passport to Service as the place to find out more about the NVLW aside from the high-level 4-year/50,000-mile limits. None of the Plaintiffs paid attention to this but all conceded it was there. (JLRNA Br. 6) And, of course, there is no dispute that the Passport to Service was in the Owner's Handbook that was in each vehicle at the time of purchase. Plaintiffs claim they would not be able to find the arbitration provision unless they "happen[ed] to turn to that section by chance or read through the entirety of the more than 600+ page Handbook." (*E.g.*, Opp. 4.)[1] This is disingenuous in the face of the fact that their Monroney Labels advise consulting the Passport to Service for details of the NVLW, and Passport to Service is listed in the Table of Contents, so anyone

[1] To this end, they attach the entire 600+ pages of the Owner's Handbook as an Exhibit, however unnecessary that is to illustrate their point. But it would not matter whether the Passport to Service was separately bound, or if the arbitration provision were referenced in the Table of Contents or Index, because not one of the Plaintiffs ever looked for the warranty, cracked open the Handbook, or even noticed that it was in their cars. Indeed, even if Plaintiffs had signed an acknowledgement of the arbitration provision, they would still be contesting it. Zats, for example, specifically signed to affirm his acknowledgement and agreement to the arbitration provision in his financing contract with Jaguar Financial Group, but at deposition claimed he did not recall that an arbitration agreement applied to his vehicle. (Ex. E to Opp., Zats Dep. 36:24–37:22; Ex. L to Opp., PageID:1816–17.) Ruffolo's signed sales contract also had an arbitration provision that he failed to read or notice. (Ruffolo Dep. 23:4–24:2, attached as Ex. 1; Ex. O to Opp., PageID:1833.)

who—unlike these Plaintiffs—cared to understand the terms of their warranty agreement would be able to turn right to it.

While Plaintiffs criticize JLRNA for conclusorily labeling the NVLW a container contract (Opp. 17–18), it is difficult to comprehend what else it would be: an automotive new vehicle limited warranty such as this one is a contract. *See, e.g.*, *Frazee v. FCA US LLC*, No. 1:25-cv-144, 2026 WL 730313, at *10 (S.D. Ohio Mar. 16, 2026) (concluding that a similar warranty was a "larger container contract"). Indeed, there are mutual obligations: *e.g.*, the owner or lessee must properly operate and maintain the vehicle, must not alter or modify it lest it void the warranty, cannot export it abroad, and must seek warranty repairs only at an authorized dealer. (Ex. A to Opp., PageID:1604, 1606, 1607, 1611, 1613.) In exchange, JLRNA provides covered repairs. (*Id.* at PageID:1611.) And the warranty itself starts on the date of purchase, not some later date when the consumer seeks repairs. (*Id.*) These are the elements of a bilateral contract. Plaintiffs acknowledge as much, arguing that JLRNA was "*required by contract*" to provide covered warranty repairs. (Opp. 28 (emphasis added); *also id.* at 31.)

Parties can form a contract even if the physical manifestation of the terms, *i.e.*, the writing itself, is not explicitly presented to the offeree. (*See* JLRNA's Br. 14–19.) Here, Plaintiffs knew at the time of purchase that their vehicles came with an express warranty, which was a material part of their bargain. (*See id.* at 5–6, 14–19.)

In this regard, the motor vehicle purchase context differs from many consumer product cases because not only is one of the main benefits of purchasing a new car that it comes with an express warranty, but most car purchasers expect to, and do, make use of the express warranty to obtain covered repairs. Plaintiffs' attempts to distinguish *Frisch v. FCA US, LLC*, No. 24-cv-10546, 2026 WL 1831998 (E.D. Mich. June 25, 2026), *Ford v. Hyundai Motor America*, No. 8:20-cv-890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021), and *Guaschino v. Hyundai Motor America*, No. 23-cv-4354, 2023 WL 8126846 (C.D. Cal. Sept. 27, 2023), the cases most directly on point (JLRNA's Br. 20–23), are unavailing. (Opp. 28–31.) It is also telling that Plaintiffs do not acknowledge *Frazee* at all. (JLRNA's Br. 20–21.) Perhaps that is because on similar facts, the *Frazee* court concluded that because each plaintiff was aware their vehicle came with a warranty, they "formed contracts that include arbitration provisions," and any argument about lack of notice of the arbitration provision itself in the warranty was a delegated question of enforceability. 2026 WL 730313, at *8–11. So too, here.

Instead of the similar facts in these cases, Plaintiffs rely heavily on *Noble*, an in-the-box case. (*E.g.*, Opp. 19–21.) But as JLRNA has explained, *Noble* is particularly distinguishable because in that case it was unclear that a bilateral contract with an arbitration provision had been formed, so the *court* evaluated the enforceability of the arbitration provision. (JLRNA's Br. 24–25.) Here, however, the

parties entered into a bilateral container contract with an arbitration provision and a delegation clause, so these issues are for the arbitrator.

Although it is an automotive case, Plaintiffs' reliance on *Nowling* is misplaced. (*See* Opp. 15–17.) First, JLRNA respectfully submits the court erred and has appealed the ruling, which Plaintiffs neglect to mention. (JLRNA's Br. 23 n.8.) Second, the decisions of other district courts are not binding. Third, Plaintiffs misconstrue the decision. The *Nowling* court did not reject JLRNA's container contract argument; instead, it did not address it at all, other than acknowledging it in the context of its ruling on equitable estoppel. *Nowling v. Jaguar Land Rover N. Am., LLC*, No. 24-cv-9184, 2026 WL 867688, at *11–16 (D.N.J. Mar. 30, 2026). But it was not JLRNA's argument, either there or here, that the container contract only mattered for the alternative equitable estoppel argument. (*See* JLRNA's Br. 14–26.) Fourth, the *Nowling* court's "decoupled" conclusion was a *sua sponte* determination not based on any argument advanced by the plaintiffs or addressed in briefing, and it is counter-factual. The words "Passport to Service" appear in white within a heavy black bar at the top of each page addressing the warranty provisions, demonstrating that they are all part of the same warranty document. The arbitration provision conspicuously appears first and in the very first full paragraph underneath the bolded, capitalized "**PLEASE READ THIS SECTION IN ITS ENTIRETY AS IT AFFECTS YOUR RIGHTS**", it states that the provision applies to claims

or disputes involving the warranty. (Ex. A to Opp., PageID:1602.) The provision also specifically states that "**REQUESTING OR ACCEPTING BENEFITS *UNDER THIS WARRANTY***" constitutes agreement to be bound. (*Id.* at PageID:1604 (italics added).) The words "under this warranty" demonstrate that the arbitration provision is indeed part of "this warranty," not some provision floating in air that the reader could not understand relates to the express warranty that the very same section describes in detail.

Ultimately, Plaintiffs agreed to a contract without reading the terms and later came to find out that some terms were unfavorable to them. That is the risk they ran, but it does not mean they can avoid the result. *See, e.g.*, *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (it was the plaintiff's "obligation to ensure he understood the Agreement before signing"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.").

### B. The Applicable States' Laws Do Not Require Any Different Determination

As demonstrated, the container contract is the relevant contract, so Plaintiffs' insistence that the Court's focus should be on whether they specifically assented to the arbitration provision itself is mistaken. (*See, e.g.*, Opp. 2, 7, 21–22, 32–33.) And when the container contract is the focus, as it should be, Plaintiffs' arguments under their respective States' laws fall short.

***New York Law.*** The cases on which Plaintiffs rely do not support their position. *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47 (N.Y. App. Div. 2015), involved formation of an employment agreement negotiated by email, not a consumer product, much less a motor vehicle. *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019), is also factually distinguishable in that it involved an online third-party electronics protection plan, which the court expressly distinguished from warranties "which are provided by the product's manufacturer and are often included in the purchase price." *Id.* at 281. Unlike here, that case involved a browse-wrap scenario where the post-sale terms and conditions differed significantly from the pre-sale terms and conditions, including the addition of an arbitration provision. *Id.* at 285–86. In any event, the court confirmed that "[w]here an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id.* at 289 (emphasis in original). And the court noted that plaintiff "had a duty to read the terms of the contract presented to him, including contract terms provided post-sale." *Id.* at 295. Applying these principles, Zats knew of his warranty so was on inquiry notice, and he had a duty to read the terms of the contract, even if only after the sales transaction.

In *Soo v. Lorex Corp.*, No. 20-cv-1437, 2020 WL 5408117, at *3 (N.D. Cal. Sept. 9, 2020), the contract did not provide any option for the plaintiff to opt out.

The court itself distinguished cases (including *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246 (N.Y. App. Div. 1998), cited by JLRNA) where there *was* a right to opt out and implied the outcome would be different in such a scenario. *Id.* at *3–4. And *Licitra v. Gateway, Inc.*, 189 Misc.2d 721, 726–27 (N.Y. Civ. Ct. 2001), is a small claims court case that is distinguishable and without precedential value.

***Illinois Law.*** The Illinois cases similarly do not support Plaintiffs' position. In *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020). the court conducted a contract formation analysis with respect to a hybrid clickwrap/ browse-wrap scenario. It is both factually distinguishable and supports JLRNA's motion for the same reasons as does the *Starke* case.

Plaintiffs mischaracterize the reach of *Kaufman v. American Express Travel Related Services*, No. 07-cv-1707, 2008 WL 687224 (N.D. Ill. Mar. 7, 2008). (Opp. 24.) The court there evaluated whether the additional post-purchase terms and conditions (including the arbitration provision) were sufficiently part of the contract and concluded they were not because, despite the plaintiff's use of the gift card, he was given no indication he could return it after being made aware of the additional terms. 2008 WL 687224, at *8. The court did not even consider the arbitration argument because it concluded that the post-sale terms, including the arbitration provision, were not part of the parties' contract. *Id.*

*Zuniga v. Major League Baseball*, 196 N.E.3d 12 (Ill. App. Ct. 2021), is not

about contract formation at all but rather concerned procedural unconscionability and enforceability in the context of an arbitration agreement included in the terms and conditions merely referenced, but not printed in full or even linked, on the back of a physical ticket to a baseball game that the plaintiff did not even purchase. Here, the unconscionability issue has been delegated to the arbitrator, so *Zuniga* is doubly inapplicable.

Plaintiffs' attempted distinction of JLRNA's cases also fails. (Opp. 25–26.) Here, Ruffolo *was* aware he received a NVLW, he just chose not to look. (*See* JLRNA's Br. 5.) And had he looked, he would have seen that he "had a genuine, cost-free opportunity to reject" the arbitration provision by opting out. (Opp. 25.) His failure to do so was at his own peril.

***California Law.*** Plaintiffs' argument with respect to Gupta relies on their (mis)characterization of *Norcia* as being a "near-identical fact pattern" and "directly on point." (*See* Opp. 26–28.) In *Norcia*, however, the plaintiff bought a smartphone, opened it at the store, and left the box with the product guide containing the arbitration provision at the store. *Norcia v. Samsung Telecomm. Am. LLC*, 845 F.3d 1279, 1282 (9th Cir. 2017). This is a far cry from Gupta, who knew his vehicle came with an express warranty and had the ability to view it both before and after his purchase. In such circumstances, as JLRNA explained, *Norcia*'s exception to the general rule that acceptance by inaction does not apply in California "when the party

retains the benefit offered" is implicated because Gupta used the benefits of the NVLW. (JLRNA's Br. 18.)

Plaintiffs also mischaracterize *Alaoui v. Segway Powersports, Inc.*, No. 5:25-cv-1659, 2026 WL 1658502 (C.D. Cal. June 5, 2026). (Opp. 27.) In that case—which is on appeal to the Ninth Circuit—the court, relying on *Norcia*, found that the in-the-box warranty whose introductory language did not reference the arbitration provision and whose contractual nature was not obvious did not bind the plaintiff purchaser. *Id*. at *4–5. Here, in contrast, Gupta had access to the Passport to Service before and after purchase, and the very first paragraph conspicuously provides notice of the arbitration provision. Finally, in attempting to distinguish *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170 (C.D. Cal. 2012) (Opp. 27), Plaintiffs prove JLRNA's point: Gupta knew about the warranty and could have accessed it, but chose not to, and the Passport to Service was physically in the car upon delivery.

**C. Plaintiffs' Challenge to the Delegation Clause is Insufficient**

Plaintiffs' first argument is easily dispensed with: contrary to their characterization (Opp. 32), there is a container contract, so JLRNA's invocation of the delegation clause is ripe for the Court's consideration.

Next, Plaintiffs provide no authority to counter JLRNA's assertion that the delegation clause here is clear and unmistakable as interpreted by the Supreme Court. (JLRNA's Br. 27). Nor do they contest that incorporation of JAMS or AAA

rules in a container contract, as is the case here (JLRNA's Br. 27–29), is clear and unmistakable intent to delegate, arguing only that the issue is "immaterial." (Opp. 32.) Instead, they mistakenly argue that the delegation cause requires its own separate express assent, and that because they are not bringing claims "arising under the Passport to Service" (Opp. 32–33), the delegation language is not clear and unmistakable. This is a challenge to scope, which has been delegated to the arbitrator.

Faced with a container contract that includes a clear and unmistakable delegation clause, the Court could consider "generally applicable contract defenses, such as fraud, duress, or unconscionability" directed to the delegation clause. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). But Plaintiffs make no such challenge. Rather, they advance the same misplaced argument as to contract formation, *i.e.*, that the "lack of notice, signature, and opportunity to reject" means they cannot have agreed to delegation either. (Opp. 32.) As explained throughout, however, this is not the appropriate scope of the Court's inquiry with respect to formation challenges, and it fails in this context too.

Against this backdrop, the outcome is evident: There is a container contract (the Passport to Service) with an arbitration provision, and Plaintiffs' challenge to contract formation fails. Within that arbitration provision is a clear and unmistakable delegation clause that Plaintiffs have not challenged. In such a situation, the Supreme

Court provides the answer—this Court cannot resolve any of Plaintiffs' other arguments as to scope or enforceability, which instead must be compelled to arbitration. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

## II. EQUITABLE ESTOPPEL APPLIES

Plaintiffs miss the point of the equitable estoppel doctrine, which looks at the express warranty contract as a whole (of which the arbitration provision is only one part) and holds that it would be contrary to equity to permit Plaintiffs to benefit from aspects of the contract when it suits them while evading the arbitration provision when it becomes inconvenient. (*See* JLRNA's Br. 30–32.) Indeed, Plaintiffs concede that the NVLW is a contract and that JLRNA is obligated under it to provide covered repairs. (Opp. 28, 31.) Thus, Plaintiffs are indeed "cherry-picking the provisions of the warranty that benefit them while avoiding its obligations" on them. (*Id.* at 33.) That is what equitable estoppel is meant to prevent.

It does not matter whether Plaintiffs are advancing a breach of express warranty claim. If it did, they would easily be able to manipulate their claims to avoid equitable estoppel.[2] Of course, if Plaintiffs had an extant warranty claim, it

---

[2] Indeed, that is the likely reason for Zats's voluntary dismissal of his express warranty claim. Though Plaintiffs suggest that JLRNA consented to their Rule 41(a) dismissal (Opp. 13–14 n.3), that is untrue. In actuality, JLRNA refused to accede to a proposed stipulation of dismissal and directly advised Plaintiffs' counsel that Rule

would be even more inequitable to permit them to avoid arbitration. But it is sufficient that they knew of the warranty, took advantage of the warranty, yet now dispute the applicability of the provision that they do not like.

## III. THE ARBITRATION PROVISION IS NOT UNCONSCIONABLE

Unconscionability has been delegated to the arbitrator, so the Court cannot consider Plaintiffs' arguments. (Opp. 36–39.) They are meritless in any event. The arbitration provision is not a "coercive, take-it-or-lose-your warranty term." (Opp. 39.) Rather, there is an unfettered right to opt out and keep the warranty benefits. *See Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1126 (S.D. Cal. 2024). Nor is arbitration required; rather, either party can unilaterally elect it, which courts have found enforceable. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *Carlson v. BMW Fin. Servs. NA, LLC*, 762 F. Supp. 3d 820, 826 (D. Minn. 2025).

## CONCLUSION

For all these reasons, the Court should grant JLRNA's renewed motion to compel arbitration.[3]

---

41(a) did not permit voluntary dismissal of a single claim (JLRNA's Br. 4 n.2), so Plaintiffs' counsel simply filed the dismissal without JLRNA's agreement.

[3] Plaintiffs request that the Court deny the motion "and order JLRNA to answer the complaint." (Opp. 40.) Because arbitrability is a gateway issue that, once raised, requires the court to "refrain from further action until it determines arbitrability," *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577–78 (3d Cir. 2017) (quote omitted), if the instant motion is denied, the Court can and should permit filing of a Rule 12(b)(6) motion in lieu of an answer.

Dated: August 3, 2026

Respectfully submitted,

*By: /s/ Tiffany M. Alexander*
Tiffany M. Alexander
NJ Bar No. 000692002
NELSON MULLINS RILEY & SCARBOROUGH LLP
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Tel.: 610-943-5351
tiffany.alexander@nelsonmullins.com

Terri S. Reiskin (*pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
901 15th Street, NW, Suite 1200
Washington, D.C. 20005
Tel.: 202-689-2800
terri.reiskin@nelsonmullins.com

Jason R. Hodge (*pro hac vice*)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Tel.: 804-533-3891
jason.hodge@nelsonmullins.com

*Attorneys for Defendant Jaguar Land Rover North America, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August, 2026, the foregoing Reply Memorandum in Support of JLRNA's Renewed Motion to Compel Arbitration and Exhibit 1 were filed via ECF and thereby served on all counsel of record.

*/s/ Tiffany M. Alexander*